UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| LA UNION DEL PUEBLO ENTERO, *et al.*, | § | |
|     Plaintiff, | § | |
| | § | Civil Action |
| v. | § | |
| | § | No. 5:21-cv-00071 |
| FEDERAL EMERGENCY MANAGEMENT | § | |
| AGENCY and U.S. DEPARTMENT OF | § | |
| HOMELAND SECURITY, | § | |
|     Defendants. | § | |

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

1.      This lawsuit challenges the Federal Emergency Management Agency's use of secret rules to decide how to distribute billions of dollars in disaster assistance to injured families across the nation.  FEMA's refusal to publish its rules diminishes recovery efficiency and effectiveness, and violates the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Administrative Procedure Act (APA), 5 U.S.C. § 701, *et seq.*  Plaintiff *La Unión del Pueblo Entero* (LUPE) seeks an order directing FEMA to publish on its website all substantive and procedural rules that it uses, as required by 5 U.S.C. § 552(a)(2).

**JURISDICTION AND VENUE**

2.      This Court has jurisdiction under 5 U.S.C. § 552(a)(4)(B) (FOIA) and 28 U.S.C. § 1331 (federal question).

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(e)(1) because the events giving rise to this litigation occurred in this District and Plaintiff resides in this District.

1

**PARTIES**

4.      Plaintiff *La Unión del Pueblo Entero* (LUPE) is a non-profit membership organization

founded in 1989 as a sister organization to the United Farmworkers of America.  LUPE's

mission is to assist low-income families in seeking fair treatment as employees, consumers, and

participants in the civic affairs of the communities where they live.  LUPE's membership

includes over 8,000 families, most of whom communicate only in Spanish.  LUPE provides

educational, advocacy, and organizing services to members and non-members primarily in South

Texas, including Webb, Jim Hogg, and Maverick Counties.  In serving members and the public

at large, LUPE has historically been involved in disaster recovery efforts by organizing meetings

with government officials including FEMA, by informing members and the public how to access

all forms of disaster assistance from federal, state, local and private sources, and by advocating

for disaster recovery resources.  LUPE's mission and activities are accurately described on its

website, www.lupenet.org.

5.      Defendant Federal Emergency Management Agency (FEMA) is part of the United States

Department of Homeland Security.  FEMA is the agency of the United States of America that is

responsible for administration of disaster assistance to individuals and households under the

Stafford Act, 42 U.S.C. § 5121, *et seq*.  EXEC. ORDER NO. 12,673, 54 FED. REG. 12,571 (Mar. 23,

1989).  FEMA headquarters is situated in the District of Columbia.

6.      Defendant United States Department of Homeland Security ("DHS") is the cabinet-level

agency in the United States Government that includes FEMA.  DHS approves FEMA's budget

and regulatory agenda prior to annual presentation of these items to the Office of Management

and Budget and the White House.  DHS headquarters is situated in the District of Columbia.

## ORGANIZATIONAL STANDING

7.      LUPE has direct standing to bring this suit on its own behalf because FEMA's illegal

actions cause the following injuries to LUPE that would be redressed by a favorable ruling:

      (a)  LUPE sought publication of information that FOIA requires to be published, and

            FEMA failed to publish the information that LUPE sought, *see* Attached Exhibit A;

      (b)  LUPE is a consumer of government information, and FEMA's failure to supply the

            information requested by LUPE and required by statute prevents LUPE from serving

            its members, growing as an organization, and pursuing its mission;

      (c)  FEMA's illegal actions increase the costs that LUPE incurs, in money and volunteer

            time, to help disaster survivors understand what actions they should take to gain fair

            access to disaster assistance;

      (d)  without timely access to the requested information, LUPE has no way of gauging

            whether FEMA has complied with 42 U.S.C. § 5151(a), or whether it uses prohibited

            considerations in narrowing or expanding the scope of assistance available; and

      (e)  FEMA's illegal actions cause LUPE to divert resources and attention from its other

            priorities, which impedes LUPE's ability to pursue its mission.

8.      LUPE has representational standing to bring this suit on behalf of its members because:

      (a) LUPE members would otherwise have standing to sue in their own right;

      (b) LUPE seeks to protect interests that are germane to LUPE's mission and purpose; and

      (c) neither the claims asserted nor the relief requested require participation of individual

LUPE members in the suit, for all claims at issue only seek the publication of FEMA's

secret rules, and no claim depends in any way on the facts that FEMA relied upon to

decide any individual application for assistance.

**STATEMENT OF FACTS**

A.      **Statutory and Regulatory Background**

9.      Since 1974 the Robert T. Stafford Disaster Relief and Recovery Act (Stafford Act) has

governed the federal response invoked each time a President declares a "major disaster."  PUB. L.

