UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| LA UNION DEL PUEBLO ENTERO, et al. | ' | |
| Plaintiff, | ' | |
| v. | ' | CIVIL ACTION NO. 5:21-CV-071 |
| FEDERAL EMERGENCY MANAGEMENT AGENCY, et al. | ' | |
| Defendants. | ' | |

## DECLARATION OF GREGORY BRIDGES IN SUPPORT OF DEFENDANTS' OPPOSED MOTION FOR EXTENTION OF DEADLINE

I, Gregory Bridges, hereby declare, pursuant to 28 U.S.C. § 1746, the following to be true and correct:

1. I am the Chief of the Disclosure Branch in the Office of the Chief of the Administrative Officer. In this capacity, I am responsible for supervising the handling of Freedom of Information Act (FOIA) requests received by the Federal Emergency Management Agency (FEMA). I have held this position since December 2018.

2. In my official capacity as Chief of the Disclosure Branch, I supervise 14 employees. The Disclosure Branch staff is divided into teams, include Intake, Processing, Litigation and Appeals. The Litigation Team is limited to one Government Information Specialist, and one recently hired contractor who handles the litigation processing for the Disclosure Branch. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions I reached based on that knowledge or information.

GOVERNMENT EXHIBIT 1

3. As part of my official duties, I have knowledge of the procedures followed by the Disclosure Branch in responding to requests for information from its files pursuant to provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the treatment which has been afforded Plaintiff's FOIA request.

4. The purpose of this declaration is to provide the Court with information concerning FEMA's structure and resources, and its capabilities regarding the processing of Plaintiff's FOIA request in support of Defendants' motion for extension of deadlines.

5. Over the past four years, FEMA has experienced an unanticipated and rapid increase in incoming FOIA requests. For instance, in 2021, there was an increase of 12% of FOIA requests as compared to 2020. The sudden and unpredictable spike in incoming FOIA requests is partly due to FEMA's central role in responding to the coronavirus disease (COVID-19) pandemic, a truly unforeseen development and a once-in-a-century occurrence.

6. Since December 2021, the Disclosure Branch has received thirteen FOIA requests directly relating to COVID-19. As of the date of this declaration, these new requests, combined with pre-existing COVID-19 requests, constitute 12% of open requests. Many of these requests have sought and been granted expedited processing because these requests met either one or both thresholds for approval. This reprioritization has delayed our overall response time to all requests, including requests approved for expedited processing, which are being processed in the order they were received, and normal requests are processed after the expedited requests have been processed. In other words, FEMA's prioritization of COVID-19 requests has resulted in a backlog of both pre-existing non-COVID-19 requests that Disclosure has been actively working to reduce and new non-COVID-19 requests.

7. Once the contours of the COVID-19 pandemic and the impact it would have on the Disclosure Branch became clear, the Disclosure Branch requested emergency funding for two additional contractors to assist in processing COVID-19 related FOIA requests. The Disclosure Branch has finished interviews and is onboarding the contractors. The Disclosure Branch anticipates the contractors to come on board in the next couple of months after which time they will require training to understand the methods used by the Disclosure Branch for processing records and to gain a better understanding of the subject matter. In addition, the hiring of new contractors does not immediately replace more experienced FOIA analysts, nor does it signal an immediate increase in FOIA processing rates. It will take time for the contractors to obtain the knowledge and experience to process records accurately and in a timely manner.

8. In addition to an unprecedented spike in incoming FOIA requests, the FEMA Disclosure Branch also is faced with burdensome litigation and administrative appeals, staff turnover, increasing complexity of requests, which include Plaintiff's FOIA request, and necessary consultation with subject-matter experts during the review for releasability.

9. As mentioned, FEMA has seen an increase in FOIA-related appeals, litigations, and court ordered production schedules. Currently, FEMA has four FOIA-related litigations with active production schedules. Each of these litigations began prior to the above-captioned litigation, has monthly production schedule of 500 to 1000 pages, and has the same level of priority as our COVID-19 requests, which has further slowed the processing of other FOIA requests. Also, FEMA has seen an increase in administrative appeals from 24 in FY20 to 37 in FY21. Currently, FEMA is on track for 45 administrative appeals in FY22.

10. Staff turnover has also contributed to FEMA's delay in processing FOIA requests. Our office has funding allocated for twelve federal employees and four contractors. To date, we

only have twelve employees, two contractors, one of whom was recently hired. This delay in re-staffing can be attributed to FEMA operating under a continuing resolution and the inherent restrictions on the availability of funding. This substantially increased volumes of material for the remaining FOIA analysts to process has further limited the Disclosure Branch's ability to process at faster rates.

11. Further, the scope and complexity of Plaintiff's request resulted in time-consuming searches as well as complex analysis and reviews of large volume of records.

12. For instance, Plaintiff's request requires searches for documents that may be responsive to Plaintiff's description of the record as well as fourteen different categories of documents that were suggested by Plaintiff. Thus far, the searches have resulted in over 4,800 pages of document that requires multi-step line-by-line review for responsiveness and releasability. Moreover, the likely responsive records were not developed to be understood by the public. Many contain acronyms, technical terms, and nomenclature that is commonly used by FEMA staff. Interpreting this information in our responses to the requester could require additional records to be created or additional consultations with subject-matter experts. In other words, each of these record sets would require complex searches and legal analysis as well as consultation with the program office for general interpretation and any possible exemptions being applicable to the responsive record set.

15. In sum, the Disclosure Branch is experiencing an unanticipated spike in incoming FOIA requests due to increase in both general and COVID-19-related requests and increase number of litigation and administrative appeals. The staff turnover, as well as the complexity of search and processing and volume of records that may be responsive to Plaintiff's request also contribute to the delay in response to Plaintiff's request. Although the Disclosure Branch has made

strides and had begun to reduce its backlog by restructuring its workforce, and bringing on additional contract staff, the Disclosure Branch continues to experience difficulty keeping pace with the unprecedented number of incoming FOIA requests. As such, the process to search and review of the potentially responsive records to Plaintiff's FOIA request will take more time than currently allotted by the Court and cannot be completed within the deadlines without a severe disruption to FEMA's operation and mission.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this __11__ day of March 2022.

_____
Gregory Bridges
Chief, Disclosure Branch
Federal Emergency Management Agency