UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| *LA UNIÓN DEL PUEBLO ENTERO, et al.*, § | | |
| Plaintiff, § | | |
| § | Civil Action | |
| v. § | | |
| § | No. 5:21-cv-00071-MGM/JAK | |
| FEDERAL EMERGENCY MANAGEMENT § | | |
| AGENCY and U.S. DEPARTMENT OF § | | |
| HOMELAND SECURITY, § | | |
| Defendants. § | | |

**RESPONSE TO DEFENDANTS' MOTION FOR EXTENSION OF DEADLINES**

The Defendant agencies seek an extension of scheduling order deadlines by six additional months. ECF 15. Plaintiff responds in partial opposition as follows:

**ISSUE FOR DECISION**

Whether Defendants have shown the diligence needed to satisfy the Rule 16 "good cause" standard for extending deadlines.

**PLAINTIFFS' POSITION**

Plaintiff is not categorically opposed to extension of the scheduling order deadlines. Plaintiff would not object to deadlines that: (a) prioritized the most relevant documents for production as soon as possible; and (b) ensured that the complete administrative record would be available no later than August 1, 2022, with no possibility for extending this deadline. One reason for this is to be sure that the agencies have had a fair opportunity to prepare the record no matter their alleged constraints. Another is that while Plaintiff's counsel could have timely briefed the summary judgment had the record been filed as ordered, trial settings and appellate

1

briefing deadlines would now impede Plaintiff's briefing in this case if the record is completed within the next few months.

## ARGUMENT

The parties agree that Rule 16(b) requires Defendants to prove good cause for why the scheduling order deadlines could not reasonably be met despite their diligence. *See S&W Enterprises., LLC v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 535 (5th Cir. 2003).

Plaintiff does not believe that Defendants have met their burden of proving diligence for the following reasons:

1. Over the past month Plaintiff's counsel have repeatedly but unsuccessfully urged defense counsel to prioritize the documents that need to be produced so that the most relevant are reviewed and produced first. The most relevant are those used by Individuals and Households Program ("IHP") appeal officers to decide appeals, and those used by inspectors to record the relevant facts used to decide each disaster assistance application. It is highly unlikely that FEMA appeals officers or inspectors must read 4,800 documents to do their jobs. Instead, they use a much smaller number of documents, and those are the ones most relevant to Plaintiff's FOIA request. When those are produced, the parties should know the extent to which further litigation will be needed to resolve their differences. Courts have permitted FOIA requestors like Plaintiff to prioritize documents for production when agencies seek an extended production schedule, as FEMA does here. *See Donham v. U.S. Dept. of Energy*, 192 F.Supp.2d 877, 884 (2002); *Hinton v. Federal Bureau of Investigation*, 527 F. Supp. 223, 225 (1981).

2. FEMA claims in its representative's declaration, ECF 15-1, that FOIA requests related to the pandemic have gained expedited consideration, and a disproportionate share of the attention of FEMA's FOIA reviewers. But Plaintiff's FOIA request was granted expedited

consideration as well, and FEMA offers no explanation for why some urgent requests need to be prioritized over others.

3. FEMA claims in its representative's declaration that it is subject to court orders in other cases requiring it to produce 500 to 1,000 pages per month of responsive documents. Plaintiff's counsel requested the case numbers for each such order, but have not been provided this information.

4. FEMA's motion continues to blame Plaintiff for the delay in producing the documents, because Plaintiff stated 14 categories of documents that have contained FEMA's IHP eligibility standards in the past. The 14 categories are not the FOIA request. The 14 categories do not delay document production, they facilitate it by informing FEMA what search is necessary. FEMA administers the multi-billion-dollar IHP program, so it should know exactly where all of its standards for doing so are kept.

## CONCLUSION

The Court should set specific terms for producing the administrative record that not only are fair to the Defendant agencies, but fair to Plaintiff in the sense that its attorneys can plan their schedules to facilitate review and response to the record once it is filed.

Respectfully submitted,

TEXAS RIOGRANDE LEGAL AID, INC.

March 23, 2022

*/s/ Jerome Wesevich*
Jerome Wesevich, jwesevich@trla.org
Hannah Dyal, hdyal@trla.org
Brittanny Perrigue Gomez, bperrigue@trla.org
Kristen Adams, kadams@trla.org
1702 Convent Avenue
Laredo, Texas 78040
Tel. (956) 718-4610
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

  I certify that on the date next to my signature above I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to the attorneys of record for all parties.

         */s/ Jerome Wesevich*