**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | | |
|---|---|---|
| LA UNION DEL PUEBLO ENTERO, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CASE NO. 5:21-CV-071 |
| | § | |
| FEDERAL EMERGENCY | § | |
| MANAGEMENT | § | |
| AGENCY, et al., | § | |
| | § | |
| *Defendants.* | § | |

**DEFENDANTS' MOTION TO DISMISS**
**OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Defendants, the Federal Emergency Management Agency (FEMA), et al., move to dismiss Plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) or, in the alternative, for summary judgment pursuant to Rule 56.

Plaintiff brought this FOIA suit to obtain an order compelling FEMA to make certain documents available to the public online. As discussed below, Plaintiff's claims fail because the requested relief—ordering online publication—is unavailable. Courts have long held that the only available remedy under FOIA is to order the materials in question produced to the requester. However, even assuming compelled publication were an available remedy, their claims are moot in light of FEMA's production and online publication of the requested materials (except to the extent that Plaintiff challenges FEMA's decision to withhold certain documents). Further, Plaintiff's claim seeking to compel FEMA to publish *future* documents fails as a matter of law. FOIA does not require agencies to make a determination on whether

1

it will release documents that have yet to be created. Further, Plaintiff has no valid APA cause of action against FEMA because FOIA provides an adequate statutory remedy.  Even if FOIA did not provide an adequate remedy, Plaintiff's APA claim is an impermissible programmatic challenge, which the Court lacks jurisdiction over. For these reasons and all the reasons discussed below, the Court should dismiss Plaintiff's claims for lack of jurisdiction, and to the extent it reaches the merits, grant summary judgment in favor of Defendants.

## I.     BACKGROUND

### A.     Plaintiff's prior litigation

Plaintiff has engaged in litigation over the years challenging FEMA's administration of its disaster relief programs. *See, e.g., La Union Del Pueblo Entero v. Fed. Emerg. Mgt. Agency,* 608 F.3d 217 (5th Cir. 2010); *Barbosa v. U.S. Dept. of Homeland Sec.*, 916 F.3d 1068 (D.C. Cir. 2019). This has included litigation involving many of the issues involved in this case. In *Barbosa*, Plaintiff, along with homeowners whose homes were damages in Texas, argued that FEMA was relying on "secret rules" in non-public documents to deny homeowners' Individuals and Households Program (IHP) applications. *Id*. In addition, Plaintiff argued, among other issues, that FEMA had failed to issue sufficient public regulations concerning eligibility criteria for the program. *Id*. The D.C. Circuit affirmed the district court's dismissal of those claims due to a lack of jurisdiction. *Id*. at 1071.  As the court noted, the Stafford Act prohibits courts from reviewing FEMA discretionary decisions in administering its Stafford Act programs. *Id*. at 1070; quoting 42 U.S.C. § 5148. The *Barbosa* court held that it was

2

unnecessary to determine whether FEMA regulations were adequate because the preclusion of review – from the discretionary function exception of the statute – limited the court's jurisdiction. *Id*. at 1073.  Having encountered this clear statutory bar, Plaintiff turned to FOIA.  *Id*. at 1073 (noting the plaintiffs, "perhaps recognizing that their direct attack on the regulations would run into a jurisdictional barrier, presented a creative alternative argument . . . [t]hey turn away from the Stafford Act to [FOIA] to expose the 'secret law'"). Like here, Plaintiff brought a claim seeking publication under 5 U.S.C. § 552(a). *Id*. at 1074.  The *Barbosa* court also rejected this claim, holding that a "FOIA claim cannot be used to create judicial authority to review Stafford Act claims, regardless of whether § 552(a)(1), itself, is discretionary." *Id*. at 1074. In reaching this decision, the D.C. Circuit noted that Plaintiff could seek additional materials of the type they sought by filing a "normal" FOIA request for documents under § 552(a)(3).  *Id*.

