United States District Court
Southern District of Texas
**ENTERED**
June 12, 2023
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## LAREDO DIVISION

| | | |
|---|---|---|
| LA UNION DEL PUEBLO ENTERO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 5:21-CV-71 |
| | § | |
| FEDERAL EMERGENCY | § | |
| MANAGEMENT AGENCY, *et al.*, | § | |
| | § | |
| Defendants. | § | |

### REPORT AND RECOMMENDATION

Before the Court are two motions. The first pending motion is Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, (Dkt. No. 40). The second pending motion is Plaintiff's Motion for Discovery, (Dkt. No. 42).

This lawsuit involves Plaintiff La Unión Del Pueblo Entero's ("LUPE") Freedom of Information Act ("FOIA") request to the Federal Emergency Management Agency ("FEMA"). LUPE seeks to compel FEMA to post additional information in its online electronic reading room pursuant to 5 U.S.C. § 552(a)(2) and also seeks a prospective injunction ordering FEMA to post information to its website in the future.

Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment asserts various grounds for dismissing Plaintiff's claims and moves for summary judgment. For the reasons discussed below, this Court recommends that Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, (Dkt. No. 40), be granted in part and denied in part. This Court finds that there is a genuine issue of material fact as to whether FEMA's FOIA search was adequate. This Court will therefore recommend to the District Judge that Defendants' Motion be denied at this time as to LUPE's claim under 5 U.S.C. § 552(a)(2) and that Defendants be given an opportunity to supplement the record regarding the adequacy of FEMA's search. This Court will further recommend that the District Judge deny Defendants' arguments that LUPE is not entitled to relief under 5 U.S.C. § 552(a)(4)(B) to compel posting to the online electronic reading room or for a prospective injunction. Finally, this Court will recommend that Defendants' motion for dismissal of LUPE's claims under the Administrative Procedures Act, 5 U.S.C. § 701, *et seq.* be granted.

Plaintiff's Motion for Discovery, (Dkt. No. 42), seeks an order setting forth the terms of discovery in this case. For the reasons discussed below, this Court will recommend that the District Judge deny without prejudice Plaintiff's Motion for Discovery, (Dkt. No. 42).

## I. BACKGROUND

On May 14, 2021, LUPE submitted a FOIA request to FEMA under 5 U.S.C. § 552(a)(2). (Dkt. No. 1-1). LUPE requested that FEMA "make publicly available in its online electronic reading room" the following:

a. all records that communicate to any FEMA employee or to any FEMA contractor (including subcontractors) any substantive or procedural standard that is or will be used by FEMA, FEMA employees, FEMA contractors, or FEMA subcontractors to help decide any application for assistance under the Individuals and Households Program ("IHP") established in 42 U.S.C. § 5174[1] following a disaster declared after January 1, 2019; and

b. all records that state any future change to any existing substantive or procedural IHP standard described above, regardless of whether the change is disaster-specific or applies to all future disasters.

(Dkt. No. 1-1). LUPE and FEMA corresponded via mail from May to July of 2021, but FEMA did not issue a determination regarding LUPE's request within the period allowed by 5 U.S.C. § 552(a)(6). (Dkt. Nos. 1 and 1-2 through 1-4; *see* Dkt. Nos. 40 and 40-1 at 2).

On July 14, 2021, LUPE filed a Complaint for Injunctive and Declaratory Relief ("Complaint") against Defendants FEMA and the United States Department of Homeland Security ("DHS"), (collectively, "Defendants"). (Dkt No. 1). Specifically, LUPE alleged that "FEMA's refusal to publish its rules diminishes recovery efficiency and effectiveness, and violates the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and the Administrative Procedure Act (APA), 5 U.S.C. § 701, *et seq."* (*Id.* at 1).[2] LUPE sought "an order directing FEMA to publish on its website all substantive and procedural rules that it uses, as required

---

[1] The Robert T. Stafford Disaster Relief and Emergency Assistance Act ("Stafford Act") governs the federal government's response to emergencies and "major disasters." Pub. L. 93-288, § 101 (May 22, 1974) (codified at 42 U.S.C. §§ 5121, *et seq.* (as amended)). FEMA administers several Stafford Act programs, including the Individuals and Households Program ("IHP"). 42 U.S.C. § 5174. Under the Stafford Act, FEMA is required to "prescribe rules and regulations to carry out this section, including criteria, standards, and procedures for determining eligibility for assistance." 42 U.S.C. § 5174(j).

[2] FEMA asserts two causes of action: (1) a FOIA claim for FEMA's alleged failure to make records publicly available, and (2) a claim that FEMA's "final agency action" with respect to making records publicly available under FOIA allegedly violates the APA. (Dkt. No. 1 at 12–14).

by 5 U.S.C. § 552(a)(2)." (*Id.*). Defendants filed their answer on November 19, 2021. (Dkt. No. 2).

By September 2022, FEMA produced 4,372 pages of responsive documents to LUPE and made them publicly available online. (Dkt. Nos. 40-1 at 3 and 45 at 13). FEMA withheld approximately 2,400 pages under certain FOIA exemptions. (*Id.* at 4). FEMA filed a *Vaughn* index, which identifies the withheld documents and relevant FOIA exemptions. (Dkt. No. 40-2). Additionally, FEMA did not "mak[e] a determination on the release of documents that will be created in the future" but stated that it will evaluate those materials when they are created. (Dkt. No. 40-1 at 3).

On October 21, 2022, Defendants filed a Motion to Dismiss, or in the Alternative, for Summary Judgment, (Dkt. No. 40), which has been fully briefed, (Dkt. Nos. 45 & 50). On November 21, 2022, Plaintiff filed its Motion for Discovery, (Dkt. No. 42), which is also fully briefed, (Dkt. Nos. 47 & 48).

## II. DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

### A. Legal Standards and Applicable Law

#### (1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(h)(3) preserves a party's ability to move to dismiss for lack of subject matter jurisdiction even after Defendants have filed their answer, (Dkt. No. 5). *See* FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). The party asserting federal jurisdiction bears the burden of establishing its existence. *Alabama-Coushatta Tribe of Texas v. United States*, 757 F.3d 484, 487 (5th Cir. 2014). In deciding a motion to dismiss for lack of subject-matter jurisdiction, courts may consider: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Tsolmon v. United States*, 841 F.3d 378, 382 (5th Cir. 2016) (citation omitted). A court should only grant a motion to dismiss for lack of subject-matter jurisdiction "if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir.1998)).

### *(2) Motion to Dismiss for Mootness*

Under FOIA, a plaintiff can obtain relief "upon a showing that an agency has (1) 'improperly'; (2) 'withheld'; (3) 'agency records.'" *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980) (quoting 5 U.S.C. § 552(a)(4)(B)). A federal court can provide relief under FOIA only "if the agency has contravened all three components of this obligation." *Id*. A claim is rendered moot when an agency properly responds to a FOIA request. *See Calhoun v. FBI*, 546 F. App'x 487, 490 (5th Cir. 2013) (citing *Voinche v. FBI*, 999 F.2d 962, 963 (5th Cir. 1993)). However, "[a] FOIA claim is not moot . . . if the agency produces what it maintains [are] all the responsive documents, but the plaintiff challenges whether the agency's search for records was adequate." *Id*. (citing *Nw. Univ. v. Dep't of Agric.*, 403 F. Supp. 2d 83, 85-86 (D.D.C. 2005)); 5 U.S.C. § 552(a)(3)(C)–(D) (requiring agencies to conduct a search reasonably calculated to uncover all records responsive to the request). "The heavy burden of establishing mootness lies with the party asserting a case is moot." *Brustein & Manasevit*, 30 F. Supp. 3d at 5 (citation and quotation omitted).

### *(3) Motion for Summary Judgment*

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In determining whether a genuine dispute exists, the court must consider all the evidence and view all facts in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citation omitted). A fact is material if a factual issue's resolution could affect the claim's outcome. *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003) (citation omitted). A genuine dispute exists if a reasonable trier of fact could possibly find in favor of the non-moving party. *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (citation omitted).

