United States District Court
Southern District of Texas
**ENTERED**
August 01, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

LA UNION DEL PUEBLO ENTERO §
§
VS. § CIVIL ACTION NO. 5:21-CV-71
§
FEDERAL EMERGENCY §
MANAGEMENT AGENCY *et al.* §

## ORDER

In this public records case, Plaintiff La Union del Pueblo Entero (LUPE) has sued the Federal Emergency Management Agency (FEMA) (Dkt. No. 1).[1] LUPE believes FEMA violated the Freedom of Information Act (FOIA) and the Administrative Procedure Act (APA) when it failed to disclose documents concerning its Individuals and Households Program (IHP) (*id.* ¶¶ 11, 73–76, 85).

Pending before the Court are three motions: FEMA's motion to dismiss based on mootness grounds, FEMA's motion for summary judgment, and LUPE's motion for discovery (Dkt. Nos. 40, 42). The United States Magistrate Judge has issued a Report and Recommendation assessing the motions, and the parties have filed objections, responses, and replies (Dkt. Nos. 51, 52, 53, 54, 55, 56). Having considered the record, arguments, and applicable authorities, the Court finds the Report (Dkt. No. 51) shall be **ADOPTED IN PART**. Below, the Court assumes the reader is familiar with the case's factual and procedural background, the parties' arguments, and the Report's contents.

---

[1] LUPE has sued both FEMA and the United States Department of Homeland Security (DHS) (Dkt. No. 1). Because FEMA is a subunit of DHS, the Court will refer to Defendants as FEMA—in the singular—to simplify its discussion (*id.* ¶ 5).

## DISCUSSION

### 1. Recommendation: LUPE's lawsuit has not been mooted, and FEMA's motion to dismiss should be denied.

The parties did not object to this recommendation. Finding no clear error, the Court **ADOPTS** this portion of the Report. FEMA's motion to dismiss on mootness grounds is **DENIED**.

### 2. Recommendation: There is a genuine issue of material fact over the adequacy of FEMA's search.

The Court concurs with this finding. FEMA's objection is therefore **OVERRULED**. For the reasons stated by the Report (Dkt. No. 51 at 10–14), there is a genuine dispute of material fact over the adequacy of FEMA's search.

In its objection, FEMA argues that *Batton v. Evers*, 598 F.3d 169 (5th Cir. 2010), a precedential Fifth Circuit decision, compels a ruling in its favor (Dkt. No. 53 at 2–4). FEMA maintains the following position: Because the Fifth Circuit held two declarations in *Batton* showed the agency's search was adequate, FEMA's declaration, which provides more information than the ones in *Batton*, requires the same result (*id.*). While FEMA's position is persuasive at first blush, after a close inspection of the district court record in *Batton*, FEMA's declaration is actually *less* descriptive than the ones filed in *Batton*.

In *Batton*, the requestor asked the Internal Revenue Service (IRS) to produce his federal tax returns, communications between him and the IRS, and financial transactions implicating his tax liability for the 2001 to 2003 tax years. 598 F.3d at 173. During the ensuing FOIA litigation, the IRS produced two declarations. *Id.* at 176. The most relevant declaration testified to the following:

> [U]nder my supervision, Pamella Charles searched the following databases for documents responsive to Plaintiff's request: System of Records 22.034 – Individual Return Files, Adjustments and Miscellaneous Records; 24.030 – CADE Individual Master File; 24.047 – Audit Underreporter Case File; 42.001 – Examination Administrative File and 42.008 – Audit Information Management System.
>
> These databases would contain the type of documents requested by Plaintiff[,] for example, documents related to his tax returns[,] which would be located in the Individual Master File which includes the IDRS.
>
> The databases were searched electronically using the identifying information provided by Plaintiff in his request[,] including his name and Social Security Number.
>
> Some of these databases provided electronic documents that were immediately gathered and reviewed. Other databases identified the location of paper copies of documents which were unavailable in electronic format and copies of these documents were gathered in paper copy format. Furthermore, we searched for documents in the possession of Revenue Agent Chris Driskill. In all, my search located over 5000 documents.