93-288, § 101 (May 22, 1974) (codified at 42 U.S.C. §§ 5121, *et seq*. (as amended)).

10.      FEMA administers some dozen Stafford Act programs.

11.      The second largest Stafford Act program that FEMA administers in terms of cost is the

Individuals and Households Program (IHP), which provides federal money directly to

individuals and households for several purposes, one of which is to repair private homes that are

damaged by a major disaster, 42 U.S.C. § 5174.

12.      IHP was newly created by the Disaster Mitigation Act of 2000, which amended the

Stafford Act to replace prior recovery programs.  Pub. L. 106-390 § 205 (PAP) and § 206 (IHP)

(Oct. 30, 2000).  IHP first took effect for all disasters declared after October 15, 2002.

13.      Since October 15, 2002, Presidents have declared over 900 major disasters, averaging

over 40 each year.

14.      Since October 15, 2002, FEMA has distributed roughly fifty billion dollars through IHP.

15.      FEMA administers IHP using what it calls this "hierarchy" of "governing documents:"

  (a) first is the statute authorizing IHP, 42 U.S.C. § 5174;

  (b) second are the regulations implementing IHP, 44 C.F.R. Part 206, Subpart D, §§

  206.110 to 119; and

  (c) third are FEMA IHP "policies" which FEMA Headquarters says it issues to "clarify or

  provide direction for specific situations that arise in the implementation of Stafford Act

provisions and various regulations," and to "ensure consistent implementation of programs across the Nation."

16.     The Stafford Act requires FEMA to establish IHP eligibility criteria by published regulation in the following provisions:

(a) 42 U.S.C. § 5151(a) (FEMA "shall include [in its disaster assistance regulations] provisions for insuring that . . . the processing of applications, and other relief and assistance activities shall be accomplished in an equitable and impartial manner, without discrimination on the grounds of . . . economic status.");

(b) 42 U.S.C. § 5174(j) (FEMA "shall prescribe rules and regulations to carry out this section, including criteria, standards, and procedures for determining eligibility for assistance."); and

(c) 42 U.S.C. § 5189a(c) (FEMA "shall issue rules which provide for the fair and impartial consideration of [IHP] appeals.").

17.     FOIA requires all agencies, including FEMA, to electronically publish all of their procedural and substantive rules on their websites, and provides that a "statement of policy, interpretation, or staff manual or instruction that affects a member of the public may be relied on [or] used . . . by an agency against a party other than an agency only if . . . it has been . . . published. . . ."  5 U.S.C. § 552(a)(2).

**B.     FEMA Relies on Unpublished Rules**

18.     FEMA's published rules are general and precatory, and they provide few details about how FEMA makes its disaster assistance decisions.  *See* 42 U.S.C. § 5174; 44 C.F.R. §§ 206.110-120.

19.     FEMA publishes additional policies with the stated goal of clarifying FEMA's rules, but the published policies largely only repeat the rules, and FEMA explicitly warns that the published policies "do[] not have the force or effect of law."  81 FED. REG. 68,442 (Oct. 4, 2016); Individual Assistance Program and Policy Guide | FEMA.gov.

20.     On their face, FEMA's published rules are so general and precatory that the hundreds of employees and independent contractors who apply those rules cannot do so consistently, either within a single disaster or among different disasters, without further binding directives from FEMA.

21.     The text of FEMA's published rules itself indicates that further specificity is necessary before consistent application of those rules is possible.

22.     FEMA has adopted many unpublished rules that state how FEMA makes its disaster assistance decisions, including documents that FEMA labels "Standard Operating Procedures," "Inspection Guidelines," "Line Items," "Response & Recovery Directorate Guidance," "Policy Memoranda," "Processing Manuals," "Policy and Guidance Quick Reference Guides," "Field Inspector Manuals," "Processing Manuals," and "Pre-Shift Instructions," among others.

23.     FEMA provides many of these unpublished rules to individuals who FEMA hires as independent contractor inspectors, but FEMA makes none of these rules publicly available on its website or elsewhere.  FEMA has labeled some of these rules secret and not for public release.

24.     FEMA revises its unpublished rules from disaster to disaster.

25.     FEMA, its employees, and its independent contractors use unpublished rules to decide which families get disaster assistance and what amount of assistance is provided to each family.

26.     Many of FEMA's unpublished rules narrow IHP eligibility, including without limitation:

        (a) setting caps and floors for the amount of assistance regardless of disaster damage;

(b) excluding certain items from repair regardless of disaster damage;

(c) presuming pre-existing damage when FEMA is uncertain whether a disaster caused

observed damage; and

(d) imposing restrictive standards of proof for disaster causation and habitability.