### B.  Plaintiff's FOIA Request

Plaintiff submitted a FOIA request to FEMA in May of 2021.  *See* Exhibit 1, Declaration of Gregory Bridges, Chief of Disclosure Branch ("Bridges Decl."). Plaintiff requested that FEMA make the following material available online:

> a. all records that communicate to any FEMA employee or to any FEMA contractor (including subcontractors) any substantive or procedural standard that is or will be used by FEMA, FEMA employees, FEMA contractors, or FEMA subcontractors to help decide any application for assistance under the Individuals and Households Program ("IHP") established in 42 U.S.C. § 5174 following a disaster declared after January 1, 2019; and

> b. all records that state any future change to any existing substantive or procedural IHP standard described above, regardless of whether the change is disaster-specific or applies to all future disasters.

3

*Id*. at ¶ 3; *see also* Doc. No. 30-1 (FEMA000001 – FEMA000003).

FEMA acknowledged the request and conducted a search for responsive records. *Id*. at ¶ 4. After this suit was filed, FEMA produced documents to Plaintiff on a rolling basis, making a series of releases between August of 2021 and September of 2022. In total, FEMA produced more than 4,000 pages of responsive documents. *Id*. at ¶ 8; *See also* Doc. No. 30. In addition to producing these documents to Plaintiff, FEMA made these documents available to the public by placing them online. *Id*. at ¶ 8 (referring to https://www.dhs.gov/publication/fema-records).

FEMA withheld approximately 2,400 pages of documents under certain FOIA exemptions. FEMA has identified those withheld documents and the relevant exemptions in a Vaughn Index. *See* Exhibit 2, Vaughn Index.

FEMA did not make a determination on future documents. Instead, FEMA will make a determination on those future materials when they are created. *See* Bridges Decl. at ¶ 10.

### C.   **Plaintiff's Complaint**

Plaintiff's complaint asserts two causes of action. First, Plaintiff asserts a claim under FOIA for FEMA's alleged failure to make records publicly available. *See* Doc. No. 1, at ¶¶ 70-76 ("First Cause of Action"). Second, Plaintiff asserts that FEMA's actions, or inaction, with respect to making records publicly available under FOIA allegedly violates the APA. *See* Doc. No. 1, ¶¶ 77-85 ("Second Cause of Action").

## II.   STANDARD OF REVIEW

Rule 12(b)(1) allows motions to dismiss for lack of subject matter jurisdiction. *See Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996). "It is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking. This is the first principle of federal jurisdiction." *Stockman v. Federal Election Commission*, 138 F.3d 144, 151 (5th Cir. 1998) (quotations omitted). As the party invoking jurisdiction, the plaintiff carries the burden of establishing subject matter jurisdiction. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). The Court may examine evidence outside of the pleadings when deciding a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *Barrera-Montenegro*, 74 F.3d at 659.

Rule 56 of the Federal Rules of Civil Procedure mandates that summary judgment be awarded "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is the procedural vehicle by which nearly all FOIA cases are resolved. *Wickwire Gavin, P.C. v. U.S. Postal Service*, 356 F.3d 588, 591 (4th Cir. 2004) (citing *Miscavige v. IRS*, 2 F.3d 366, 369 (11th Cir. 1993)) ("FOIA cases are generally resolved on summary judgment once the documents at issue have been properly identified."); *accord Cooper Cameron Corp. v. U.S. Dep't of Labor*, 280 F.3d 539, 543 (5th Cir. 2002) ("Summary judgment resolves most FOIA cases"). In a FOIA suit, an agency is entitled to summary judgment once it demonstrates that no

material facts are in dispute and that each document that falls within the class requested either has been produced, is unidentifiable, or is exempt from disclosure. *See Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001); *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980).

## III.   ARGUMENT

### A.   Plaintiff's only remedy under FOIA is to obtain the records.

Plaintiff's claims seeking an order compelling FEMA to publish material online fail as a matter of law.

#### 1.   Plaintiff cannot sue to compel FEMA to publish material.

Courts have long understood that when an agency improperly fails to produce or publish records under FOIA, the only available remedy is to order the production of those records to the requester. Thus, Plaintiff's claim seeking an order compelling FEMA to publish online standards "used at any time after January 1, 2019—including all future standards" fails as matter of law.