Most FOIA cases are resolved on summary judgment. *Cooper Cameron Corp. v. U.S. Dep't of Labor*, 280 F.3d 539, 543 (5th Cir. 2002). In the FOIA context, however, the traditional summary judgment standard is modified because "the threshold question in any FOIA suit is whether the requester can even *see* the documents the character of which determines whether they can be released." *Batton v. Evers*, 598 F.3d 169, 175 (5th Cir. 2010) (quoting *Cooper Cameron Corp.*, 280 F.3d at 543). For summary judgment to be granted in favor of a defendant agency in a FOIA case, the agency must prove that it has "fully

discharged its obligations under FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1382 (8th Cir. 1985) (citing *Weisberg v. U.S. Dep't of Just.*, 705 F.2d 1344, 1350 (D.C. Cir. 1983); *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). An agency must show that the documents within the class requested have either been produced, are identified, or are exempt from disclosure. *Miller*, 779 F.2d at 1383 (citing *Nat'l Cable Television Ass'n, Inc. v. FCC.*, 479 F.2d 183, 186 (D.C. Cir. 1973). An agency's search for requested records is adequate if it shows "beyond a material doubt that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg*, 705 F.2d at 1351. This may be proved "through affidavits of responsible agency officials so long as the affidavits are relatively detailed, nonconclusory, and submitted in good faith." *Miller*, 779 F.2d at 1383 (citation omitted).

### (4) Freedom of Information Act ("FOIA")

FOIA's "dominant objective" is to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976). As such, "in judging agencies' attempts to withhold information, courts use a 'strong presumption in favor of disclosure.'" *Cooper Cameron Corp. v. U.S. Dep't of Lab., Occupational Safety & Health Admin.*, 280 F.3d 539, 545 (5th Cir. 2002) (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991). With the enactment of FOIA, Congress intended to implement a "general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *Id.* at 360–61. FOIA requires agencies to "make available for public inspection in an electronic format" certain information, including, but not limited to, the following:

> (B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register [under § 552(a)(1) and];
>
> (C) administrative staff manuals and instructions to staff that affect a member of the public . . . .

5 U.S.C. § 552(a)(2)(B) and (C). Finally, FOIA establishes a private right of action and provides district courts with "jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).

#### B. Analysis

##### (1) Defendants' post-lawsuit actions have not mooted any part of LUPE's claims.

Defendants argue that, because of FEMA's production of all responsive documents to LUPE and online publication of those documents, LUPE's "claim seeking an order compelling FEMA to place certain documents online is resolved, except for any challenge to the decision to withhold documents as identified in the Vaughn Index." (Dkt. No. 40 at 9). In other words, Defendants appear to argue that LUPE's claims are moot because it has already produced or posted all responsive records. In response, LUPE argues that its claims are not moot because, *inter alia*, FEMA's FOIA search was inadequate. (Dkt. No. 45 at 41–47).

A claim is rendered moot when an agency properly responds to a FOIA request. *See Calhoun v. FBI*, 546 F. App'x 487, 490 (5th Cir. 2013) (citing *Voinche v. FBI*, 999 F.2d 962, 963 (5th Cir. 1993)). However, even where an agency has responded to a request, a court must still address a plaintiff's claims that a search was inadequate and that it should have received other documents. *See, e.g.*, *Brustein & Manasevit, PLLC v. U.S. Dep't of Educ.*, 30 F. Supp. 3d 1, 5 (D.D.C. 2013); *Dimodica v. U.S. Dep't of Just.*, No. 05 CIV. 2165(GEL)(FM, 2006 WL 89947, at *4 (S.D.N.Y. Jan. 11, 2006); *see also Short v. U.S. Army Corps of Eng'rs*, 593 F. Supp. 2d 69, 72 n.5 (D.D.C. 2009) ("Because [plaintiff] challenges the adequacy of the search, the motion to dismiss as moot must be denied."). In other words, "'[t]o moot a FOIA claim . . . the agency's production must give the plaintiff everything to which [the plaintiff] is entitled." *Yonemoto v. Dep't of Veterans Affs.*, 686 F.3d 681, 689 (9th Cir. 2012), *overruled on other grounds by Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987 (9th Cir. 2016) (en banc). "Otherwise, there remains some effective relief that can be provided the plaintiff, and the case is not moot." *Id.* (internal citation and quotation omitted). "A FOIA claim is not moot . . . if the agency produces what it maintains [are] all the responsive documents, but the plaintiff challenges whether the agency's search for records was adequate." *Id.* (citing *Nw. Univ. v. Dep't of Agric.*, 403 F. Supp. 2d 83, 85-86 (D.D.C. 2005)); 5 U.S.C. § 552(a)(3)(C)–(D) (requiring agencies to conduct a search reasonably calculated to uncover all records responsive to the request). "The heavy burden of establishing mootness lies with the party asserting a case is moot." *Brustein & Manasevit*, 30 F. Supp. 3d at 5 (citation and quotation omitted).

LUPE asserts that its claims are not moot because FEMA disregarded LUPE's claim for injunctive relief and did not attempt to prove it was moot. (Dkt. No. 45 at 40). LUPE seeks "injunctive relief [needed] to end FEMA's longstanding and continuing violation of FOIA." (Dkt. No. 45 at 40; *see* Dkt. No. 1 at 12–15).[3] "[E]ven though a party may have obtained relief as to a *specific request* under the FOIA, this will not moot a claim that an agency *policy or practice* will impair the party's lawful access to information in the future." *Payne Enters. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988).[4] Defendants did not separately argue and attempt to prove that LUPE's policy or practice claim for injunctive relief is moot, and, as such, have not met their burden. (*See* Dkt. Nos. 40 & 50). *See Brustein & Manasevit, PLLC*, 30 F. Supp. 3d at 5 (stating that the party asserting mootness bears the burden). However, Defendants did move to dismiss LUPE's claim for injunctive relief on the grounds that § 552(a)(4)(B) does not authorize district courts to order an agency to post records to an online reading room. (Dkt. No. 40 at 6–8). As discussed *infra*, this Court recommends that the District Judge deny the dismissal of the injunctive relief requested by LUPE, further negating the mootness argument as to that claim.

LUPE also argues that its claims are not moot because FEMA's search was inadequate and because FEMA improperly redacted the records it produced. (Dkt. No. 45 at 41, 47–48, 60). Although FEMA has produced responsive records, LUPE's challenge to both the adequacy of the search and the invocation of FOIA exemptions means that there is still a controversy to be resolved, and therefore its claims are not moot. The production of records does not render the case moot because LUPE still has a "cognizable interest in having a court determine the adequacy of the agency's search for records." *Brustein & Manasevit*, 30 F. Supp. 3d at 6 (internal quotation and citation omitted); *see also Yonemoto*, 686 F.3d at 689 ("A FOIA claim is not moot . . . if the agency produces what it maintains [are] all the responsive documents, but the plaintiff challenges whether the agency's search for records was adequate."). This Court finds that Plaintiff has a cognizable interest in having the Court

---

[3] LUPE also states that, "[a]fter completing any permitted discovery, [it] expects to file its cross-motion for summary judgment setting forth record evidence proving that FEMA continues its longstanding refusal to disclose its IHP eligibility standards as alleged in the Complaint, and injunctive relief is warranted to secure FEMA's compliance with 5 U.S.C. § 552(a)(2)." (Dkt. No. 45 at 41).

[4] "Courts have interpreted *Payne* as authorizing declaratory or injunctive relief under FOIA even when a plaintiff's specific claim regarding a FOIA request is moot because the requested documents have been released." *Muttitt v. U.S. Cent. Command*, 813 F. Supp. 2d 221, 228 (D.D.C. 2011) (citing *Pub. Emps. for Envt'l Responsibility v. Dep't of Interior*, No. 06–182, 2006 WL 3422484, at *9 (D.D.C. Nov. 28, 2006)).

determine whether FEMA's search for records was adequate.