*See Batton*, No. 4:07-cv-2852, Dkt. No. 40-1 ¶ 6 (S.D. Tex. Sept. 4, 2008) (line breaks inserted by the Court).

The Fifth Circuit found this declaration, coupled with a more general declaration, showed the IRS performed a search reasonably calculated to yield responsive documents. 598 F.3d at 176. It so held because the declaration named the IRS databases explored and *explained* the databases would contain the information sought. *Id.*

Here, FEMA's declaration is not as specific as the *Batton* declaration above. Its declaration testifies to the following:

> The Office of Response and Recovery (ORR), IHP and the Reporting and Analytics Division (RAD), conducted multiple searches of major information systems, including FEMA's network data systems within the r-drive, Processing Procedures Manual (PPM), FEMA NPSC Programs intranet portal, Virginia Systems Repository (VSR), and Individual Assistance Pre-Shift Notes (IAPN) platform. The search

terms derived from the Plaintiff's request. The search produced a total of 3,893 pages of responsive records consisting of standard operating procedures (SOPs), training material, and pre-shift instructions for staff providing individual assistance to various designated disasters in the country.

An additional search was conducted in FEMA's Region 6 (R6) for responsive records related to the IHP in their areas of responsibility. R6 conducted a search of their respective network drives and SharePoint sites using search terms such as "inspections" and "guidelines". The results of the R6 search yielded 442 pages of inspection guidelines.

(Dkt. No. 40-1 ¶¶ 6–7).

Certainly, the declaration names the specific databases explored. However, more is needed. Unlike the *Batton* declaration, FEMA's does not explain *why* these databases would likely contain responsive documents. In *Batton*, the databases' names supplied this explanation. For example, it is obvious that a database named "Individual Return Files" would likely contain the requestor's federal tax returns. Likewise, databases named "Audit Underreporter Case File" and "Audit Information Management System" would likely contain documents analyzing the requestor's potential tax liability. Here, database names like "r-drive," "Virginia Systems Repository," and "FEMA Region 6" do not self-evidently convey why these databases would contain responsive records. An explanation is therefore required. Contrary to FEMA's position, FEMA's declaration does not provide more contextual information than the ones submitted in *Batton*.

FEMA's declaration is also wanting for another reason: Its explanation of the search terms used is too cursory. In *Batton*, the IRS explained it used the requestor's personally identifying information, such as his name and Social Security Number. *Batton*, Dkt. No. 40-1 ¶ 6. Understandably, this brief statement sufficed. The requestor sought IRS documents that implicated his tax delinquency status for a

4

certain date range. Using his personally identifying information as search terms could reasonably be expected to produce responsive documents.

This case is markedly different. Compared to the requestor in *Batton*, LUPE seeks more general information. LUPE's FOIA request sought all records communicating IHP substantive or procedural standards used by FEMA and its affiliates, as well as all records relating to future changes in IHP standards (Dkt. No. 1-1). To help FEMA interpret this broad request, LUPE supplied examples of documents it desired: standard operating procedures, IHP inspection guidelines, IHP line items, FEMA policy memoranda, quick reference guides, FEMA manuals for its helpline, and contractor training documents (*id.*).

Given LUPE's expansive request, it stands to reason that FEMA must use a larger set of search terms compared that used in *Batton*. It follows that FEMA must also provide a more detailed description than the IRS did in *Batton*. After all, the law requires FEMA to show methods were "*reasonably* expected to produce the information requested." *Batton*, 598 F.3d at 176 (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)) (emphasis added). Here, simply naming two search terms—"inspections" and "guidelines"—with a general statement that FEMA used terms "derived from [LUPE's] request" does not show the search was reasonably calculated to produce responsive records *(compare* Dkt. No. 40-1 ¶¶ 6–7 *with NRDC v. EPA*, No. 1:17-cv-5928, Dkt. No. 36 ¶¶ 13–14 (S.D.N.Y. Oct. 16, 2018) (agency declaration explaining official chose relevant email database, imposed a date range, and then listed over 50 search terms used, such as "framework rules," "procedures for prioritization," "chemicals for risk evaluation," "section 5 review," "methylene

chloride," and "Pigment Violet 29")).