27.     FEMA's unpublished rules materially affect the amount of assistance available to

families recovering from one disaster compared to another.

28.     When FEMA issues adverse decisions denying disaster assistance in whole or in part, no

one can effectively appeal from these adverse decisions without knowing what standards FEMA

used to issue these decisions.

### C.      FEMA's Violation of 5 U.S.C. § 552(a)(2) Harms LUPE

29.     Between February 11 and 21, 2021, a major winter and ice storm crossed much of the

United States, and caused extended power blackouts for some 9.9 million people.  This Winter

Storm Uri killed 136 people and caused some $195 billion in damages, making it the costliest

natural disaster in the recorded history of Texas.

30.     President Biden declared Winter Storm Uri a major disaster and made Individual

Assistance under 42 U.S.C. § 5174 available to families throughout Texas, including Webb, Jim

Hogg, and Maverick Counties.  FEMA assigned Disaster No. DR-4586-TX to Winter Storm Uri.

31.     FEMA will accept IHP applications for DR-4586-TX in some counties through August

23, 2021, and the latest appeal deadline possible is 90 days later, on November 21, 2021.

32.     Since IHP became law and was implemented on October 15, 2002, at least ten declared

major disasters have afflicted the South Texas counties containing LUPE's membership.

33.     After each major disaster, LUPE is flooded with requests for help in obtaining federal

disaster assistance and appealing FEMA's denials of disaster assistance.

34.     LUPE is inhibited in responding to these requests because LUPE does not have access to the unpublished rules that FEMA uses to decide applications for disaster assistance.

35.     Since 2008, LUPE has complained to FEMA through numerous administrative and judicial proceedings that it and its members are harmed because FEMA refuses to publish the rules that it uses to decide eligibility for IHP assistance.  *See La Union del Pueblo Entero v. FEMA*, No. 08-cv-487, 141 F. Supp. 3d 681, 701-08 (S.D. Tex. 2015).

36.     Since 2018, LUPE has routinely requested IHP standards used to decide assistance applications following every major disaster.  To date LUPE has not received any substantive information at all in response, let alone information in time to be of use in any appeal.

37.     Were FEMA to comply with 5 U.S.C. § 552(a)(2) and affirmatively act to publish all of its substantive and procedural rules prior to using those rules, LUPE and its members would have access to the information that is efficient (no request required), direct (less need for LUPE to serve as intermediary between FEMA and disaster survivors), and timely (no delay while a request is decided following each individual disaster).

**D.     FEMA's Violation of 5 U.S.C. § 552(a)(2) Harms LUPE Members**

38.     LUPE members have regularly experienced the procedure described in this subsection D. They have been inside their homes when disasters have struck and have personally seen disasters cause significant damage to their homes.  As a result of FEMA's treatment described in this subsection D, they cannot understand why FEMA has determined them to be ineligible for assistance, and they do not know why their appeals are denied.

39.     Assistance is only available to repair "damage caused by a major disaster."  42 U.S.C. § 5174(b)(1).

40.     Inspectors determine whether observed damage was caused by a major disaster.

41.     FEMA contracts with private inspection management companies, and the companies

recruit individuals to serve as inspectors following each major disaster.

42.     FEMA does not employ either the management companies or the inspectors.

43.     Nor do the inspection management companies employ the inspectors.

44.     The inspectors work only for themselves as independent contractors.

45.     FEMA does not require inspectors to have any construction or inspection experience.

46.     FEMA permits inspection management companies to use a criminal background check as

the sole basis for screening individual inspectors.

47.     Inspection management companies make training standards available to inspectors but

not to the public.

48.     The training standards used by inspectors are written or approved by FEMA.

49.     This training describes how FEMA expects inspectors to do their jobs.

50.     Inspectors electronically record disaster damage information as directed by FEMA

according to FEMA policies that are programmed into an electronic device provided by FEMA.

51.     FEMA uses unpublished rules to instruct inspectors how to determine whether damage

observed after a disaster was caused by the disaster.

52.     Inspectors electronically transmit the data describing each inspection to FEMA.

53.     Based on the data collected by inspectors, FEMA's automated computer system sends

each applicant an initial decision letter that is a computer-generated form.

54.     One of FEMA's form letters is its "Home Safe to Occupy letter."  Quoted next is the *only*

explanation that FEMA provides for denying assistance to applicants in this category:

> FEMA has reviewed your application for disaster assistance. FEMA Assistance is not a
> substitute for insurance and cannot cover all losses caused by a disaster, it is intended to help
> with emergency disaster recovery needs. This letter explains why you are not receiving
> assistance at this time and the additional steps you can take to receive assistance.