FOIA provides that an individual may make a "request for records . . . under paragraph (1), (2), or (3) of [§ 552(a)]." *Id.* at §552(a)(6)(A) (emphasis added); *see also id.* at § 552(a)(6)(C)(i). If the agency fails to respond within the time allotted by statute or if the requester is unsatisfied with the result of the administrative process, the requester may file a complaint in the appropriate federal court. *Id.* at §§ 552(a)(6)(A), 552(a)(6)(C)(i). In such a case, the court "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id.* at § 552(a)(4)(B). "[A] court

6

has no authority under FOIA to issue an injunction mandating that an agency 'make available for public inspection' documents subject to the reading-room provision . . . [but may], consistent with section 552(a)(4)(B), order[] an agency to provide to the plaintiff documents covered by the reading-room provision." *See Citizens for Responsibility & Ethics in Washington v. United States Dep't of Justice*, 846 F.3d 1235, 1243–44 (D.C. Cir. 2017) ("*CREW*"); *Kennecott Utah Copper Corp. v. United States Dep't of the Interior*, 88 F.3d 1191, 1203 (D.C. Cir. 1996).

The D.C. Circuit in *CREW* denied a very similar claim to the one Plaintiff asserts here. In CREW, the plaintiff filed a complaint, seeking to have the Department of Justice's Office of Legal Counsel comply with its obligations under FOIA Section 552(a)(2)(A), including making records available on its website. *CREW*, 846 F.3d at 1240. The court held that FOIA does provide a remedy for a violation of Section 552(a)(2) other than for the plaintiff to obtain the records in question. *Id.* at 1243-44. In determining that the plaintiff was not entitled to an injunction to force the agency to change its website, the court focused on the jurisdictional grant provided for in Section 552(a)(4)(B). While FOIA does provide broad remedial authority, the court held that such authority "is not boundless." *Id.* at 1242 (discussing *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 139 (1980)). In particular, the D.C. Circuit reiterated its holding in *Kennecott* that Section 552(a)(4)(B) "is aimed at relieving the injury suffered by the individual complainant, not by the general public as it allows district courts to order 'the production of any agency records improperly withheld from the complainant,' not

7

agency records withheld from the public." *Id*. at 1243 (quoting *Kennecott*, 88 F.3d at 1203) (quoting 5 U.S.C. § 552(a)(4)(B)))(internal quotations omitted).

The Complaint here implicates the same issues and considerations addressed in *Kennecott* and *CREW*. Although the decisions of the D.C. Circuit in *Kennecott* and *CREW* are not binding, they are well-reasoned, persuasive authority properly construing FOIA's statutory language. Plaintiff's claims for relief goes beyond what FOIA provides. Thus, the Court should hold that FOIA does not provide the relief Plaintiff seeks, namely, to compel Defendants to add records to their website, and dismiss Plaintiff's claims.[1]

### 2.   Plaintiff has been provided the requested records.

FEMA has provided Plaintiff the requested records and made those records available to the public online. In particular, Plaintiff requested, among other things, that FEMA make available online any substantive or procedural standard that it uses to decide any application for assistance under IHP. Bridges Decl. at ¶ 3. FEMA searched its records and provided responses to Plaintiff on a rolling basis.  *Id*. at ¶¶ 6-8. In total, FEMA produced more than 4,000 pages of documents to Plaintiff and

---

[1] FEMA acknowledges that there is no binding Fifth Circuit law on this point and that the Second Circuit Court of Appeals refused to follow *CREW* in *New York Leg. Assistance Group v. Bd. of Immig. Appeals*, 987 F.3d 207 (2d Cir. 2021). However, FEMA urges the Court to follow CREW and its prodigy as the more persuasive authority. As explained in the *N.Y. Legal Assistance Group* dissent, "Courts have long understood . . . that when an agency improperly fails to produce records, courts may [only] order the production of those records to the requester" and that the D.C. Circuit's reasoning in *CREW* is correct and should be followed. *See New York Leg. Assistance Group v. Bd. of Immig. Appeals*, 987 F.3d at 226 (dissent). Lastly, the Fifth Circuit has followed D.C. Circuit FOIA precedent in other circumstances and, in doing so, recognized that the D.C. Circuit is "the federal appellate court with the most experience in this field." *Cooper Cameron Corp. v. U.S. Dept. of Lab., Occupational Safety and Health Admin.*, 280 F.3d 539, 543 (5th Cir. 2002), which further supports following CREW rather than the Second Circuit's decision.