Based on the foregoing, this Court **RECOMMENDS** that Defendants' motion to dismiss LUPE's complaint on mootness grounds be **DENIED**.

### *(2) There is a genuine issue of material fact as to whether FEMA's FOIA search was adequate.*

As an alternative to its motion to dismiss, Defendants move for summary judgment on the ground that FEMA's search for responsive records was adequate. (See Dkt. No. 40 at 1; Dkt. No. 50 at 10). Based on the evidence presented by the parties, this Court finds that Defendants have failed to prove as a matter of law that FEMA has conducted an adequate search.

To establish that it conducted an adequate search, an agency may demonstrate that it used search methods reasonably expected to produce the requested information. *Batton v. Evers*, 598 F.3d 169, 176 (5th Cir. 2010) (citing *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir.1990)). A court determines adequacy by assessing the reasonableness of the search, viewing the facts in the light most favorable to the plaintiff. *Citizens Comm'n on Hum. Rts. v. FDA*, 45 F.3d 1325, 1328 (9th Cir. 1995). To establish compliance with FOIA, an agency must demonstrate "beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia–Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990).

To show it has met its burden under FOIA, an agency may present a reasonably detailed affidavit or declaration containing (1) the search terms used, (2) the type of search performed, and (3) a statement that all files likely to contain existing materials responsive to the request were searched. *Id.* at 326 (quoting *Oglesby*, 920 F.2d at 68); *see also Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 92 (D.D.C. 2009) (stating that agency declarations "must describe what records were searched, by whom, and through what processes"). An agency's declarations must be reasonably detailed in explaining both the scope of the search and the methods used and must "demonstrate the apparent adequacy of the search[.]" *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982).

An agency's affidavit or declaration carries a "presumption of legitimacy" unless evidence exists that the agency handled the request in bad faith. *Batton*, 598 F.3d at 176

(quoting *U.S. Dep't of State v. Ray,* 502 U.S. 164, 179 (1991)). But this presumption of legitimacy does not create a presumption that an agency's search was adequate. *Negley v. FBI,* 589 F. App'x 726, 730 (5th Cir. 2014). In other words, the court "will assume that the agency is telling the truth about its search, but that does not mean that the court must accept the agency's assertion that the search was adequate." *Id.* While evidence of bad faith is necessary to overcome the presumption of legitimacy, a plaintiff can defeat summary judgment with evidence that the declaration submitted by the agency does not describe an adequate search. *Id.* Summary judgment in favor of the defendant agency is not proper where records responsive to a FOIA request are unsatisfactory or "the agency's responses raise serious doubts as to the completeness of the search." *Perry,* 684 F.2d at 127; *see also Truitt,* 897 F.2d at 542 ("If . . . the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper").

In support of their motion, Defendants have provided a declaration from Gregory Bridges, the Chief of the Disclosure Branch in the Office of the Chief of the Administrative Officer, to demonstrate the adequacy of the search. (Dkt. No. 40-1). The portion of Bridges' declaration describing the adequacy of FEMA's search consists of the following:

6. The Office of Response and Recovery (ORR), IHP and the Reporting and Analytics Division (RAD), conducted multiple searches of major information systems, including FEMA's network data system within the r-drive, Processing Procedures Manual (PPM), FEMA NPSC Programs intranet portal, Virginia Systems Repository (VSR), and Individual Assistance Pre-Shift Notes (IAPN) platform. The search terms used derived from the Plaintiff's request. The search produced a total of 3,893 pages of responsive records consisting of standard operating procedures (SOPs), training material, and pre-shift instructions for staff providing individual assistance to various designated disasters in the country.

7. An additional search was conducted in FEMA's Region 6 (R6) for responsive records related to the IHP in their areas of responsibility. R6 conducted a search of their respective network drives and SharePoint sites using search terms such as, "inspections" and "guidelines". The results of the R6 search yielded 442 pages of inspection guidelines.

(*Id.* at 2–3).

Defendants assert that Bridges' declaration is "entitled to a 'presumption of legitimacy' unless there is evidence of bad faith in handling the FOIA request." (Dkt. No. 50 at 10) (citing *Batton,* 598 F.3d at 176). Defendants contend that Bridges' "detailed explanation demonstrates that FEMA performed a search reasonably calculated to uncover

all relevant documents," and that "[t]he fact that Plaintiff believes that additional documents may exist does not render the search inadequate." (Dkt. No. 50 at 10). LUPE argues that this information regarding the adequacy of FEMA's search is deficient because (a) FEMA provides insufficient evidence of search adequacy, (b) entire categories of requested documents remain missing, and (c) FEMA still has not disclosed how it decides IHP eligibility. (Dkt. No. 45 at 41–46). Each of these arguments will be addressed in turn.

### (a) Insufficient Evidence of Search Adequacy

LUPE argues that FEMA's declaration provides insufficient evidence of the adequacy of its search. (Dkt. No. 45 at 41). Courts have determined that there was insufficient evidence of an adequate search when the agency fails to assert in its declarations that it searched for the documents requested using a method that is reasonably expected to produce all requested records. *See Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) ("At the very least, [the agency] was required to explain in its affidavit that no other record system was likely to produce responsive documents."); *Papa v. United States*, 281 F.3d 1004, 1013 (9th Cir. 2002) (reversing summary judgment where "nothing in the record certif[ies] that all the records . . . have been produced"); *Shapiro v. DOJ*, 214 F. Supp. 3d 73, 78 (D.D.C. 2016) (quoting *Oglesby*, 920 F.2d at 68) (finding that search cannot be found adequate because "at no point in [its] declarations does [defendant] ever aver[] that all files likely to contain responsive materials (if such records exist) were searched."); *Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 21 F. Supp. 3d 60, 71 (D.D.C. 2014) ("Where the government has not made such an attestation, courts have typically found that an issue of material fact exists as to the adequacy of the search."); *Murray v. Bureau of Prisons*, 741 F. Supp. 2d 156, 163 (D.D.C. 2010) (finding affidavit insufficient because it failed to "establish that the systems of records actually searched were those most likely to contain records responsive to plaintiff's FOIA request").

Courts have also found declarations to be insufficient when they lack certain details about an agency's search. For example, they have been found insufficient when they did not state whether paper or electronic files were searched or whether all relevant databases were searched. *See Navigators Ins. Co. v. DOJ*, 155 F. Supp. 3d 157, 170 (D. Conn. 2016). They have also been found to be insufficient when they failed to describe "with particularity the files that were searched [or] the manner in which they were searched." *Murray*, 741 F. Supp. 2d at 163. Additionally, declarations have been found insufficient when they did not include

the search terms[5] used by the agency. *See, e.g., Nat'l Day Laborer Organizing Network v. U.S. Immigr. & Customs Enforcement Agency*, 877 F. Supp. 2d 87, 106, 110 (S.D.N.Y. 2012) ("It is impossible to evaluate the adequacy of an electronic search for records without knowing what search terms have been used."). The district court in *National Day Laborer Organizing Network* explained:

> [F]or over twenty years, courts have required that these affidavits 'set[ ] forth the search terms and the type of search performed.' . . . . So it bears repetition: the government will not be able to establish the adequacy of its FOIA searches if it does not record and report the search terms that it used[.]

*(Id.) (*quoting *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 313 (D.C. Cir. 2003)).

LUPE argues that FEMA's declaration did not include any of the following details which various courts have required to conclude a search was adequate: "descriptions of the agency's record storage systems detailed enough to indicate that the proper record systems were searched, what locations were searched, how the search was conducted, and exactly what search terms were used." (Dkt. No. 45 at 42; *see* Dkt. No. 40-1 at 2–3).