The Court also notes that FEMA's underlying logic is far too rigid. If the Court accepts FEMA's proposition that "The statements in this prior case sufficed, then supplying some more detail in this case necessitates the same outcome," it would undermine the reasonableness standard required by the Fifth Circuit. As another district court noted, "[t]he adequacy of an agency's search is measured by a standard of reasonableness and is dependent on the circumstances of the case." *Verde v. FAA*, 287 F. Supp. 3d 661, 667 (S.D. Tex. 2018) (quoting *Weisberg v. U.S. Dep't of Just.*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)). Thus, consistent with most, if not all, areas of the law, what will be "reasonable" will necessarily turn on the specific facts and circumstances of a case. *See, e.g.*, *Hudson v. Lincare, Inc.*, 58 F.4th 222, 231 (5th Cir. 2023) (noting, in a Title VII retaliation case, what a "reasonable employee" would consider "materially adverse" is "a fact-specific inquiry"); *SEC v. World Tree Financial, LLC*, 43 F.4th 448, 465 (5th Cir. 2022) (same, but what would constitute a "material representation" to a "reasonable investor" in a securities fraud case); *Timpa v. Dillard*, 20 F.4th 1020, 1028 (5th Cir. 2021) (same, but what would constitute an "objectively reasonable" amount of force in an excessive force case). The same should hold true here.

In light of the foregoing, FEMA will have two options. If it believes its search was adequate, it must file an amended declaration. The amended declaration must describe the databases chosen, explain why the identified databases were selected, and provide a more robust explanation of search terms used for each database. Additionally, the Court acknowledges that LUPE is rightfully concerned about

6

categories of documents that remain undisclosed and are not referenced in FEMA's *Vaughn* index[2] (Dkt. No. 45 at 42–44 (noting inspector reference materials, IHP "line item amounts," and 2022 IHP standards are missing)). To address this matter, the amended declaration must discuss why the databases searched likely contained these documents and the search terms used to attempt to discover these documents. In preparing its amended declaration, FEMA is encouraged to reference the declaration filed in *NRDC v. EPA*, No. 1:17-cv-5928, Dkt. No. 36 (S.D.N.Y. Oct. 16, 2018).

If FEMA would like to expand or redo its search, it must file an advisory stating such. The advisory must name and describe any unexplored databases to be searched and any new search terms to be used.

In light of the foregoing, summary judgment on the adequacy of FEMA's search is **DENIED WITHOUT PREJUDICE**. Summary judgment on FEMA's claimed exemptions is also **DENIED WITHOUT PREJUDICE**.

### 3. Recommendation: 5 U.S.C. § 552(a)(4)(B) authorizes courts to order agencies to post documents online.

To reach this recommendation, the Magistrate Judge explored a circuit split on which the Fifth Circuit has yet to rule (Dkt. No. 51 at 16–20). Because the issue may be mooted, the Court declines to weigh in on the matter at this stage of the litigation. If FEMA's search ultimately proves adequate and it has uploaded all documents LUPE believes should be online, then no controversy over this issue would remain. FEMA's motion for summary judgment on this issue is therefore **DENIED WITHOUT PREJUDICE**.

---

[2] In a *Vaughn* index, an agency describes the responsive documents withheld or redacted and explains the exemption claimed to withhold the material. *Batton*, 598 F.3d at 174.