**ASSISTANCE NOT APPROVED**

You are not approved for the following assistance because:

Ineligible – Home is Safe to Occupy (IID-HA)
FEMA has determined you are not eligible for Housing Assistance because the damage caused by the disaster did not make your home unsafe to live in.

If you decide to appeal this decision, please provide a signed and written explanation and a copy of documents indicating the damage to your home was caused by the disaster and made your home unsafe to live in. Acceptable documents may include a written statement from a local building official, contractor estimates, or repair receipts. All documents, receipts, bills, and/or estimates must include contact information for the service provider, allowing us to verify the information.

55.    FEMA's "IID-HA" letter quoted above leaves applicants to guess among the following possible reasons for denial of home repair assistance:

(a) the inspector did not observe any damages;

(b) the inspector did not record observed damages as disaster-related;

(c) disaster-related damages did not cause the home to be unsafe;

(d) disaster-related damages were not the primary cause of the home being unsafe; or

(e) disaster-related damages that caused the home to be unsafe were de minimis.

56.    FEMA's IID letter states no applicant-specific facts at all, nothing about what the inspector recorded that produced the denial, and nothing about what standards the inspector applied to produce the denial.

57.    FEMA requires applicants to appeal within 60 days without volunteering any further information.  *See* 44 C.F.R. § 206.115.

58.    FEMA maintains secret appeal standards that limit appeals to specific categories of damages for certain disasters.  For example, in some disasters all appeals involving roof damages are summarily rejected without informing applicants that these appeals were pointless.

### E.      LUPE'S FOIA REQUEST

59.      On May 14, 2021, LUPE submitted a FOIA request to FEMA under 5 U.S.C. § 552(a)(2), requesting that FEMA make publicly available in its online electronic reading room "all records that communicate to any FEMA employee or to any FEMA contractor (including subcontractors) any substantive or procedural standard that is or will be used by FEMA, FEMA employees, FEMA contractors, or FEMA subcontractors to help decide any application for assistance" under IHP after January 1, 2019.  LUPE further requested that FEMA electronically publish "all records that state any future change to any existing substantive or procedural IHP standard described above, regardless of whether the change is disaster specific or applies to all future disasters."  *See* Attached Exhibit A.

60.      By email dated May 14, 2021, FEMA acknowledged receipt of LUPE's request and stated that because the "request seeks documents that will require a thorough and wide-ranging search, FEMA will invoke a 10-day extension [beyond the standard 20 days] for your request pursuant to 5 U.S.C. § 552(a)(6)(B)."  *See* Attached Exhibit B.

61.      By letter dated June 3, 2021, FEMA granted LUPE's petition for expedited consideration of its FOIA request, but FEMA stated nothing about what determination had been made as to the request, and nothing about when it may issue a determination.  *See* Attached Exhibit C.

62.      The thirty working-day period allowed by 5 U.S.C. § 552(a)(6) for FEMA to respond to LUPE's request expired on June 25, 2021, without FEMA ever issuing a determination as to LUPE's request, or any timeline by which it would do so.

63.      By email dated July 5, 2021, LUPE sought a determination and timeline from FEMA by July 12, 2021.  FEMA responded without supplying any determination or timeline for doing so. *See* Attached Exhibit D.

64.     FEMA has a history of delaying for years any determination on LUPE's FOIA requests.

65.     More than thirty working days have elapsed since LUPE submitted its FOIA request in Attached Exhibit A.

66.     LUPE has not received a determination of its request, and Defendants have not made the responsive records publicly available in an online electronic reading room.

67.     Defendants' failure to make all of their substantive and procedural IHP eligibility standards publicly available in an online electronic reading room deprives LUPE of access to information to which it has a statutory entitlement.

68.     Defendants' failure to make all of their substantive and procedural IHP eligibility standards publicly available in an online electronic reading room impairs and will continue to impair LUPE's ability to provide advocacy and education services to its membership and to the broader communities that LUPE seeks to serve in the wake of disasters that regularly afflict those communities.

69.     Plaintiffs incorporate all paragraphs above to support each of these two causes of action.

### FIRST CAUSE OF ACTION
### (FOIA—Failure to Make Records Publicly Available)

70.     FOIA specifically authorizes persons who need agency information to request affirmative electronic publication of that information under 5 U.S.C. § 552(a)(2).  *See* 5 U.S.C. 552(a)(6)(A) ("request for records made under paragraph (1), (2), or (3) of this subsection").