made those documents available online. *Id.*; *see also* Doc. No. 30. Importantly, FEMA responded to Plaintiff's request for documents by providing all non-exempt responsive documents. This no doubt resulted in an overinclusive response. In other words, not all of the documents placed online for the public necessary fell under 5 U.S.C. § 552(a)(2). FEMA did this in the interest of furthering transparency. Bridges Decl. at ¶ 9. As a result of FEMA's production and publication, Plaintiff's claim seeking an order compelling FEMA to place certain documents online is resolved, except for any challenge to the decision to withhold documents as identified in the Vaughn Index. *See, e.g., Humane Socy. of the U.S. v. U.S. Fish and Wildlife Serv.*, 838 Fed. Appx. 721, 730 (4th Cir. 2020) (unpublished) (the posting online of the FOIA requested document rendered any claim with regard to past request for online posting moot); *Calhoun v. F.B.I.*, 546 F. App'x 487, 490 (5th Cir. 2013) (holding that complaint is rendered moot when the agency's responds to the FOIA request) (citing *Voinche v. F.B.I.*, 999 F.2d 962, 963 (5th Cir. 1993)).

**B.   FEMA properly withheld certain documents.**

The Vaughn index and supporting declarations demonstrate that FEMA correctly invoked the available FOIA exemptions to withhold certain information. The essential purpose of FOIA reflects a "general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 149 (1989). "Congress recognized, however, that public disclosure is not always in the public interest." *Central Intelligence Agency v. Sims*, 471 U.S. 159, 166-167 (1985). FOIA is designed to achieve

a "workable balance between the right of the public to know and the need of the Government to keep information in confidence to the extent necessary without permitting indiscriminate secrecy." *John Doe*, 493 U.S. at 152 (quoting H.R. Rep. No. 1497, 89th Cong., 2d Sess. 6 (1966), reprinted in 1966 U.S.C.C.A.N. 2418, 2423). Accordingly, the statute incorporates "nine exemptions which a government agency may invoke to protect certain documents from public disclosure." *Minier v. Central Intelligence Agency*, 88 F.3d 796, 800 (9th Cir. 1996).

The Supreme Court has recognized that the statutory exemptions are intended to have "meaningful reach and application." *John Doe*, 493 U.S. at 152. Indeed, "[a] district court only has jurisdiction to compel an agency to disclose improperly withheld agency records," *i.e.*, records that do "not fall within an exemption." *Minier v. Central Intelligence Agency*, 88 F.3d at 803 (emphasis in original). "Congress did not invite a judicial weighing of the benefits and evils of disclosure on a case-by-case basis," and "[r]equiring an agency to disclose exempt information is not authorized by FOIA." *Id.* (quotations omitted).

The agency may show that documents were properly withheld through the submission of affidavits that identify the documents at issue and explain why they fall under the claimed exemption. These affidavits must be clear, specific and reasonably detailed while describing the withheld information in a factual and non-conclusory manner. *McQueen v. United States*, 264 F. Supp. 2d at 514. The declarations or affidavits are often referred to as a "Vaughn index," after the case of *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). *See, e.g., John Doe*, 493 U.S. at 149

n.1 (quoting *Vaughn*, 484 F.2d at 826) ("[t]he 'Index' usually consists of a detailed affidavit, the purpose of which is to 'permit the court system effectively and efficiently to evaluate the factual nature of disputed information.'"). Finally, declarations submitted by an agency are entitled to a "presumption of legitimacy" unless there is evidence of bad faith. *Batton v. Evers*, 598 F.3d 169, 176 (citations omitted).