This Court agrees that Bridges' declaration[6] lacks several important details necessary to determine the adequacy of the search. Bridges' declaration states which offices and divisions conducted the searches ("Office of Response and Recovery (ORR), IHP and the Reporting and Analytics Division (RAD)" and "FEMA's Region 6 (R6)") and that "major information systems, including FEMA's network data system within the r-drive, Processing Procedures Manual (PPM), FEMA NPSC Programs intranet portal, Virginia Systems Repository (VSR), and Individual Assistance Pre-Shift Notes (IAPN) platform" and  R6's "network drives and SharePoint sites" were searched. (Dkt. No. 40-1 at 2–3). But Bridges' declaration does not attest that all files likely to contain responsive materials were searched, *see Oglesby*, 920 F.2d at 68, nor does it establish that the systems of records actually searched were those most likely to contain records responsive to LUPE's FOIA

---

[5] "Agencies generally have 'discretion in crafting a list of search terms' as long as they are 'reasonably tailored to uncover documents responsive to the FOIA request,'" *Tushnet v. U.S. Immigration & Customs Enf't*, 246 F. Supp. 3d 422, 434 (D.D.C. 2017) (quoting *Bigwood v. U.S. Dep't of Def.*, 132 F. Supp. 3d 124, 140–41 (D.D.C. 2015)).

[6] Defendants also included a declaration from Johnathan Torres, the Acting Section Chief for Program Management in the IHP Service Delivery Branch of the Individual Assistance Division. (Dkt. No. 40-3). However, that declaration does not provide any information about the search FEMA conducted, but rather provides information related to FEMA's internal guidance documents and fraud controls. (*See id.*).

request, *see Murray*, 741 F. Supp. 2d at 163. (*See* Dkt. No. 40-1 at 2–3). As LUPE noted, the descriptions of the agency's record storage systems are not detailed enough to show that the proper record systems were searched. *See Navigators Ins. Co. v. DOJ*, 155 F. Supp. 3d 157, 170 (D. Conn. 2016).

The lack of detail about the specific search terms FEMA used also contributes to doubt about the adequacy of FEMA's search. Bridges' declaration merely states that "[t]he search terms used derived from the Plaintiff's request," and that, in a more limited, regional search, FEMA used "search terms such as, 'inspections' and 'guidelines.'" (Dkt. No. 40-1 at 2–3). Without further details about the search terms and how the search was conducted, it is "impossible to evaluate the adequacy of [FEMA's] search for records." *See Nat'l Day Laborer Organizing Network v. U.S. Immigr. & Customs Enforcement Agency*, 877 F. Supp. 2d 87, 106 (S.D.N.Y. 2012); *see also Oglesby*, 920 F.2d at 68 (finding that affidavit did not sufficiently describe the search, including the search terms used, and reversing summary judgment); *Transparency Project v. U.S. Dep't of Just.*, No. 420CV00467SDJCAN, 2022 WL 18776191, at *20 (E.D. Tex. Sept. 9, 2022) (denying summary judgment because affidavit lacking search terms was insufficient); *Cf., e.g., Bigwood*, 132 F. Supp. 3d at 140–41 (search found to be adequate where declaration included a comprehensive list of search terms).

While courts should give FEMA's declarations a presumption of legitimacy and accept the description of FEMA's search as true, *see Batton v. Evers*, 598 F.3d at 176, this Court nonetheless finds that the lack of key details in the declaration raises substantial doubts about the adequacy of FEMA's search. As it stands, FEMA's declarations do not satisfactorily convey the nature and scope of the searches, the sufficiency of records systems searched, or the search terms used. *See Oglesby*, 920 F.2d at 68. Overall, this Court finds that FEMA's declarations do not provide enough support to show that the search was "reasonably calculated to uncover all relevant documents." *See Truitt*, 897 F.2d at 542.

### (b) "Missing" Categories of Responsive Documents

LUPE also asserts that FEMA's Administrative Record does not contain certain categories of documents covered in its FOIA request, including: "the instructions used to train inspectors in how to collect the data that FEMA uses to decide IHP applications, 'line items' showing the amounts that FEMA pays for each specific type of disaster damage, and

IHP standards used in 2022."[7] (Dkt. No. 45 at 42–43). Each of these categories of documents are identified in LUPE's FOIA request. (*See* Dkt. No. 1-1). For each of these categories of documents, LUPE describes what the documents are and explains the significance of their absence from FEMA's response to the FOIA request. (*See* Dkt. No. 45 at 42–44). Defendants argue that their search is not rendered inadequate simply because LUPE believes that additional documents exist. (Dkt. No. 50 at 10).

The relevant question is whether the search was adequate, not whether it is possible that additional documents exist. *Batton*, 598 F.3d at 176 (5th Cir. 2010) (quoting *In re Wade*, 969 F.2d 241, 249 n. 11 (7th Cir. 1992). Suggesting that additional files exist, without an "indication of the types of records or their location," is insufficient to show that an agency did not meet its burden of proving it conducted an adequate search. *Negley v. FBI*, 589 F. App'x 726, 732 (5th Cir. 2014). An agency does not have a burden to show that no other responsive records exist. *Id.* However, granting summary judgment in favor of the defendant agency is improper where its response to a FOIA request raises serious doubts about the completeness of the search, is obviously incomplete, or is otherwise unsatisfactory. *Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't Agency*, 877 F. Supp. 2d 87, 96 (S.D.N.Y. 2012) (quoting *Exxon Corp. v. F.T.C.*, 466 F. Supp. 1088, 1094 (D.D.C.1978)). As a sister district court stated in *Transparency Project v. U.S. Dep't of Just.*, summary judgment should be denied where the court has substantial doubt, especially where the FOIA request was specific and there are indications that records were overlooked. *Transparency Project*, 2022 WL 18776191, at *16 (quoting *Taylor Energy Co. LLC v. U.S. Dep't of Interior Bureau of Ocean Energy Mgmt.*, 271 F. Supp. 3d 73, 86 (D.D.C. 2017)).

This Court is persuaded that FEMA's search has failed to identify and produce the categories of documents identified by LUPE. Although not indicative of an inadequate search on its own, the fact that entire categories of documents requested by LUPE did not appear in FEMA's search raises additional, substantial doubts as to the adequacy of its search and suggests that FEMA's response may be "patently incomplete." *See Nat'l Day Laborer Org. Network*, 877 F. Supp. 2d at 96; *see also Transparency Project*, 2022 WL 18776191, at *16. LUPE has done more than engage in "mere speculation that as yet uncovered documents may exist." *See SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1201

---

[7] LUPE states: "These categories are not exhaustive; they only show omissions large and obvious enough to indicate search inadequacy." (Dkt. No. 45 at 43).

(D.C. Cir. 1991)). The "positive indications of overlooked materials" combined with the lack of details provided in FEMA's declaration, discussed *supra*, contribute to this Court's substantial doubt about the adequacy of FEMA's search. *See Transparency Project*, 2022 WL 18776191, at *16.

Therefore, in addition to the shortcomings in Bridges' declaration, the missing documents described above further support this Court's substantial doubt as to the adequacy of FEMA's search.

### (c) Nondisclosure of IHP Eligibility Standards

Although this Court determines that there is substantial doubt as to the adequacy of FEMA's search, and thus that there is a genuine issue as to material fact as to the adequacy of the search, this Court will further address LUPE's argument that FEMA search is inadequate because it has not disclosed how it decides IHP eligibility. (Dkt. No. 45 at 44). LUPE asserts that "[n]o one can read . . . any document published by FEMA and discern how FEMA actually decides exactly how much IHP assistance to provide to any family deemed eligible for assistance." (*Id.* at 45). LUPE argues that "because FEMA admits that it withheld documents that it claims only duplicate its published eligibility standards, it has not met its summary judgment burden unless and until it can point to the specific record page numbers that reveal exactly how it makes the most basic and common IHP eligibility determinations." (*Id.* at 46). This Court does not believe that FEMA's representation that it has withheld duplicative documents equates to proof that they are withholding records reflecting IHP eligibility standards. If LUPE believes those duplicative records contain the elusive eligibility standards they are seeking, they should simply argue that the duplicative documents should be produced for the sake of completeness. Otherwise, LUPE's complaint that the records produced by FEMA do not clearly articulate the IHP eligibility standards is a complaint about the quality of FEMA's written standards, not about whether existing records are being withheld. Because these arguments appear to address the quality of the records produced by FEMA, they do not support an argument that FEMA failed to conduct an adequate search.[8]

---

[8] LUPE also contends that "FEMA's AR contains no index as required by § 552(a)(2)." (*Id.* at 35 n.12). LUPE's Complaint does not assert a claim for FEMA's failure to provide an index. (*See* Dkt. No. 1). However, this Court determines that it is not necessary to resolve this issue because it has already found that Defendants have not met their burden to prove that an adequate search was performed.