7

**4. Recommendation: 5 U.S.C. § 552(a)(4)(B) authorizes courts to issue prospective injunctions requiring agencies to disclose records to an electronic reading room.**

The Court will adopt this recommendation in part. In its complaint, LUPE seeks a prospective injunction requiring FEMA "to make all of [its] substantive and procedural IHP eligibility standards used at any time after January 1, 2019—including all future standards—publicly available in an electronic reading room, and to do so without further request" (Dkt. No. 1 ¶ 86(c)). Citing precedent from the Second, Ninth, and D.C. Circuits, the Report concluded FOIA authorized prospective injunctive relief (Dkt. No. 51 at 21–22). And, based on precedent from the Second and Ninth Circuits, the Report concluded such prospective relief can compel agencies to publish records to an electronic reading room (*id.* at 22).

The Court agrees that FOIA authorizes prospective injunctive relief as a remedy. This recommendation is therefore **ADOPTED**, and FEMA's objection to this finding is **OVERRULED**. As for the second issue—whether a prospective injunction can enforce the electronic reading room requirement—the Court will defer ruling on this question for two reasons.

First, the issue could be resolved through mediation. *See* S.D. Tex. L.R. 16.4.C ("A judge may refer any civil case to ADR . . . on its own motion."). Because FEMA has uploaded over 4,000 responsive documents online (Dkt. No. 40 at 4), the agency might be amenable to doing so for future IHP standards without judicial intervention.

Second, assuming FOIA authorizes a court to issue such injunctions, it is unclear whether granting this relief would be appropriate. *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 193 (1978) ("[A] federal judge . . . is not mechanically obligated to grant

an injunction for every violation of law."). It is also unclear what parameters should be imposed based on technical feasibility, and the record is underdeveloped on this issue. *See* 5 U.S.C. § 522(a)(4)(B) (requiring courts to "accord substantial weight to an affidavit of an agency concerning the agency's determination as to technical feasibility" when fashioning injunctive relief); *see also Payne Enters., Inc. v. United States*, 837 F.2d 486, 495 (D.C. Cir. 1988) (instructing district court to consider accepting affidavits and making factual findings to determine the propriety of injunctive relief). If the Court ultimately reaches this question, it will receive evidence and convene an evidentiary hearing on the matter.

Summary judgment on this issue is **DENIED IN PART WITH PREJUDICE** and **DENIED IN PART WITHOUT PREJUDICE**.

### 5. Recommendation: The Court lacks jurisdiction over LUPE's APA claim.

The Court concurs with this recommendation. The recommendation is **ADOPTED**, and LUPE's objection is **OVERRULED**. Summary judgment is **GRANTED** on this issue.

### 6. Recommendation: The Court should deny LUPE's motion for discovery without prejudice.

The Court concurs with this recommendation. It would be premature to order discovery in the form of an amended answer and initial disclosures before FEMA satisfies its obligation to conduct an adequate search. This portion of the Report is **ADOPTED**. LUPE's motion for discovery (Dkt. No. 42) is **DENIED WITHOUT PREJUDICE**.

## CONCLUSION

For the foregoing reasons, the Magistrate Judge's Report and Recommendation (Dkt. No. 51) is hereby **ADOPTED IN PART**. FEMA's motion to dismiss (Dkt. No. 40) is **DENIED** and its motion for summary judgment (Dkt. No. 40) is **GRANTED IN PART** and **DENIED IN PART**. LUPE's motion for discovery (Dkt. No. 42) is **DENIED**.

LUPE initiated this lawsuit on July 14, 2021. This case has languished long enough. To facilitate an expedient resolution to this protracted matter, this lawsuit shall proceed under the Court's Docket Control Order, which is outlined after the undersigned's signature. Motions to extend deadlines in the Court's Docket Control Order will be granted charily. The Court intends to close this case by **May 3, 2024**.

The Clerk of Court is **DIRECTED** to **DOCKET** the Court's Docket Control Order as an attachment to this Order and as a separate docket entry.

It is so **ORDERED**.

**SIGNED** August 1, 2023.

Marina Garcia Marmolejo
United States District Judge

10