71.     FOIA authorizes persons who need agency information to sue for an agency's failure to comply with 5 U.S.C. § 552(a)(2).  *See* 5 U.S.C. § 552(a)(6)(C)(i) ("Any person making a request to any agency for records under paragraph (1), (2), or (3) of this subsection shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph.").

72.     LUPE has exhausted its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

73.     FEMA uses unpublished substantive and procedural eligibility standards to decide applications for IHP assistance.  These standards are binding on FEMA, its employees, and its contractors.  These standards determine the rights and obligations of applicants for disaster assistance.  Accordingly, these standards are either "statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register," or they are "administrative staff manuals and instructions to staff that affect a member of the public, as specified in 5 U.S.C. § 552(a)(2)(B)-(C).

74.     Defendants have a statutory obligation under 5 U.S.C. § 552(a)(2) to make the records requested by LUPE—including past records and future records—publicly available in its electronic reading room prior to their use, and to do so affirmatively without awaiting any further request for publication.

75.     Defendants have no legal basis for failing to comply with their obligations under 5 U.S.C. § 552(a)(2).

76.     The Court has jurisdiction under 5 U.S.C. § 552(a)(4)(B) to enjoin FEMA to comply with its obligations under 5 U.S.C. § 552(a)(2).

## SECOND CAUSE OF ACTION
### (APA—Agency Disobedience of Statute)

77.     The APA provides persons aggrieved by final agency action, including an agency's failure to act, with a right to judicial review of whether the agency's action conforms to law.  5 U.S.C. §§ 702 and 704.

78.     The APA authorizes this Court to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C.§ 706(1), to hold unlawful and set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," *id.* §

706(2)(A), and to hold unlawful agency action that is undertaken "in excess of statutory . . .

limitations" or "without observance of procedure required by law," *id.* § 706(2)(C)-(D).

79.      All documents requested by LUPE—FEMA's current and future substantive and

procedural IHP eligibility standards—must be published by 5 U.S.C. § 552(a)(2)(B)-(C).

80.      Defendants have a nondiscretionary statutory obligation under 5 U.S.C. § 552(a)(2) to

make all requested documents available for public inspection in an electronic format, and to do

so without awaiting a request.

81.      Defendants' decades-long practice of failing to make FEMA's rules available for public

inspection in an electronic format as required by law constitutes final agency action.

82.      Defendants' use of unpublished substantive standards to decide tens of thousands of IHP

eligibility applications constitutes final agency action.

83.      LUPE, on behalf of itself and its members, is a person aggrieved by Defendants' final

agency actions described in the preceding two paragraphs.

84.      Defendants have unlawfully withheld and unreasonably delayed action to make all of its

substantive and procedural IHP eligibility standards available for public inspection in an

electronic format.

85.      Defendants' failure to ensure that all of their procedural and substantive IHP eligibility

standards are available for public inspection in an electronic format is:

     a.   arbitrary, capricious, an abuse of discretion, or otherwise not in accord with law;

     b.   in excess of statutory . . . limitations, namely 5 U.S.C. § 552(a)(2); and

     c.   without observance of procedure required by 5 U.S.C. § 552(a)(2).

**PRAYER**

86.      WHEREFORE, LUPE respectfully requests that the Court:

(a) order that FEMA timely produce the complete administrative record showing all documents that FEMA relies upon to defend its actions challenged in this lawsuit;

(b) declare to be unlawful Defendants' failure to make publicly available in an electronic format all of their IHP eligibility standards;

(c) order Defendants to make all of their substantive and procedural IHP eligibility standards used at any time after January 1, 2019—including all future standards—publicly available in an electronic reading room, and to do so without further request;

(d) enjoin FEMA from using any unpublished rules to decide IHP applications;

(e) award LUPE its costs, expenses, and reasonable attorneys' fees; and

(f) grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

July 14, 2021

TEXAS RIOGRANDE LEGAL AID, INC.

*Jerome Wesevich*

Jerome Wesevich, jwesevich@trla.org
  S.D. Texas Bar No. 17397
Tracy Odvody Figueroa, tfigueroa@trla.org
  S.D. Texas Bar No. 34715
Kristen Adams, kadams@trla.org
  S.D. Texas Bar No. 3631234
Hannah Dyal, hdyal@trla.org
  S.D. Texas Bar No. 3667772
Ana Laurel, alaurel@trla.org
  S.D. Texas Bar No. 3668794
Brittanny Perrigue Gomez, bperrigue@trla.org
  S.D. Texas Bar No. 3439404
1702 Convent Avenue
Laredo, Texas 78040
Tel. (956) 718-4610

*Attorneys for Plaintiffs*