Here, the Vaughn index and declarations identify and explain FEMA's decision to withhold certain documents. FEMA's decision to invoke Exemption 7(E) is discussed in more detail below.[2]

As relevant here, FOIA's Exemption 7(E) affords protection to documents that would disclose guidelines and records compiled for law enforcement purposes "if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. §552 (b)(7)(E). Exemption 7(E) "sets a relatively low bar for the agency to justify withholding: 'Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law.'" *Blackwell v. F.B.I.*, 646 F.3d 37, 42 (D.C. Cir. 2011) (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009)).

At least one court has held that Exemption 7(E) applies to agency guidelines that, if released, would assist persons who sought to defraud the program. In *Gordon v. FBI*, 388 F.Supp. 2d 1028 (N.D. Cal.), the FOIA plaintiff challenged whether

---

[2] The other FOIA exemptions asserted by FEMA are identified in the Vaughn Index and discussed in the supporting declarations. *See, e.g.*, Bridges Decl. at ¶ 12 (discussing Exemption 6). Further argument on those exemptions is not necessary in this opening motion. To the extent that Plaintiff challenges their invocation, Defendants reserve the right to address other exemptions in their reply.

certain memoranda and emails fell within exemption 7(E). The *Gordon* court held the following:

> plaintiffs "read 'law enforcement purpose' too narrowly. Exemption 7(E) is not limited to documents created in connection with a criminal investigation. In *Dirksen v. U.S. Dep't of Health and Human Services*, 803 F.2d 1456 (9th Cir. 1986), for example, the Ninth Circuit held that disclosure of Blue Shield's internal guidelines for processing medicare claims fell within this exemption:
>> It is not difficult to believe that, among the care providers in possession of these materials, there would be some who would try to fit their claims into the "automatically granted" category. Nor is it difficult to believe that, upon the submission of a barrage of claims fashioned to conform to the Guidelines, the Guidelines would lose the utility they were intended to provide. The requested Guidelines serve an auditing function. This puts them into the category of exempt law enforcement material.

388 F.Supp.2d at 1036 (quoting *Dirksen*, 803 F.2d. at 1459).

Here, FEMA withheld internal program instructions that could be used to defraud the program. The Vaughn Index and the declarations supporting this motion provide the basis for invoking Exemption 7(E). *See* Bridges Decl., Exhibit 3, Declaration of Johnathan Torres at ¶¶ 9-12, and Exhibit 4, the Declaration of William Wilson, Exhibit 4 ("Wilson Decl."). The Declaration of William Wilson, Director of Mission Support Office, Office of the Chief Security Office, Fraud Investigations and Inspections Division, is particularly instructive on this issue. His office coordinates fraud investigations with FEMA's Office of the Inspector General. *Id*. at ¶ 3. In his declaration, Director Wilson explains how his office assists in developing internal guidance, of the type identified in the Vaughn Index, in order to combat fraud tactics. *Id*. at ¶ 5. He also explains how FEMA officials investigating fraud may use internal guidance documents and standard operating procedures as part of their

investigations and may include them in their investigative files. *Id.* Lastly, like in the other declarations, Director Wilson explains that "the release of IHP guidance documents and SOPs would jeopardize the confidentiality of ongoing investigations and provide bad actors with intimate details on how to defeat FEMA's anti-fraud efforts and mitigation activities." *Id.*

FEMA acknowledges that the internal guidance material over which Exemption 7(E) has been asserted would have traditionally been deemed exempt under Exemption 2, 5 U.S.C. § 552 (b)(2). However, in *Milner v. Dep't of the Navy*, 131 S. Ct. 1259 (2011), the Supreme Court narrowed the scope of that exemption. Prior to *Milner*, records that were "predominantly internal" and either of no genuine public interest, which was referred to as "Low 2," or be matters of a more substantial nature if the disclosure would significantly risk circumvention of the law, which was referred to as "High 2", fell within Exemption 2. *See Crooker v. ATF*, 670 F.2d 1051 (1981). *Milner* held that Exemption 2 only applies to internal agency information that relates solely to "personnel" rule and practices.