As noted above, in addressing a motion for summary judgment, all inferences must be made in favor of the non-movant. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citing *United States v. Diebold, Inc.*, 269 U.S. 364 (1962)); *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1382 (8th Cir. 1985). Because Defendants have not established that FEMA's search for records responsive to LUPE's request was "reasonably calculated to uncover all relevant documents," *see Truitt*, 897 F.2d at 542, Defendants have failed to show that FEMA's search was adequate as a matter of law, and a genuine dispute exists. Therefore, this Court **RECOMMENDS** that the District Judge **DENY** summary judgment without prejudice as to the adequacy of FEMA's FOIA search.

This Court **RECOMMENDS** that the District Judge order Defendants to supplement the record regarding FEMA's FOIA search. *See, e.g., Transparency Project*, 2022 WL 18776191, at *22 (providing defendant an opportunity to supplement the record about the FOIA search).[9] This Court further **RECOMMENDS** that the District Judge order Defendants to file a corresponding renewed motion for summary judgment. *See, e.g., Murray v. Fed. Bureau of Prisons*, 741 F. Supp. 2d 156, 164–65 (D.D.C. 2010) (providing opportunity to renew motion for summary judgment); *Jud. Watch, Inc. v. U.S. Dep't of Just.*, 185 F. Supp. 2d 54 (D.D.C. 2002) (ordering defendant to "file a renewed motion for summary judgment addressed to the adequacy of search issue, with supplemental affidavits or declarations demonstrating the adequacy of its search for records responsive to plaintiff's FOIA request").

This Court further **RECOMMENDS** that the District Judge **DENY without prejudice** Defendants' Motion for Summary Judgment as to the exemptions to disclosure

---

[9] *Transparency Project* also cites cases that have provided a similar opportunity:
*See Swick v. U.S. Dep't of the Army*, No. CV 18-1658 (JDB), 2020 WL 6561360, at *4 (D.D.C. Nov. 9, 2020) (requiring the defendant to "clarify through sworn affidavit or declaration, or through relevant documentation, the exact nature of the electronic search by [the agency]. . . , including a specific description of which databases were searched and which search terms were used. That submission should also 'describe at least generally the structure' of [the agency's] electronic file systems, and provide 'the agency's rationale in identifying any specific databases.'") (citations omitted) (quoting *Int'l Counsel Bureau v. DOD*, 657 F. Supp. 2d 33, 40 (D.D.C. 2009)) (cleaned up); *Manatt v. U.S. Dep't of Homeland Sec.*, 473 F. Supp. 3d 409, 417 (E.D. Pa. 2020) ("The Court will not, at this point, conclude that USCIS's search was inadequate, though that possibility exists. Instead, the Court will give USCIS an opportunity to supplement the record with additional detail about the search that it conducted. Plaintiffs can then renew their motion if the additional detail does not satisfy them that USCIS has conducted an adequate search."). 
*Transparency Project*, 2022 WL 18776191, at *22.

claimed by Defendants because it would be premature to conduct the analysis when this Court has found that Defendants did not sufficiently demonstrate that FEMA's search was adequate. As one district court in the D.C. Circuit held,

> Although it may be that some responsive information may be properly withheld under FOIA's law enforcement exemption, in light of my determination that the Government's search and review of documents responsive to [Plaintiff's] request was insufficient to merit summary judgment, it is premature at this stage to conduct this analysis.

*Am. Immigr. Laws. Ass'n v. U.S. Dep't of Homeland Sec.*, 306 F. Supp. 3d 162, 165 (D.D.C. 2018); *see also Murray v. Fed. Bureau of Prisons*, 741 F. Supp. 2d 156, 164–65 (D.D.C. 2010) (deferring consideration of exemptions because agency had not established that its search was adequate).

### (2)   *FOIA's remedial provision, 5 U.S.C. § 552(a)(4)(B), authorizes courts to order agencies to post documents online.*

The prayer for relief in LUPE's Complaint includes a request for the Court to "order Defendants to make all of their substantive and procedural IHP eligibility standards used at any time after January 1, 2019 . . . *publicly available in an electronic reading room* . . . ." (Dkt. No. 1 at 15) (emphasis added). Defendants move to dismiss this request for relief on the ground that the remedial provision of FOIA, 5 U.S.C. § 552(a)(4)(B), only authorizes a court to order documents produced to the complainant and does not authorize a court to order an agency to post information to an online reading room. (Dkt. No. 40 at 6–7).

The applicable language of § 552(a)(4)(B) provides that district courts have "jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). There is a split in authority among those courts of appeals that have addressed the question of whether FOIA authorizes courts to provide this relief sought by LUPE. Neither the Supreme Court nor the Fifth Circuit Court of Appeals has addressed the interpretation of 5 U.S.C. § 552(a)(4)(B) as it relates to this issue.

Defendants rely on an opinion from the D.C. Circuit Court of Appeals, *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice ("CREW I")*, 846 F.3d 1235 (D.C. Cir. 2017), which concluded that courts do not have authority to order an agency to post records to an online reading room. *Id.* at 1244. The D.C. Circuit in *CREW I* held that in a

"rare instance of agency delinquency in meeting its duties under the reading room provision," a plaintiff may "seek an injunction that would (1) apply prospectively, and would (2) impose an affirmative obligation to disclose upon [a defendant], but that would (3) require disclosure of documents and indices only to [a plaintiff], *not disclosure to the public.*" *Id.* at 1244 (emphasis added).

In contrast, LUPE relies on decisions from the Second Circuit and Ninth Circuit Courts of Appeals holding that courts may order defendant agencies to disclose documents *to the public* by posting them in an electronic reading room. (Dkt. No. 45 at 25); *see New York Legal Assistance Grp. v. Bd. of Immigr. Appeals* ("*NYLAG*"), 987 F.3d 207, 215 (2d Cir. 2021); *Animal Legal Def. Fund v. U.S. Dep't of Agric.* ("*ALDF*"), 935 F.3d 858, 877 (9th Cir. 2019). For the reasons discussed below, this Court agrees with the interpretation of § 552(a)(4)(B) adopted by the Second Circuit and Ninth Circuit in *NYLAG* and *ALDF*, respectively. This Court determines that the statutory text, along with the structure, history, and purpose of the provision show that § 552(a)(4)(B) authorizes courts both to order a defendant agency to publish documents online and to order the production of documents to the complainant directly.

A proper interpretation of a statute begins with the text of the statute. *United States v. Palomares*, 52 F.4th 640, 642–43 (5th Cir. 2022) (citing *In re DeBerry*, 945 F.3d 943, 947 (5th Cir. 2019). However, we look at words or phrases in the context of the statutory scheme to clarify the meaning. *Id.* (citing *Ramos-Portillo v. Barr*, 919 F.3d 955, 960 (5th Cir. 2019)). "We consider the text holistically, accounting for the full text, language as well as punctuation, structure, and subject matter." *Id.* (quoting *Elgin Nursing & Rehab. Ctr. v. U.S. Dep't of Health & Hum. Servs.*, 718 F.3d 488, 494 (5th Cir. 2013) (internal citation and quotation omitted). Moreover, courts "must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *U.S. Nat. Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455 (1993) (quoting *United States v. Heirs of Boisdore,* 49 U.S. 113, 122 (1849)).