In holding that FOIA's statutory language did not support the longstanding "High 2" interpretation, Justice Alito noted in his concurring opinion that "the Government may avail itself of numerous other exemptions . . . —exemptions that may have been overshadowed in recent years by the broad reach of High 2." 131 S.Ct. at 1271 (concurrence). Justice Alito also noted that, with respect to Exemption 7(F), that "law enforcement purposes" should be read to include not just investigations and prosecutions, "but also proactive steps designed to prevent criminal activity. . ." *Id.*

Further, prior to *Milner*, Exemption 2 and Exemption 7(E) were often used in conjunction. *See, e.g., Voinche v. FBI,* 940 F. Supp. 323, 329, 332 (D.D.C. 1996) (approving nondisclosure of information "relating to the security of the Supreme Court building and the security procedures for Supreme Court Justices" under both Exemptions 2 and 7(E)). It is against this backdrop, that FEMA invokes Exemption 7(E) in this case.

If the Court determines that FEMA did not properly invoke Exemption 7(E), FEMA requests that the Court not order it to place the material in question online, but that it only order FEMA to produce the records to Plaintiff.  That is all the law allows for as discussed above. Moreover, the internal documents in question are not 5 U.S.C. § 552(a)(2) material. *See* Bridges Decl. at ¶ 14. Finally, the concerns articulated above regarding the desire to prevent fraudulent activity also weigh against the Court utilizing any equitable power (which Defendants' do not concede that the Court has available here) to order their publication online.

### C.   Plaintiff has no valid FOIA claim regarding future documents.

Plaintiff's claim regarding future documents fails as a matter of law. Plaintiff seeks to have the Court compel FEMA to publish documents that have not yet been created. *See* Complaint ("Compl."), Doc. No. 1, ("Prayer . . . requesting on order compelling the publication of records "including all future standards"). But FEMA will make a determination on any such document after they are created based on the law applicable at the time. *See* Bridges Decl. at ¶ 10.  FOIA's disclosure requirements and the relief available under the statute apply to "information that already exists,

not information that will be created in the future." *Humane Socy. of the U.S. v. U.S. Fish and Wildlife Serv.*, 838 Fed. Appx. 721, 731 (4th Cir. 2020). Indeed, the *Humane Society* court specifically held that where "eFOIA requests have been satisfied . . . and the prospective relief sought is with regard to documents not yet created, we fail to see how FOIA provides any entitlement to relief." *Id.* (internal quotations omitted).

### D.    The APA does not apply because there is an adequate alternative remedy.

The Court lacks jurisdiction over Plaintiff's APA claim because Plaintiff has an adequate alternative remedy in the form of a FOIA action. The mere fact that the available relief—receiving the records in question—is not precisely what Plaintiff wants does not render a FOIA action inadequate. Plaintiff's alleged injury is that the unpublished FEMA materials is needed by it and its members to effectively navigate IHP. FOIA allows Plaintiff to obtain those records, disseminate them, and thereby, remedy the injury. That constitutes an alternative, adequate remedy, and permitting Plaintiff's APA claim to proceed would be impermissibly duplicative.

The APA provides that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. The requirement that "there be no other adequate remedy" for review to be appropriate under the APA "reflects Congress' judgment that 'the general grant of review in the APA' ought not 'duplicate existing procedures for review of agency action' or 'provide additional judicial remedies in situations where Congress has provided special and adequate review procedures.'" *CREW*, 846 F.3d at 1244 (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988)). "When

another statutory vehicle provides an adequate remedy in a court, claims brought under the APA are properly dismissed." *Pereira v. United States Dep't of Justice*, No. 16 CIV. 2599 (NRB), 2016 WL 2745850, at *13 (S.D.N.Y. May 11, 2016); *see also Hinojosa v. Horn*, 896 F.3d 305, 311 (5th Cir. 2018) (noting that courts should defer to the more specific statute when Congress establishes "both agency obligations and a mechanism for judicial enforcement in the same legislation") (citing CREW, which was referring to FOIA).