In its *NYLAG* opinion, the Second Circuit evaluated and critiqued the D.C. Circuit's statutory interpretation of §552(a)(4)(B) in *CREW I* as it relates to this issue. First, in *CREW I* the parties themselves "narrowly construe[d] FOIA's remedial provision,' assuming that, on its face, the text does not permit the court to order that documents be made available for public inspection." *NYLAG*, 987 F.3d at 214 (quoting *CREW I*, 846 F.3d at 1241). As a result,

*CREW I* focused its analysis on whether courts had the authority to fashion the equitable remedy that the plaintiff sought rather than on statutory interpretation. *Id.*; *see CREW I*, 846 F. 3d at 1241–42. In fact, the appellant in *CREW I* was pursuing a claim solely under the Administrative Procedure Act. *Id.* at 1238. Additionally, the D.C. Circuit determined that it was bound by its prior decision in *Kennecott Utah Copper Corp. v. U.S. Dep't of Interior*, 88 F.3d 1191 (D.C. Cir. 1996). *See CREW I*, 846 F.3d at 1243–44. But *Kennecott* addressed courts' authority to order agencies to publish documents in the Federal Register under § 552(a)(1) rather than posting documents to an online electronic reading room under § 552(a)(2), also known as the reading room provision. *Id.*; *see CREW I*, 846 F.3d at 1243–44. The Second Circuit in *NYLAG* further noted that even the D.C. Circuit seems hesitant about its interpretation of § 552(a)(4)(B) because it later construed *CREW I* "narrowly as turning on the fact that the plaintiff 'improperly brought its claim under the Administrative Procedure Act, 5 U.S.C. § 704, instead of FOIA's judicial-review provision.'" *NYLAG*, 987 F.3d at 214 *(quoting Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice ("CREW II"*), 922 F.3d 480, 485 (D.C. Cir. 2019). As such, this Court is not persuaded by the D.C. Circuit's decision in *CREW I*.

This Court agrees with the interpretation of § 552(a)(4)(B) by both the Second Circuit and Ninth Circuits, set forth in *NYLAG* and *ALDF* opinions, respectively. In short, those courts have held that § 552(a)(4)(B) authorizes courts to compel electronic disclosure of documents that it has improperly failed to post in its electronic reading room and also to order the production of records to the complainant directly. *NYLAG*, 987 F.3d at 215; *ALDF*, 935 F.3d at 877. *ALDF* held the text of the remedial provision means what it says: that district courts have the power to "stop the agency from holding back records it has a duty to make available" by ordering a defendant agency to make them publicly available. *NYLAG*, 987 F.3d at 215, (quoting *ALDF*, 935 F.3d at 869). The text of the statute provides two ways for the court to grant remedies, beginning with the infinitives "to enjoin" and "to order." *See* 5 U.S.C. § 552(a)(4)(B). "[A] coordinating junction like 'and' is typically used for 'linking independent ideas,' . . . suggesting that Congress meant to authorize courts to exercise two independent powers, only the second of which would be modified by the phrase 'to the complainant.'" *NYLAG*, 987 F.3d at 217 (cleaned up) (quoting *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 236 (2011)); *see also In re Velazquez*, 660 F.3d 893, 897 (5th Cir. 2011) ("[T]he word 'and' is often construed as conjunctive."). The courts in *ALDF* and *NYLAG* noted that the

contrary interpretation would lead the language of "to enjoin the agency from withholding agency records" to be superfluous if courts were only authorized to order the production of documents solely to the plaintiff. *ALDF*, 935 F.3d at 870; *NYLAG*, 987 F.3d at 215.[10] Additionally, "it is entirely natural to say that an agency 'withholds' documents when it fails to publish them in violation of a direct statutory command that they be published in a manner accessible to the public." *NYLAG*, 987 F.3d at 219. This is one example of how an analysis of the text of § 552(a)(4)(B) supports the interpretation that courts have jurisdiction to order the type of remedy that LUPE seeks. *See NYLAG,* 987 F.3d at 216–19 (containing an in-depth discussion of how the text of § 552(a)(4)(B) supports the interpretation that district courts have authority to order the posting of records to the electronic reading room).

In addition to the text of § 552(a)(4)(B), the context of the FOIA's remedial provision further supports this interpretation. For example, the provision also states that "courts, in determining the scope of relief, must 'accord substantial weight to an affidavit of an agency concerning the agency's determination as to technical feasibility under paragraph (2)(C).'" *NYLAG*, 987 F.3d at 220 (quoting 5 U.S.C. § 552(a)(4)(B)). The Second Circuit determined that this reference—to an affidavit related to the "feasibility of indicating the extent of a deletion from staff manuals and instructions to staff" that are required to be disclosed to the public electronically under § 552(a)(2)(C)—demonstrates that Congress intended for courts to have the authority to "order agencies to make documents available for public inspection." *NYLAG*, 987 F.3d at 220.

Moreover, if § 552(a)(4)(B) did not authorize courts to order the posting of documents to an online reading room, the scope of the remedy would be duplicative of the remedy under § 552(a)(3) and "would render the proactive disclosure requirements in the first two paragraphs merely precatory." *Id.*; *see also ALDF*, 935 F.3d at 872. Therefore, the context of the statute shows that the remedy of compelling online disclosure to the public is available under FOIA.

Furthermore, the legislative history and purpose of FOIA also support this interpretation, as discussed extensively in *NYLAG*. 987 F.3d at 221–24. In summary, a 1974 amendment to the remedial provision showed that "Congress intended to give district courts

---

[10] The *NYLAG* court does not heavily rely on the canon against surplusage because it recognizes that it "'assists only where a competing interpretation gives effect to every clause and word of a statute,' and should not be determinative where 'no interpretation of [the statute] gives effect to every word,' as is the case here." *NYLAG*, 987 F.3d at 215 n.19 (quoting *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013)).

the authority to order agencies to make documents available for public inspection when they fail to comply with their affirmative obligations in § 552(a)(2)." *Id.* at 223. Finally, "[a] broad reading of FOIA's remedial provision is also consistent with the statute's purpose" because FOIA "was enacted to facilitate public access to Government documents." *Id.* (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991).

Based on the foregoing, this Court **RECOMMENDS** that the District Judge **DENY** Defendants' Motion to dismiss LUPE's request that the Court order Defendants to make certain records publicly available in an electronic reading room. For clarification, this is not a recommendation that the District Judge actually grant the relief requested by Plaintiff. It is only a determination that the District Judge has the authority to do so in its discretion upon a proper consideration of the relevant factors for granting such relief.

### (3)  FOIA's remedial provision, 5 U.S.C. § 552(a)(4)(B), authorizes courts to issue prospective injunctions requiring disclosure of future records.

As part of the relief sought under FOIA, LUPE moves the Court to order a prospective injunction, requesting that the Court "order Defendants to make all of their substantive and procedural IHP eligibility standards used at any time after January 1, 2019—*including all future standards*—publicly available in an electronic reading room, and to do so without further request." (Dkt. No. 1 at 15) (emphasis added). Defendants argue that this requested relief fails as a matter of law because FOIA's disclosure obligations only apply to information that already exists and not to information that will be created in the future. (Dkt. No. 40 at 14–15). As such, it is necessary to determine whether a court is authorized to issue prospective injunctions for the future release of records under FOIA's remedial provision, 5 U.S.C. § 552(a)(4)(B).

Defendants do not argue that LUPE has failed to adequately plead a claim for prospective relief but instead broadly assert that a court does not have authority to order an agency to post documents to its online reading room to enforce compliance with a FOIA request under § 552(a)(2). Defendants rely on the Fourth Court of Appeals opinion in *Humane Society of the United States v. U.S. Fish and Wildlife Serv.*, 838 Fed. App'x. 721, 731 (4th Cir. 2020). In that unpublished opinion, the court affirmed the district court's finding that the defendant agency had fully satisfied the requestor's FOIA request and held that the requestor was not entitled to prospective relief under FOIA. *Id.* at 732. That by

itself makes the case distinguishable. The court emphasized that its holding should be narrowly construed and clarified that "we do not hold that Appellants can never receive injunctive relief pursuant to Section 552(a)(4)(B)." *Id.* Given this qualification on the scope of the holding in *Humane Society*, it is difficult to determine the extent to which it conflicts with contrary holdings from other courts of appeals determining that courts do have authority to issue prospective injunctive relief under FOIA.