Alternative remedies need not be identical to bar review under § 704; they need only be adequate. The adequacy of the relief available need not provide the identical review that the APA would provide, so long as the alternative remedy offers the "same genre" of relief. *See Hinojosa v. Horn*, 896 F.3d 305, 310 (5th Cir. 2018) (internal quotations and citations omitted). Indeed, the relief available in non-APA actions "may be adequate" within the meaning of 5 U.S.C. § 704 "even if such actions . . . 'may be more arduous, and less effective in providing systemic relief, than continuing judicial oversight of federal government enforcement.'" *Garcia v. Vilsack*, 563 F.3d 519, 525 (D.C. Cir. 2009) (quoting *Women's Equity Action League v. Cavazos*, 906 F.2d 742, 751 (D.C. Cir. 1990)). Moreover, a plaintiff need not succeed on the merits of the alternative for it to be considered "adequate." *See Rollerson v. Brazos River Harbor Nav. Dist. of Brazoria County Texas*, 6 F.4th 633, 642 (5th Cir. 2021).

Courts have consistently held that a request for documents under FOIA operates as an adequate remedy, precluding invocation of the APA. *See CREW*, 846 F.3d at 1244-46; *Walsh v. U.S. Dep't of Veterans Affairs*, 400 F.3d 535, 538 (7th Cir.

16

2005); *Cent. Platte Nat. Res. Dist. v. U.S. Dep't of Agric.*, 643 F.3d 1142, 1148-49 (8th Cir. 2011); *Rimmer v. Holder*, 700 F.3d 246, 262 (6th Cir. 2012). *CREW* is particularly instructive on this point because it addressed an APA claim seeking the same relief that Plaintiff seeks here. In *CREW*, the D.C. Circuit held that FOIA provided an alternative, adequate remedy because the "creation of both agency obligations and a mechanism for judicial enforcement in the same legislation suggests that FOIA itself strikes the balance between statutory duties and judicial enforcement that Congress desired." *CREW*, 846 F.3d at 1245. Thus, the court determined that FOIA offered "precisely the kind of 'special and adequate review procedure[ ]' that Congress immunized from "duplic[ative]' APA review." Id. at 1246 (quoting *Bowen*, 487 U.S. at 903). The *CREW* court noted that unlike *Bowen*, where the Supreme Court held that "an alternative remedy that offered only monetary relief as an inadequate substitute for the 'general equitable powers of a district court,'" there was "no yawning gap between the relief FOIA affords and the relief [the plaintiff] seeks under the APA." *Id*. (quoting *Bowen*, 487 U.S. at 905). In sum, FOIA provides an alternative, adequate remedy, and Plaintiff's APA claim should be dismissed.

### E. Plaintiff's APA claim is an impermissible programmatic challenge.

Rather than identifying and challenging a discrete, final agency action, Plaintiff's APA claim attacks FEMA's overall practice of allegedly failing to comply with FOIA. Specifically, Plaintiff alleges that FEMA's alleged delay in and "failure to ensure that all of their procedural and substantive IHP eligibility standards are available for public inspection" violates the APA. *See* Compl. ¶84-85. These types of

claims constitute impermissible programmatic challenges under the APA for which the Court's lacks subject matter jurisdiction to hear.

The Fifth Circuit's decision in *Sierra Club v. Peterson*, 228 F.3d 561, is the seminal case on programmatic challenges. In *Sierra Club* the en banc Fifth Circuit held that, where the plaintiffs had failed to challenge an "identifiable final agency action[,]" the district court did not have jurisdiction under the APA to review the agency's conduct. *Sierra Club*, 228 F.3d at 561. The plaintiffs in *Sierra Club* sued the United States Forest Service ("Forest Service") in an attempt to stop the use of even-aged timber management, alleging that specific acts of the Forest Service violated the National Forest Management Act of 1976 and "challeng[ing] the Forest Service's entire program of allowing timber harvesting in the Texas forests." *Id*. at 563. The Fifth Circuit found the plaintiffs' challenge to be an impermissible programmatic challenge because they sought the wholesale improvement of the Forest Service's management of Texas forests. *Id*. at 566. The fact that plaintiffs had identified specific timber sales that were arguably final agency actions did not change the analysis: plaintiffs could not "challenge an entire program by simply identifying specific allegedly-improper final agency actions within that program . . ." *Id*. at 567. The Fifth Circuit reached this conclusion after reviewing the plaintiffs' allegations and requests for relief, which were not limited to discrete agency actions but were instead focused on the program as a whole. *Id*.