Section 552(a)(4)(B) of FOIA provides courts with broad equitable authority. *CREW I*, 846 F.3d 1235, 1242 (D.C. Cir. 2017). The Supreme Court has stated that the provision "explicitly confers jurisdiction to grant injunctive relief of a described type, namely, 'to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.'" *Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1, 18 (1974) (quoting 5 U.S.C. § 552(a)(4)(B)). Further, that provision was not intended "to limit the inherent powers of an equity court" in FOIA cases. *Id.* at 20; *see Payne Enterprises v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988) (citing *Renegotiation Board*, 415 U.S. at 19–20) ("FOIA imposes no limits on courts' equitable powers in enforcing its terms."). Especially where federal law and the public interest are involved, a court's "equitable powers assume an even broader and more flexible character than when only a private controversy is at stake." *CREW I*, 846 F.3d at 1242 (quoting *Kansas v. Nebraska*, 574 U.S. 1042, 1053 (2015)).

In *CREW I*, the D.C. Circuit Court of Appeals ruled that "a plaintiff may challenge an agency's policy or practice where it will impair the party's lawful access to information *in the future*. *Id.* (quoting *Newport Aeronautical Sales v. Air Force*, 684 F.3d 160, 164 (D.C. Cir. 2012) (internal quotations omitted). The *CREW I* court determined that "a district court possesses authority to grant . . . a prospective injunction with an affirmative duty to disclose." *Id.* In other words, in a FOIA suit to enforce § 552(a)(2), a court may issue an injunction that would apply to documents not yet created and would impose an affirmative obligation to disclose the documents to the plaintiff, "without a need for a specific prior request."[11] *Id.* at 1241. Both the Second and Ninth Circuit Courts of Appeals agree with the

---

[11] In *CREW I*, the court explained that even if a party prevails on the merits, its conclusion that this type of relief is *available* under FOIA does not necessarily mean it is appropriate in an individual case. 846 F.3d at 1246. It further stated that "only a rare instance of agency delinquency in meeting its duties under the reading-room provision" will warrant this type of relief. *Id.* Similarly, the Ninth Circuit in *ALDF* stated that "just because a district court can order agencies to comply with § 552(a)(2) . . . [does not mean] it has no

D.C. Circuit that prospective injunctions are allowed. *See ALDF*, 935 F.3d at 873 (quoting *Long v. IRS*, 693 F.2d 907, 909 (9th Cir. 1982) ("[W]here the district court finds a probability that alleged illegal conduct will recur in the future, an injunction may be framed to bar future violations that are likely to occur."); *NYLAG*, 987 F.3d at 225 (stating that injunctive relief should "begin with an order requiring compliance going forward, and work backward from the present in setting a timetable for making older decisions available"). Based on the foregoing, this Court disagrees with Defendants' broad proposition that courts do not have authority to issue prospective injunctions to enforce an alleged violation of the reading room provision of § 552(a)(2).

This Court therefore **RECOMMENDS** that the District Judge **DENY** Defendants' motion as to LUPE's claim for a prospective injunction. To clarify, this is not a recommendation that the District Judge actually grant the relief requested by Plaintiff. It is only a determination that the District Judge has the authority to do so in its discretion upon a proper consideration of the relevant factors for granting such relief.

### *(4) The Court lacks jurisdiction over LUPE's APA claim because FOIA provides an adequate remedy.*

Defendants move to dismiss LUPE's APA claim because FOIA provides an alternative, adequate remedy, and thus the APA claim would be impermissibly duplicative. (Dkt. No. 40 at 15). While asserting that FEMA's "longstanding refusal to publish its IHP eligibility standards" is a violation of FOIA's electronic reading room requirement under 5 U.S.C. § 552(a)(2), LUPE purports to seek a *complete* remedy for Defendant's alleged violation under FOIA and the APA. (Dkt. No. 45 at 14). Upon review of the remedy afforded under FOIA's remedial provision, 5 U.S.C. § 552(a)(4)(B), and the APA's adequacy requirement, this Court recommends that the District Judge dismiss Plaintiff's APA claim.

#### (a) The "Adequate Alternative Remedy" Requirement

The APA requires reviewing courts to "compel agency action unlawfully withheld or unreasonably delayed [and] hold unlawful and set aside agency action . . . found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right [or] without observance of procedure required by law." 5 U.S.C. § 706. However, jurisdiction

---

discretion in designing this relief." *ALDF*, 935 F.3d at 873 n.17 (citing *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 193 (1978)).

under the APA is limited to "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. In other words, the APA provides that a plaintiff may seek judicial review of an agency's action where the "relevant administrative agency's statutory provision does not directly provide for judicial review" of the agency's action, *Chavarria v. Pompeo,* 387 F. Supp. 3d 753, 760 (S.D. Tex. 2019), and no statute provides the plaintiff with an adequate remedy, *e.g., Bowen v. Massachusetts,* 487 U.S. 879, 903 (1988). The alternative available relief need not be "identical" to the relief the APA would provide to be adequate. *Hinojosa v. Horn,* 896 F.3d 305, 310 (5th Cir. 2018) (citing *CREW I,* 846, F.3d at 1245). However, the remedy must offer the plaintiff the "same genre" of relief. *Rimmer v. Holder,* 700 F.3d 246, 262 (6th Cir. 2012).

An adequate remedy exists, and APA review of a claim is precluded where there is "clear and convincing evidence of legislative intent to create a special, alternative remedy and thereby bar APA review." *Rollerson v. Brazos River Harbor Navigation Dist. of Brazoria Cnty. Texas,* 6 F.4th 633, 642 (5th Cir. 2021) (quoting *CREW I,* 846 F.3d at 1245) (internal quotations removed); *see Bowen,* 487 U.S. at 903, (finding that "the provision as enacted also makes it clear that Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action"). In this regard, evidence of congressional intent is present where legislation addresses "[b]oth agency obligations and a mechanism for judicial enforcement." *Hinojosa,* 896 F.3d at 311 (quoting *CREW I,* 846 F.3d at 1245).

### (b) The Plaintiffs' remedy under § 552(a)(4)(B) of FOIA is an adequate alternative to APA relief.

In applying the above framework to the present case, the Court should look specifically to "the wrong the Plaintiff asserts . . . [and] the procedures currently available to remedy that wrong." *Hinojosa,* 896 F.3d at 311. First, Plaintiff argues that Defendants are improperly withholding agency records. (Dkt. No. 45 at 14). LUPE alleges that FEMA's longstanding refusal to publish its IHP eligibility standards systematically violates the proactive electronic reading room requirement stated in FOIA, 5 U.S.C. § 552(a)(2)." (*Id.*).

As discussed *supra,* there is a circuit split of authority as to what remedy a district court is authorized to grant for an agency's alleged failure to post records to an online electronic reading room in violation of § 552(a)(2). This Court has determined that the District Court is authorized to order an agency to post documents to its online electronic

reading room, agreeing with the Second Circuit's ruling in *NYLAG*, 987 F.3d 207 (2d Cir. 2021). Yet, under the D.C. Circuit's alternative interpretation of the remedies allowed by § 552(a)(4)(B), a district court is at least authorized to order an agency to produce records directly to the complainant to remedy a violation of the reading room posting requirements of § 552(a)(2). *See CREW I*, 846 F.3d 1235. This Court determines that under either interpretation of the relief provided by § 552(a)(4)(B) for a reading room violation, FOIA provides an adequate remedy to LUPE for FEMA's alleged violation of § 552(a)(2). Both interpretations of § 552(a)(4)(B) provide the "same genre" of relief to the plaintiff. *See Rimmer v. Holder,* 700 F.3d 246, 262 (6th Cir. 2012). As the D.C. Circuit Court of Appeals stated, "despite [a] gap . . . between the relief sought and the relief available, FOIA offers an 'adequate remedy' within the meaning of Section 704 such that [the plaintiff's] APA claim is barred." *CREW I,* 846 F.3d at 1245 (quoting 5 U.S.C. § 704). FOIA, through the remedial provision of § 552(a)(4)(B), guarantees a direct path to judicial review and, with respect to 5 U.S.C. § 552 (a)(2), lays out "both agency obligations and mechanisms for judicial enforcement." *See Hinojosa*, 896 F.3d at 312 (quoting *CREW I*, 846 F.3d at 1245). This precludes a claim under the APA.