Here, like the plaintiffs in *Sierra Club*, Plaintiff attempts to use FEMA's response to its FOIA request as a basis for wholesale improvements in FEMA's IHP.

*See Humane Socy. of the U.S. v. U.S. Fish and Wildlife Serv.*, 838 Fed. Appx. 721, 733 (rejecting FOIA based APA claim because it constituted a programmatic challenge); *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 66 (2004) (holding that courts are not "empowered to enter general orders compelling compliance with broad statutory mandates"). This is no surprise as Plaintiff has attempted to make similar broad, program-wide changes to IHP for years using various statutes. Indeed, the relief sought here drives the point home. Plaintiff asks the Court to "enjoin FEMA from using any unpublished rules to decide IHP applications." Compl. at p. 15. This type of broad programmatic challenge is not permitted under the APA.

### F.    Other reasons why Plaintiff's APA claim fails

In addition to the foregoing arguments, Plaintiff's APA claim fails for a number of other reasons.  First, the claim is barred by the Stafford Act's discretionary function exception. *See Barbosa v. U.S. Dept. of Homeland Sec.,* 278 F.Supp. 3d 325, 328 (D.D.C. 2017); *see also St. Tammany Par., ex rel. Davis v. Fed. Emerg. Mgt. Agency*, 556 F.3d 307, 325 (5th Cir. 2009) (holding that APA notice and comment claim, among others, was foreclosed by the Stafford Act's discretionary function exception").

Second, any claims based on the APA's "arbitrary and capricious" standard of review fails because of the lack of a final agency action at the time Plaintiff filed the complaint. To be reviewable under the APA, a challenged action must be final agency action. 5 U.S.C. § 704; *see Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 18 (D.C. Cir. 2006) (noting that whether there has been a final agency action is a "threshold question"). A district court lacks jurisdiction under the APA to review

agency proceedings that are still in progress and therefore not final. *See Am. Gen. Ins. Co. v. FTC*, 359 F. Supp. 887, 891 (S.D. Tex. 1973), aff'd sub nom. *Am. Gen. Ins. Co. v. FTC*, 496 F.2d 197 (5th Cir. 1974). This Court therefore lacks subject-matter jurisdiction to hear Plaintiff's APA § 706(2) claim, because Plaintiff failed to identify and challenge a final agency action.

Finally, FEMA has responded to Plaintiff's FOIA request by both providing the requested documents and placing them online for the public to access. Thus, should the Court reach the merits on any of Plaintiff's APA claims, they fail for all the reasons discussed above.

## CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiff's Complaint or, if the Court reaches the merits, grant summary judgment in favor of Defendants.

DATED: October 21, 2022

> Respectfully Submitted,
>
> JENNIFER B. LOWERY
> UNITED STATES ATTORNEY
>
> *s/Jimmy A. Rodriguez*
> Jimmy A. Rodriguez
> Assistant United States Attorney
> Southern District of Texas
> Attorney in Charge
> Texas Bar No. 24037378
> Federal ID No. 572175
> 1000 Louisiana, Suite 2300
> Houston, Texas 77002
> Tel: (713) 567-9532
> Fax: (713) 718-3303
> jimmy.rodriguez2@usdoj.gov

ATTORNEYS FOR THE UNITED STATES

Of counsel:
Joseph Macri II, Trial Attorney
FEMA – Office of Chief Counsel
Information Law Branch

## CERTIFICATE OF SERVICE

I certify that on October 21, 2022, a true and correct copy of the foregoing was

filed with the United States District Clerk for the Southern District of Texas and

electronically served on all counsel of record via the District's ECF system.

*s/ Jimmy A. Rodriguez*
Jimmy A. Rodriguez
Assistant United States Attorney