In the present case, under either interpretation of § 552(a)(4)(B), the possible relief available would be the same: an order to produce documents improperly withheld. LUPE appears to acknowledge that "FOIA alone does permit all of the relief that LUPE seeks in this lawsuit, and APA relief should be unnecessary." (*Id.* at 24). Yet, LUPE proceeds to assert, "if the Court does not agree that FOIA affords jurisdiction to order *all* of the relief that LUPE seeks, then the availability of APA jurisdiction to make up the remainder must be litigated based on a complete record." (Dkt. No. 45 at 24). However, as noted above, the alternative available relief afforded by FOIA need not be identical to the relief provided by the APA; it must simply be the same genre of relief. *See Hinojosa,* 896 F.3d at 310 (citing *CREW I,* 846, F.3d at 1245). FOIA indeed provides the same genre of relief.

Finally, Defendants raise arguments as to the availability of APA relief for challenges to final agency action and the discretionary function exception. (Dkt. No. 40 at 19–20; Dkt. No. 50 at 3). We need not address these issues because, as outlined above, this Court has found that FOIA provides an adequate alternative remedy to the relief available under the APA. Permitting Plaintiff's claims under the APA would counter a clear congressional intent to deny duplicative remedies. *See Bowen,* 487 U.S. at 903; *Hinojosa*, 896 F.3d at 312. In light

of the foregoing, this Court finds that 5 U.S.C. § 552(a)(4)(B) provides an adequate alternative remedy for LUPE and recommends that Plaintiff's APA claim be dismissed with prejudice.

### III.  PLAINTIFF'S MOTION FOR DISCOVERY

Following the filing of Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, (Dkt. No. 40), LUPE filed its Motion for Discovery, (Dkt. No. 42). In its motion, LUPE contends that there are still disputed facts as to the adequacy of both the search for responsive records and the *Vaughn* Index. (Dkt. No. 42 at 4). LUPE further asserts that the claims disputed in the present case are of national importance and must be decided based on a complete record and that discovery will show they are entitled to summary judgment. (Dkt. No. 42 at 4).

Generally, discovery is disfavored and is rarely granted in FOIA cases. *See, e.g., Schiller v. Immigration & Naturalization Serv.*, 205 F. Supp. 2d 648, 653 (W.D. Tex. 2002); *Exxon Mobil Corp. v. U.S. Dept. of the Interior*, Civ. Action No. 09-6732, 2010 WL 4668452 at *4 (E.D. La. Nov. 4, 2010); *Wheeler v. C.I.A.*, 271 F. Supp. 2d 132, 139 (D.D.C. 2003). However, in cases where the defendant has moved for summary judgment on the basis that all responsive documents and declarations in support thereof have been produced to the plaintiff, discovery may be available if there is still a question of fact as to the adequacy of the search. *See Murphy v. FBI*, 490 F. Supp. 1134, 1137 (D.C.D.C., 1980). Whether to allow discovery is within the discretion of the trial court. *Schiller*, 205 F. Supp. 2d at 653.

Where available to plaintiffs, the scope of discovery is usually limited to concerns regarding the agency's search for records and "indexing and classification procedures." *Id.* at 654 (quoting *Pub. Citizen Health Rsch. Grp. v. FDA*, 997 F. Supp. 56, 72 (D.D.C. 1998), *aff'd in part, rev'd on other grounds*, 185 F.3d 898 (D.C. Cir. 1999)). Yet, even if an agency's affidavits about its search lack the requisite information or the agency fails to provide enough information for the court to make a proper determination regarding exemptions, courts often still do not permit discovery but instead order the agency to supplement the record or conduct an *in camera* inspection. *See Spirko v. USPS*, 147 F.3d 992, 997 (D.C. Cir. 1998) ("If the agency fails to provide a sufficiently detailed explanation to enable the district court to make a de novo determination of the agency's claims of exemption, the district court then has several options, including inspecting the documents *in camera*, requesting further

affidavits, or allowing the plaintiff discovery."); *see also Judicial Watch, Inc. v. Dep't of Justice ("Judicial Watch II")*, 185 F. Supp. 2d 54, 65 (D.D.C. 2002) (denying motion for discovery and ordering the agency to supplement its supporting declarations).

Given that this Court has found *supra* that Defendants have not met their summary judgment burden to show that FEMA's search for records responsive to LUPE's request was adequate, in part because they did not provide sufficient detail in their declarations, discovery would be premature. *See Am. Immigr. Laws. Ass'n v. U.S. Dep't of Homeland Sec.*, 306 F. Supp. 3d 162, 165 (D.D.C. 2018) (denying motion for discovery because it would be premature and unwarranted given court's determination that agency did not sufficiently explain its search methodology). Instead, this Court is recommending that the District Judge order Defendants to supplement the record about the search FEMA conducted. Allowing Defendants to supplement the record in this way is a preferable alternative to discovery. *See e.g., Spirko*, 147 F.3d at 997; *Judicial Watch II*, 185 F. Supp. 2d at 65. Additionally, this Court recommends that the District Judge defer consideration of the exemptions claimed by Defendants, which further supports the recommendation that discovery would be premature at this time.

Based on the foregoing, this Court **RECOMMENDS** that Plaintiff's Motion for Discovery be **DENIED** without prejudice to renewing at an appropriate later date.

## IV.  CONCLUSION

In summary, for the reasons set forth above, this Court **RECOMMENDS** the following:

    (1) The District Judge **DENY** Defendants' Motion to Dismiss Plaintiff's complaint on mootness grounds.

    (2) The District Judge **DENY without prejudice** Defendants' Motion for Summary Judgment as to the ground that FEMA conducted an adequate search.

    (3) The District Judge **DENY without prejudice**, and as premature, Defendants' Motion for Summary Judgment as to the exemptions to disclosure claimed by Defendants.

    (4) The District Judge **ORDER** Defendants to supplement the record as to the adequacy of FEMA's FOIA search and to file a corresponding renewed motion for summary judgment on that issue.

(5) The District Judge **DENY** Defendants' Motion to Dismiss and Motion for Summary Judgment on the issue of LUPE's requested relief to order Defendants to make certain records publicly available in an electronic reading room.

(6) The District Judge **DENY** Defendants' Motion to Dismiss and Motion for Summary Judgment as to LUPE's claim for a prospective injunction.

(7) The District Judge **GRANT** Defendants' Motion to Dismiss and Motion for Summary Judgment as to Plaintiff's APA claim.

(8) The District Judge **DENY** Plaintiff's Motion for Discovery, (Dkt. No. 42), without prejudice to renewing at an appropriate later date.

## VI. NOTICE OF RIGHT TO OBJECT

Within 14 days after being served with a copy of this Report and Recommendation, the parties may file written objections to the findings and recommendations proposed above. 28 U.S.C. § 636(b)(1). The District Judge will review de novo those portions of the report or specified proposed findings or recommendations to which the party objects. The District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by this Court, and may also receive further evidence or recommit the matter to this Court with instructions. *Id.* The District Court need not consider frivolous, conclusive, or general objections. *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

If a party does not object within 14 days, the party forfeits its right to District Court review. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Failure to file written objections to the proposed findings and recommendations contained in this report within 14 days after service shall bar an aggrieved party from de novo review by the District Court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of plain error or manifest injustice.

**SIGNED** on June 12, 2023.

John A. Kazen
United States Magistrate Judge