**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | | |
|---|---|---|
| *LA UNIÓN DEL PUEBLO ENTERO*, *et al.*, | § | |
| Plaintiff, | § | |
| | § | Civil Action |
| v. | § | |
| | § | No. 5:21-cv-00071-MGM/CdS |
| FEDERAL EMERGENCY MANAGEMENT | § | |
| AGENCY and U.S. DEPARTMENT OF | § | |
| HOMELAND SECURITY, | § | |
| Defendants. | § | |

# PLAINTIFF *LA UNION DEL PUEBLO ENTERO'S* MOTION FOR SUMMARY JUDGMENT

January 18, 2024

TEXAS RIOGRANDE LEGAL AID, INC.
Jerome Wesevich, jwesevich@trla.org
Ana Laurel, alaurel@trla.org
Israel Reyna, ireyna@trla.org
1702 Convent Avenue
Laredo, Texas 78040
(956) 718-4610

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

Page

GLOSSARY AND CITATION CONVENTION ........ iii

INDEX OF ATTACHED EXHIBITS ........ iv

TABLE OF AUTHORITIES ........ vi

NATURE AND STAGE OF THE PROCEEDING ........ 1

QUESTIONS PRESENTED ........ 1

INTRODUCTION ........ 1

BACKGROUND ........ 3

I. Statutory and Regulatory Background ........ 3

A. FEMA administers the Individuals and Households Program. ........ 3

B. FOIA requires all agencies to publish their rules. ........ 5

1. §552(a)(1)—Federal Register Publication ........ 5

2. §552(a)(2)—Website Publication ........ 6

3. §552(a)(3)—Specific Requests ........ 6

4. FOIA Enforcement ........ 6

II. Factual Background ........ 7

A. FEMA uses many changing rules to decide IHP applications. ........ 7

B. FEMA affirmatively provides little information to IHP applicants. ........ 8

C. FEMA has long resisted publishing its IHP rules. ........ 9

III. Procedural Background ........ 12

SUMMARY OF ARGUMENT ........ 13

ARGUMENT ........ 13

I. This Court has jurisdiction to order FEMA's compliance with §552(a)(2). ........ 14

II. FEMA has a policy or practice of using unpublished IHP rules in violation of FOIA....16

A. LUPE has suffered repeated FOIA violations. ....16

B. Repeated violations are related. ....17

C. Future violations are likely ....18

III. LUPE faces irreparable harm absent an injunction. ....21

IV. Balance of harm to FEMA merges with public interest to favor an injunction. ....23

CONCLUSION....25

CERTIFICATE OF SERVICE ....25

## GLOSSARY

APA means the Administrative Procedure Act, 5 U.S.C. § 551, et seq.

DHS means Defendant U.S. Department of Homeland Security

DOJ means the U.S. Department of Justice

FEMA means Defendant Federal Emergency Management Agency

FOIA means the Freedom of Information Act, 5 U.S.C. § 552

FDA means the U.S. Food and Drug Administration

IHP means the Individuals and Households Program authorized in 42 U.S.C. § 5174

HUD means the U.S. Department of Housing and Urban Development

LUPE means Plaintiff La Uniòn del Pueblo Entero

PAP means the Public Assistance Program authorized in 42 U.S.C. § 5172

SSA means the U.S. Social Security Administration

Stafford Act means the Robert T. Stafford Disaster Relief and Recovery Act, 42 U.S.C. § 5121

## CITATION CONVENTION

"AR [#]" cites the page of the Administrative Record that FEMA bates stamped and filed as follows:

AR 1 to 291 are filed in Dkt. 30;
AR 292 to 4350 are filed in Dkt. 92;
AR 4351 to 4372 are filed in Dkt. 30; and
AR 4373 to 10,602 are filed in Dkt. 83.

"Dkt. [#]" cites the Court's docket by CM/ECF "Document" number stamped at the top in blue.

"Exh. [#]" cites the exhibits attached to this motion and indexed next.

## INDEX OF ATTACHED EXHIBITS


| | |
|---|---|
| Exhibit A | Declaration of Tania A. Chavez Camacho<br>LUPE Executive Director, Jan. 10, 2024 |
| Exhibit B | Declaration of Juanita Valdez Cox<br>LUPE Former Executive Director, Jan. 22, 2016<br>Attachments: LUPE Website, Demand Letter to FEMA, Meeting Notices |
| Exhibit C | Declaration of Hannah Dyal<br>Attorney for LUPE, Jan. 18, 2024<br>Attachments: LUPE FOIA Requests to FEMA |
| Exhibit D | LUPE Demand Letter to FEMA for § 552(a)(2) Publication, Oct. 8, 2020<br>Attachment: Template for Disaster-Specific IHP Inspection Guidelines |
| Exhibit E | Declaration of Daniel Barbosa, Sept. 19, 2016<br>Declaration of Antonio Carrisales, Sept. 13, 2016<br>Declaration of Maria de la Fuente, Sept. 14, 2016<br>Declaration of Alicia Gonzales, Sept. 15, 2016 |
| Exhibit F | Excerpt of FEMA Rule 30(b)(6) Deposition of John Carleton, Sept. 6, 2012<br>Attachment: Public Assistance Guide, Deposition Exhibit at 5891-92 |
| Exhibit G | Email John Carleton to FEMA Staff, Oct. 27, 2008 |
| Exhibit H | Declaration of Mary Alice Nichols, July 18, 2009<br>Attachments: Article, *The homes they built and FEMA deferred* |
| Exhibit I | News Articles— |
| Pg. 1 | *As Disasters Grow in Scale, Is Government Aid Fairly Distributed?*<br>Christian Science Monitor, Dec. 20, 2023 |
| Pg. 6 | *U.S. Civil Rights Commission See Inequities in FEMA Disaster Response*<br>Washington Post, Sept. 21, 2022 |
| Pg. 9 | *FEMA Says It's Still Working to Fix Racial Disparities in Disaster Aid*<br>New York Times, Oct. 27, 2021 |

| | |
|---|---|
| Pg. 11 | *Fix Disaster Response Now*<br>Scientific American, Sept.1, 2021 |
| Pg. 16 | *The Real Damage: Why FEMA is Denying Disaster Aid to Black Families that Have Lived for Generations in the Deep South*<br>Washington Post, July 11, 2021 |
| Pg. 29 | *Why FEMA Aid is Unavailable to Many Who Need It the Most*<br>NPR, June 29, 2021 |
| Pg. 48 | *How Disaster Aid Favors White People*<br>New York Times, June 9, 2021 |
| Pg. 58 | *Assistance Not Approved*<br>Washington Post, Apr. 25, 2021 |
| Pg. 81 | *Recent Disasters Reveal Racial Discrimination in FEMA Aid Process*<br>Facing South: A Voice for a Changing South, Sept. 24, 2018 |
| Exhibit J | FEMA Advisories of IHP Availability after January 19, 2022 |

## TABLE OF AUTHORITIES

Page

**Cases** (* precedes opinions on which Plaintiff principally relies)


*ACORN v. FEMA*,
463 F. Supp. 2d 26 (D.D.C. 2006)....................9

* *Animal Legal Defense Fund v. USDA*,
935 F.3d 858 (9th Cir. 2019).................... Passim

*Assassination Archives & Rsch. Ctr. v. Cent. Intel. Agency*,
657 F. Supp. 3d 95 (D.D.C. 2023)....................19

*Barbosa v. Dept. of Homeland Sec.*,
916 F.3d 1068 (D.C. Cir. 2019).................... Passim

*Brennan Center for Justice v. Dept. of Commerce*,
498 F. Supp. 3d 87 (D.D.C. 2020)....................22

*Brown v. Allen*,
344 U.S. 443, 537 (1953)....................19

*Califano v. Yamasaki*,
442 U.S. 682 (1979)....................24

*Church of Scientology of California v. I.R.S.*,
792 F.2d 153 (D.C. Cir. 1986)....................19

* *Citizen Action v. Dep't of Energy Nat'l Nuclear Sec. Admin.*,
2008 WL 11401749 (D.N.M. Mar. 31, 2008)....................16, 17, 18

*Citizens for Resp. & Ethics in Washington v. HUD*,
415 F. Supp. 3d 215 (D.D.C. 2019)....................18

*Citizens for Responsibility & Ethics in Washington v. DOJ*,
846 F.3d 1235 (D.C. Cir. 2017)....................5, 15, 20

*Clarke v. Commodity Futures Trading Comm'n*,
74 F.4th 627 (5th Cir. 2023)....................23

*Consumers' Research v. Consumer Prod. Saf. Comm'n.*,
592 F. Supp. 3d 568 (E.D. Tex. 2022)....................16

* *Davidson v. Glickman*,
169 F.3d 996 (5th Cir. 1999)....................5, 20

*Dennis Melancon, Inc. v. City of New Orleans*,
703 F.3d 262 (5th Cir. 2012) ....................................................................................20

*Dep't of Air Force v. Rose*,
425 U.S. 352 (1976) ....................................................................................23

*Center for Bio. Diversity v. Brennan*,
571 F. Supp. 2d 1105 (N.D. Cal. 2007) ....................................................................................24

*DOJ v. Rep. Comm. For Freedom of the Press*,
489 U.S. 749 (1989) ....................................................................................23

*eBay Inc. v. MercExchange, LLC*,
547 U.S. 388 (2006) ....................................................................................14

*Elrod v. Burns*,
427 U.S. 347 (1976) ....................................................................................22

*FEC v. Akins*,
524 U.S. 11 (1998) ....................................................................................20

*LUPE v. FEMA*,
141 F. Supp. 3d 681 (S.D. Tex. 2015) ....................................................................................1, 3

*Ford v. Anderson Co., Tex.*,
2024 WL 77477 (5th Cir. Jan. 8, 2024) ....................................................................................19

*Elec. Priv. Info. Center v. DOJ*,
416 F. Supp. 2d 30 (D.D.C. 2006) ....................................................................................22, 24

*Jackson v. Entergy Oper., Inc.*,
1998 WL 46822 (E.D. La. Feb. 4, 1998) ....................................................................................19

*J-M Mfg. Co. v. Affiliated Fm Ins. Co.*,
2023 WL 2186423 (C.D. Cal. Feb. 23, 2023) ....................................................................................24

*Philips Pet. Co. v. Johnson*,
22 F.3d 616 (5th Cir. 1994) ....................................................................................5

*Jud. Watch, Inc. v. Dep't of Homeland Sec.*,
895 F.3d 770 (D.C. Cir. 2018) ....................................................................................16, 17, 21

*Kennecott Utah Copper Corp. v. U.S. Dept. of Interior*,
88 f.3d 1191 (D.C. Cir. 1996) ....................................................................................11, 15

*Lake Travis Transitional Med. Ctr. v. HUD*,
2011 WL 13152494 (W.D. Tex. June 8, 2011) ....................................................................................23

*Lefebure v. D'Aquilla*,
15 F.4th 670 (5th Cir. 2021) ........................................................................................2

*Lewis v. Reagan*,
660 F.2d 124 (5th Cir. 1981) ......................................................................................15

*Long v. IRS*,
693 F.2d 907 (9th Cir. 1982) ................................................................................16, 24

*LUPE v. FEMA*,
608 F.3d 217 (5th Cir. 2010) ..................................................................................9, 10

*Metro. Wash. Airports Auth. v. Citiz. for Abatement of Aircraft Noise*,
501 U.S. 252 (1991) ....................................................................................................21

*Milner v. Dept. of Navy*,
562 U.S. 562 (2011) ....................................................................................................14

*Mo. Coal. for Env't v. U.S. Army Corps of Eng'rs*,
369 F. Supp. 3d 151 (D.D.C. 2019)....................................................................17, 18

*Mock v. Garland*,
75 F.4th 563 (5th Cir. 2023)........................................................................................24

*Muttitt v. U.S. Cent. Command*,
813 F. Supp. 2d 221 (D.D.C. 2011)..............................................................................18

*Nat'l Archives & Rec. Admin. v. Favish*,
541 U.S. 157 (2004) ......................................................................................................2

* *New York Legal Asst. Grp. v. Bd. of Immigr. Appeals*,
987 F.3d 207 (2d Cir. 2021) ................................................................................ Passim

* *News-Press v. U.S. Dept. of Homeland Sec.*,
489 F.3d 1173 (11th Cir. 2007) ......................................................................3, 9, 21, 23

*Nken v. Holder*,
556 U.S. 418 (2009) ....................................................................................................23

*NLRB v. Robbins Tire & Rubber Co.*,
437 U.S. 214 (1978) ......................................................................................................2

*NLRB v. Sears, Roebuck & Co.*,
421 U.S. 132 (1975) ......................................................................................................2

* *Payne Enterprises, Inc. v. U.S.*,
837 F.2d 486 (D.C. Cir. 1988)............................................................................. Passim

*Portee v. Morath*,
2023 WL 8040763 (W.D. Tex. Nov. 20, 2023)....................14

*Red Lion Broad. Co. . FCC*,
395 U.S. 367 (1969) ....................22

*Renegotiation Bd. v. Bannercraft Clothing Co*.,
415 U.S. 1 (1974) ....................15

*Ridgely v. FEMA*,
512 F.3d 727 (5th Cir. 2008) ....................3, 4, 21

*Riser v. U.S. Dep't of State*,
2010 WL 4284925 (S.D. Tex. Oct. 22, 2010) ....................20, 21

*Royer v. Fed. Bureau of Prisons*,
934 F. Supp. 2d 92 (D.D.C. 2013)....................6

*Schlefer v. U.S.*,
702 F.2d 233 (D.C. Cir. 1983)....................2

*Shell Offshore v. Babbitt*,
238 F.3d 622 (5th Cir. 2001) ....................5

*Smith v. Barrett Daffin Frappier Turner & Engel, LLP*,
735 Fed. App'x 848 (5th Cir. 2018)....................19

*Stanley v. Georgia*,
394 U.S. 557 (1969) ....................22

*Texas v. EEOC*,
633 F. Supp. 3d 824 (N.D. Tex. 2022) ....................5, 6

*Texas v. EPA*,
662 F. Supp. 3d 739 (S.D. Tex. 2023)....................21

*U.S. Ass'n of Importers of Textiles & Apparel v. U.S.*,
29 C.I.T. 323 (2005) ....................14

*U.S. Navy Seals 1-26 v. Biden*,
27 F.4th 336 (5th Cir. 2022)....................22

*U.S. v. Newby*,
838 F.3d 1 (D.C. Cir. 2016)....................23, 24

*U.S. v. Vargas*,
74 F.4th 673 (5th Cir. 2023)....................1

*Valentine v. Collier*,
993 F.3d 270 (5th Cir. 2021) .....14

**Statutes**

5 U.S.C. § 551(1) .....5

5 U.S.C. § 552(a)(1).....5, 6, 10, 11

5 U.S.C. § 552(a)(2)..... Passim

5 U.S.C. § 552(a)(3)..... Passim

5 U.S.C. § 552(a)(4)(B) ..... Passim

5 U.S.C. § 552(a)(4)(E)(iii).....22

5 U.S.C. § 552(a)(6)(A) .....6, 7

5 U.S.C. § 552(j) .....18

5 U.S.C. § 553.....6

42 U.S.C. § 5121.....4

42 U.S.C. § 5148.....11

42 U.S.C. § 5151(a) .....3, 4, 13

42 U.S.C. § 5174.....2, 4, 8, 10

42 U.S.C. § 5189a(c).....4

44 U.S.C. § 1510.....6

Pub. L. 106-390 § 206.....4

**Rules**

Fed. R. Civ. P. 54..... 19

Fed. R. Civ. P. 56..... 1

**Regulations**

44 C.F.R. Part 206, Subpart D, §§ 206.110 to 119 .................... 4, 7

44 C.F.R. § 206.115 .................... 8, 22

**Other Authorities**

Exec. Order No. 12,673 (Mar. 23, 1989) .................... 5

U.S. Dept. of Homeland Sec., Report No.,
OIG-20-23 (April 6, 2020) (Exhibit I).................... 40

General Acc. Ofc., Rep. No. 20-503, *Additional Actions Needed to Strengthen FEMA's IHP* (Sept. 2020) .................... 9

81 Fed. Reg. 68,442 (Oct. 4, 2016).................... 7

## NATURE AND STAGE OF THE PROCEEDING

Plaintiff *La Uniòn del Pueblo Entero* (LUPE) claims that the Federal Emergency Management Agency (FEMA) violates the Freedom of Information Act (FOIA), 5 U.S.C. § 552(a)(2), by failing to post on its website the rules that FEMA uses to decide applications for assistance following each disaster. After allowing FEMA two years to post its rules, the Court set deadlines for the parties' cross-motions for summary judgment. LUPE's motion follows.

## QUESTIONS PRESENTED

(1) Whedther 5 U.S.C. § 552(a)(4)(B) affords this Court jurisdiction to enter injunctive relief that secures FEMA's compliance with 5 U.S.C. § 552(a)(2).

(2) Whether LUPE is entitled to summary judgment on its claim that FEMA has a policy or practice of violating § 552(a)(2).

(3) Whether LUPE faces irreparable harm absent an injunction mandating FEMA's compliance with § 552(a)(2).

(4) Whether the balance of harm to FEMA or the public interest outweigh harm to LUPE.

Question (1) is decided based on statutory text, structure, history, and purpose. *See U.S. v. Vargas*, 74 F.4th 673, 691 (5th Cir. 2023) (en banc). The other questions are decided under Rule 56 based on whether any genuine issue of material fact prevents judgment as a matter of law.

## INTRODUCTION

LUPE brought this lawsuit as its only apparent means of dissuading FEMA from secretly manipulating disaster assistance standards to disadvantage poor people. Chavez Decl. ¶ 13, Exh. A; *see also LUPE v. FEMA*, 141 F. Supp. 3d 681, 703-08 (S.D. Tex. 2015) (describing FEMA's prior use of unpublished rules that harmed low-income communities). Declared disasters regularly afflict low-income communities, including ones served by LUPE. Chavez Decl. ¶¶ 7-9;

News Articles, Exh. I (listed in Contents, *supra* at ii). LUPE aims to promote fair distribution of disaster assistance by ensuring that FEMA's standards are published at the time and in the manner required by FOIA, because "sunlight is the best disinfectant." *Lefebure v. D'Aquilla*, 15 F.4th 670, 674 (5th Cir. 2021) (citation omitted).

Secret law frustrates democracy. *See Nat'l Archives & Rec. Admin. v. Favish*, 541 U.S. 157, 172 (2004) (an informed public is "a structural necessity in a real democracy"); *NLRB v. Robbins Tire & Rubber Co*., 437 U.S. 214, 242 (1978) ("The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."); *NLRB v. Sears, Roebuck & Co*., 421 U.S. 132, 153 (1975) (FOIA "represents a strong congressional aversion to secret agency law."); *Schlefer v. U.S.*, 702 F.2d 233, 244 (D.C. Cir. 1983) ("A strong theme of [opinions applying FOIA] has been that an agency will not be permitted to develop a body of 'secret law,' used by it in the discharge of its regulatory duties and in its dealings with the public, but hidden [from the regulated public].") (collecting cases).

FOIA prevents secret law by forbidding agencies from using any substantive or procedural rules to adversely affect a member of the public unless the agency has first published the rules either in the Federal Register or on the agency's website. *See* 5 U.S.C. §§ 552(a)(1)-(2). Many other agencies—SSA, FDA, HUD—administer complex programs and comply with § 552(a)(2).

Here, the summary judgment record proves that FEMA uses unpublished rules to administer the multi-billion-dollar Individuals and Households Program (IHP) that Congress authorized in 42 U.S.C. § 5174. AR at 1 to 10,602; Errata at 1, Dkt. 96 (rules used through January 19, 2022). In response to this suit, so far FEMA has chosen to neither comply with FOIA nor justify its failure to comply. Instead, FEMA's only response has been that this Court lacks

jurisdiction to do anything about FEMA's ongoing non-compliance, and that the Court should not exercise any jurisdiction that it has. This motion therefore focuses on why the Court can and should enter specific injunctive relief to secure FEMA's compliance with FOIA.

FEMA publication of all IHP rules is critical for three reasons. First, disaster survivors cannot effectively appeal adverse decisions unless survivors know what rules FEMA used against them. *See* Valdez Decl. ¶¶ 6-9, Exh. B; *Ridgely v. FEMA*, 512 F.3d 727, 741 (5th Cir. 2008) ("Until a disappointed applicant is informed of the reasons that FEMA believes him to be ineligible for assistance, including the factual basis underlying that decision, he simply has no way to test the veracity of the agency's findings against him . . . . [W]e urge FEMA to . . . provide applicants with a meaningful understanding of the agency's decisions . . . .") (citations omitted).

Second, FEMA's compliance with Congress's limits on disaster assistance cannot be known if FEMA is allowed to use secret rules. *See* 42 U.S.C. § 5151(a) (prohibiting several forms of discrimination); *LUPE*, 141 F. Supp. 3d at 698-701 (asserting several § 5151(a) violations).

Third, even when FEMA acts within its statutory bounds, the taxpaying public still has a strong interest in knowing how FEMA exercises its broad discretion to spend disaster assistance money. *See News-Press v. U.S. Dept. of Homeland Sec.*, 489 F.3d 1173, 1192 (11th Cir. 2007) ("We easily conclude . . . that the asserted [public] interest in learning whether FEMA is a good steward of (sometimes several billions of) taxpayer dollars in the wake of natural and other disasters is one which goes to [FOIA's] core purpose . . . .") (citations omitted).

## BACKGROUND

### I. Statutory and Regulatory Background

#### A. FEMA administers the Individuals and Households Program.

The Robert T. Stafford Disaster Relief and Recovery Act ("Stafford Act") empowers "the

President" to undertake numerous actions upon declaring a "major disaster." 42 U.S.C. §§ 5121, *et seq*. The President delegated most Stafford Act authority to FEMA. Exec. Order No. 12,673 (Mar. 23, 1989). FEMA administers some dozen Stafford Act programs. *Id.*

In terms of cost, IHP is the second largest Stafford Act program that FEMA administers. Congress created IHP in 2000 and made it available for disasters declared after October 15, 2002. Pub. L. 106-390 § 206 (Oct. 30, 2000). Since 2002, Presidents have decided to make IHP available after 562 major disasters, averaging more than two per month, and FEMA has distributed over $32 billion through IHP. Dyal Decl. ¶ 8, Exh. C.

IHP provides federal money directly to individuals and households for several purposes, one of which is to repair owner-occupied underinsured homes that are damaged by a disaster. 42 U.S.C. § 5174(c)(2). Congress requires FEMA to establish IHP eligibility criteria as follows:

> (a) 42 U.S.C. § 5174(j)—FEMA "shall prescribe rules and regulations to carry out this section, including criteria, rules, and procedures for determining eligibility for assistance;"
>
> (b) 42 U.S.C. § 5151(a)—FEMA "shall include [in its disaster assistance rules] provisions for insuring that . . . the processing of applications, and other relief and assistance activities shall be accomplished in an equitable and impartial manner, without discrimination on the grounds of race, color, religion, nationality, sex, age, disability, English proficiency, or economic status;" and
>
> (c) 42 U.S.C. § 5189a(c)—FEMA "shall issue rules which provide for the fair and impartial consideration of [IHP] appeals."

FEMA's only published IHP regulations appear in 44 C.F.R. §§ 206.110-120. On their face, these regulations are so vague and precatory that no one can tell from them alone who is eligible for what amount of IHP assistance. *Ridgely*, 512 F.3d at 736 ("FEMA's implementing regulations are written in entirely permissive terms.").

To decide who will receive what IHP assistance after each disaster, FEMA uses:

> a hierarchy of statute, regulations, and policies. The statute is the Federal law that authorizes the program[, 42 U.S.C. § 5174]. From the statute, regulations are published to

> further define program scope, and policies are written to apply the statute and regulations to specific situations. These authorities govern the eligibility criteria through which FEMA provides funds for [IHP]. . . . Policies are issued by FEMA Headquarters. They clarify or provide direction for specific situations that arise in the implementation of Stafford Act provisions [and may be] specific to a single disaster . . . . FEMA issues policies so that the regulations are interpreted consistently across the nation . . . .

Public Assistance Guide, FEMA Depo. Exhibit at 5891-92, Exh. F at 6-7; FEMA Depo. at 14:18 to 16:21 (IHP is administered as described in FEMA's Public Assistance Guide), Exh. F at 3-5.

**B. FOIA requires all agencies to publish their rules.**

FOIA imposes three distinct disclosure requirements on all federal agencies, including FEMA. *See* 5 U.S.C. § 551(1) (defining "agency"). These appear in §§ 552(a)(1), (2), and (3).

**1. § 552(a)(1)—Federal Register Publication**. All agencies must "publish in the Federal Register" certain records, including "rules of procedure" and "substantive rules of general applicability." *Id.* § 552(a)(1)(C)-(D). "'Rule' means the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency . . . . " *Id.* § 551(4); *see Texas v. EEOC*, 633 F. Supp. 3d 824, 839 (N.D. Tex. 2022) (noting breadth). Section 552(a)(1) imposes an ongoing "affirmative disclosure obligation;" no request is required. *Citizens for Responsibility & Ethics in Washington v. DOJ*, 846 F.3d 1235, 1240 (D.C. Cir. 2017) ("*CREW*"). To promote compliance with this affirmative obligation, Congress provides that agencies may not require anyone to "resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published." *Id.* § 552(a)(1). The Fifth Circuit has repeatedly applied this provision and refused to permit agencies to use unpublished rules, including in disaster assistance. *See Shell Offshore v. Babbitt*, 238 F.3d 622, 630 (5th Cir. 2001) (mineral royalty calculations); *Davidson v. Glickman*, 169 F.3d 996, 999 (5th Cir. 1999) (disaster assistance to farmers); *Phillips Pet. Co. v. Johnson*, 22 F.3d 616, 620-21 (5th

Cir. 1994) (oil and gas leases).[1]

**2. § 552(a)(2)—Website Publication**. At issue in this case is FOIA's second requirement, which directs agencies to publish on their websites certain documents, including "those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register," and "administrative staff manuals and instructions to staff that affect a member of the public." 5 U.S.C. § 552(a)(2)(B)-(C). "Each agency shall also maintain and make available for public inspection in an electronic format current indexes providing identifying information for the public as to any matter [required to be published]." *Id.* § 552(a)(2). Section 552(a)(2) also imposes an ongoing affirmative disclosure obligation: all materials covered by this statute "that affect a member of the public may be . . . used . . . against a party other than an agency only if . . . it has been indexed and either made available or published as provided by this paragraph [or] the party has actual and timely notice of the terms thereof." *Id.*

**3. § 552(a)(3)—Specific Requests**. FOIA's third requirement states how agencies must respond to requests for specific existing records. 5 U.S.C. § 552(a)(3). This reactive disclosure obligation is by far FOIA's most familiar and litigated provision, but it is not at issue here.

**4. FOIA Enforcement.** FOIA explicitly authorizes persons to request affirmative electronic publication of agency information under § 552(a)(2) prior to seeking judicial enforcement. *See* 5 U.S.C. § 552(a)(6)(A) ("request for records made under paragraph (1), (2), or

[1] An extensive jurisprudence has developed to discern which rules must be published in the Federal Register under 5 U.S.C. § 552(a)(1), codified in regulations under 44 U.S.C. § 1510, and subjected to notice and comment rulemaking under 5 U.S.C. § 553. *See Texas v. EEOC*, 633 F. Supp. at 839 (distinguishing interpretive from substantive rules); *see also Royer v. Fed. Bureau of Prisons*, 934 F. Supp. 2d 92, 97 (D.D.C. 2013) (The D.C. Circuit describes the distinction between legislative and interpretive rules as "tenuous, fuzzy, blurred, . . . enshrouded in considerable smog, [and] baffling.") (citations omitted). This case does not raise any such issues because FOIA's next subsection requires website publication of rules that are not published in the Federal Register.

(3) of this subsection"); *id.* § 552(a)(6)(C)(i) ("Any person making a request to any agency for records under paragraph (1), (2), or (3) of this subsection shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph."). FOIA establishes a private right of action and provides district courts with "jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).

## II. Factual Background

None of the following record facts is subject to genuine dispute.

### A. FEMA uses many changing rules to decide IHP applications.

The only rules that FEMA has published in the Federal Register are its regulations at 44 C.F.R. §§ 206.110-120 and its Individual Assistance Program and Policy Guide. 81 FED. REG. 68,442 (Oct. 4, 2016). Neither is specific enough to produce consistency in IHP decision-making.

FEMA aims to make consistent IHP decisions within each disaster. Torres Decl. ¶ 11, Dkt. 40-3. To promote FEMA's consistency goal, FEMA uses an extensive array of substantive and procedural IHP rules that FEMA does not publish as regulations, but which "are necessary for staff to complete their work. They consist of step-by-step instructions for navigating internal procedures and controls." *Id.* ¶¶ 10-11. These rules include without limitation documents that FEMA labels:

(1) "Standard Operating Procedures" that set forth standards used by FEMA to make IHP decisions, including which damages are disaster related, *e.g.*, AR at 2891-936;

(2) "Inspection Guidelines" that set forth unique disaster-specific procedures for how inspectors are to gather the data that FEMA uses to decide amounts of IHP assistance,

*e.g.,* AR. at 1151-59 and 9395-400;

(3) "Line Items" that set forth disaster-specific unit prices and limits for each type of home repair, *e.g.,* AR at 38-82 and 4374-82;

(4) "Policies" that set forth FEMA agency-wide directives, *e.g.,* AR at 1363-78;

(5) "Discretionary Policies" dependent on resources and setting, *e.g.,* AR at 10599-602;

(6) "Pre-Shift Instructions" that communicate daily updates to field inspectors which can include what repairs will be allowed for that disaster, *e.g.,* AR at 3944-4350; and

(7) "Inspector Trainings" that set forth when and how to use inspection methods, *e.g.,* AR at 8666-8792 and 8921-9068.

FEMA's IHP policies and procedures change from disaster to disaster via senior management's issuance of amended instructions to FEMA staff and contractors. *See, e.g.,* AR at 793-1204 (disaster-specific inspection guidelines); AR at 3944-4350 (disaster-specific staff instructions); Dyal Decl. ¶ 10; LUPE Letter at 4-12, Exh. D. FEMA also continually updates its IHP standards intended to apply to all future disasters, also via senior management's issuance of amended instructions to inspectors. Torres Decl. ¶ 8 ("so policy changes are consistently implemented").

**B. FEMA affirmatively provides little information to IHP applicants.**

Since 2002, FEMA has relied on its ever-evolving network of IHP polices and practices to distribute over thirty-two billion dollars in IHP assistance. Dyal Decl. ¶ 8(c). FEMA informs every family who applies for IHP assistance of the exact amount of money it has allowed, to the penny from $0.00 to $25,000.00 adjusted for inflation. Letters, Dkt. 41-4 and 41-5; *see also* 42 U.S.C. § 5174(h)(1) ($25,000 cap). Even though FEMA's decision letters provide almost no information about how FEMA determined each precise amount, FEMA requires disappointed applicants to appeal within 60 days of receiving FEMA's letter. 44 C.F.R. § 206.115.

### C. FEMA has long resisted publishing its IHP rules.

**1. Short version.** Courts, Congress's General Accounting Office, and FEMA's own Inspector General have long and repeatedly decried FEMA's failure to inform disaster survivors of what standards it uses to decide IHP assistance. *See LUPE v. FEMA*, 608 F.3d 217, 224-25 n.3 (5th Cir. 2010); *News-Press*, 489 F.3d at 1182; *ACORN v. FEMA*, 463 F. Supp. 2d 26, 35 (D.D.C. 2006); General Acc. Ofc., Report No. 20-503, *Additional Actions Needed to Strengthen FEMA's IHP* (Sept. 2020), https://www.gao.gov/products/GAO-20-503. At oral argument before the D.C. Circuit in 2018, FEMA's counsel "stated repeatedly that the agency would have no objection to complying with *specific* requests for documents so that the allegedly 'secret law' can be brought to light." *Barbosa v. Dept. of Homeland Sec.*, 916 F.3d 1068, 1074 (D.C. Cir. 2019).

Yet after making this pledge to the D.C. Circuit, FEMA continued refusing to reveal its IHP standards. FEMA ignored sixteen subsequent FOIA requests submitted by LUPE alone. Dyal Decl. ¶¶ 1-6. FEMA confirmed to this Court that it refuses to publish its standards when it judges the standards too technical, duplicative, or sensitive. Torres Decl. ¶ 9 (Oct. 21, 2022). A more complete history of FEMA's recalcitrance follows.

**2. Long version.** After Hurricane Dolly struck South Texas in 2008, a FEMA spokesperson claimed that IHP assistance was often denied to *colonia* residents because "a lot of the homes built were built from second hand materials . . . . So the damage was, in most cases, caused from the faulty building of the house and not the storm." Nichols Decl. ¶ 7, Exh. H. LUPE considered this statement to be illogical and saw no such IHP regulation, so LUPE became concerned that FEMA was selecting—for certain disasters only—secret rules that limit the assistance available to low-income communities. Chavez Decl. ¶ 13. LUPE therefore asked FEMA to reveal all standards that it used to decide applications for IHP assistance. Valdez Decl. ¶

13 (referencing Demand Letter, Exh. B at 20-22). FEMA never responded, but internally IHP senior management expressed concern: "This just looks to me like a freight train coming straight at us." Carleton Email at 1, Exh. G. LUPE sued, arguing that 42 U.S.C. § 5174(j) and 5 U.S.C. § 552(a)(1) required FEMA to promulgate more specific IHP regulations. The district court agreed based on § 5174(j) and issued a preliminary injunction requiring more specific regulations.

The Fifth Circuit reversed, holding FEMA's regulations to be minimally sufficient for § 5174(j), even though the regulations "are rather poor [and one] hopes that the new regulations FEMA is considering will give affected parties more guidance about [how FEMA decides IHP applications]." *LUPE*, 608 F.3d at 224-25 & n.3. The Fifth Circuit remanded for further consideration of LUPE's § 552(a)(1) claim after expressing concern over any FEMA use of secret rules. *Id.* at 224 & n.2. On remand, FEMA refused to compile an administrative record showing what standards it applied to decide IHP applications after Hurricane Dolly. This led the court to order discovery, which FEMA litigated for over two years before a 12,000-page administrative record revealed its Hurricane Dolly standards. *See* Orders, No. 1:08-cv-487 (S.D. Tex.), Dkt. 75 at 15, Dkt. 86 at 1-2; Dkt. 96 at 2, Dkt. 105 at 1, Dkt. 117 at 1. That record proved, and the court held, that FEMA illegally used an unpublished "deferred maintenance" rule that severely limited which damages were recorded as "disaster related" for Hurricane Dolly, requiring reconsideration of LUPE members' IHP applications. Final Order, No. 1:08-cv-487 (S.D. Tex.), Dkt. 172 at 41. In lieu of reconsideration, FEMA paid $11,538.46 to each affected LUPE member.

When another major disaster befell South Texas soon after the Dolly settlement, LUPE faced the same questions that it faced after Hurricane Dolly. Chavez Decl. ¶ 9; Barbosa Decls., Exh. E. When FEMA again refused to reveal its IHP standards, LUPE again sued seeking Federal Register publication of sufficient FEMA rules under § 552(a)(1), and reconsideration of IHP

applications that FEMA had denied in violation of the "adversely affected" proscription of § 552(a)(1). The district court and the D.C. Circuit held that 42 U.S.C. § 5148 deprives courts of subject matter jurisdiction to order reconsideration of any IHP application. *Barbosa*, 916 F.3d at 1074. The D.C. Circuit also held that its precedent precluded it from ordering mere publication of the standards used by FEMA. *Id.* at 1073; *see also* Argument Part I, *infra* (discussing *Kennecott Utah Copper Corp. v. U.S. Dept. of Interior*, 88 f.3d 1191, 1203-03 (D.C. Cir. 1996)). The court emphasized, however, that disaster survivors are not without a remedy to prevent FEMA's continued use of secret law:

> That is not to say that we were unmoved by the contentions that "secret law" was being used. So we were encouraged to hear government counsel assure us that additional policies for dealing with claims and appeals were easily available to Appellants on the internet. Moreover, a normal FOIA request would reach any governing policies. . . . . So, to the extent Appellants wish to seek additional materials beyond those already now available to them, they may do so by making FOIA requests under 5 U.S.C. § 552(a)(3).

*Id.* at 1074. *Barbosa* was decided March 1, 2019. *Id.* at 1068. As of this decision and date, the most efficient option available to LUPE under the law as stated in *Barbosa* appeared to be serial FOIA requests under § 552(a)(3) to obtain the standards that FEMA used following each disaster. LUPE therefore submitted serial FOIA requests following sixteen disasters in the two years after *Barbosa*. FEMA produced no substantive information in response. Dyal Decl. ¶¶ 1-6.

Meanwhile in late 2019 and 2020, the Second and Ninth Circuits decided cases under 5 U.S.C. § 552(a)(2). *See New York Legal Assistance Grp. v. Bd. of Immigr. Appeals*, 987 F.3d 207 (2d Cir. 2021) (*NYLAG*); *Animal Legal Defense Fund v. USDA*, 935 F.3d 858 (9th Cir. 2019) (*ALDF*). These opinions explicitly disagree with the D.C. Circuit's reasoning in *CREW* and *Kennecott*, which underpin the reasoning in *Barbosa.*

LUPE therefore wrote FEMA urging it to avoid litigation by making publicly available in its online electronic reading room all § 552(a)(2) materials, or explain why it declined to do so.

LUPE Letter at 1-2, Exh. D. When FEMA did not respond, LUPE sent a formal FOIA request only under § 552(a)(2) for "all records that communicate to any FEMA employee or to any FEMA contractor (including subcontractors) any substantive or procedural rule that is or will be used by FEMA, FEMA employees, FEMA contractors, or FEMA subcontractors to help decide any application for assistance" under IHP after January 1, 2019. Request, Dkt. 1-1. LUPE further requested that FEMA publish on its website without further request "all records that state any future change to any existing substantive or procedural IHP rule described above, regardless of whether the change is disaster specific or applies to all future disasters." *Id*.

When FEMA ignored FOIA's deadlines for responding to this FOIA request as well, and then refused to specify any date when it would respond, LUPE filed this lawsuit. Dkt. 1-2, 1-3, 1-4. The record of this lawsuit only confirms FEMA's resistance to publishing all of its IHP standards, and LUPE's ongoing commitment to securing publication. Chavez Decl. ¶ 18.

## III. Procedural Background

LUPE's suit seeks an injunction that achieves FEMA website publication of all current and future rules that FEMA uses to decide IHP eligibility, as required by § 552(a)(2). Complaint, Dkt. 1 ¶¶ 1 and 86(c). Over LUPE's objection, the Court granted FEMA's request for fourteen months, until September 2022, to file both an administrative record containing the records subject to FOIA and a *Vaughn* Index justifying any claimed FOIA exemptions from disclosure. Dkt. 15, 17, and 22. FEMA filed a heavily redacted 4,372-page AR on September 27, 2022. Dkt. 30. Then on October 21, 2022, FEMA filed a "Motion to Dismiss or, in the Alternative, for Summary Judgment." Dkt. 40. LUPE responded that FEMA had not produced all responsive records, FEMA improperly redacted the records it had produced, and FEMA's production of its standards for past disasters does not meet its ongoing obligations under § 552(a)(2). LUPE Response Part II

at 28-50, Dkt. 45. After the Court agreed with LUPE on all of these points, the Court denied FEMA's motion and entered a nine-phase docket control order. Order, Dkt. 57 and 58. Between August 1 and December 11, 2023, FEMA removed almost all of its redactions in the first 4,372 pages and produced some 6,229 additional pages of responsive records. AR at 1 to 10,602. The parties agree that these documents only show IHP rules that FEMA used between January 2019 and January 2022, and not afterward. Errata at 1, Dkt. 96. The Court then set a briefing schedule, Dkt. 94, pursuant to which LUPE now seeks summary judgment.

**SUMMARY OF ARGUMENT**

1. The text, structure, history, and purpose of 5 U.S.C. § 552(a)(4)(B), which affords "jurisdiction to enjoin the agency from withholding agency records," all confirm that courts may order agencies to publish § 552(a)(2) records on their websites. *NYLAG*, 987 F.3d at 213-24.

2. The summary judgment record proves a reasonable likelihood that that FEMA will continue in the future to fail to timely publish on its website the materials required by § 552(a)(2).

3. LUPE faces irreparable harm because without access to FEMA's IHP standards on the terms required by § 552(a)(2): (a) LUPE cannot help survivors effectively appeal adverse IHP decisions; (b) LUPE cannot gauge the need to organize against IHP standards that violate IHP statutes, including 42 U.S.C. § 5151(a); and (c) even absent any statutory violation, LUPE cannot alert the public to whether FEMA has responsibly exercised its discretion to set IHP standards.

4. The public interest is defined by the FOIA statute, and served by FEMA's compliance.

**ARGUMENT**

From the outset of this litigation two years ago, LUPE asserted that a circuit split exists as to this Court's jurisdiction. Rule 26(f) Report at 5, Dkt. 11. LUPE thus begins by describing why this Court has plenary jurisdiction to order FEMA's compliance with § 552(a)(2). Part I, *infra*.

Of course, LUPE must also show that injunctive relief is proper.

"A plaintiff seeking a permanent injunction must generally satisfy a four-factor test: (1) it has succeeded on the merits; (2) failure to grant the injunction will result in irreparable injury; (3) such an injury would outweigh any damage that the injunction will cause the opposing party; and (4) a permanent injunction would not disserve the public interest. *Valentine v. Collier*, 993 F.3d 270, 280 (5th Cir. 2021)." *Portee v. Morath*, No. 1:23-CV-551-RP, 2023 WL 8040763, at *7 (W.D. Tex. Nov. 20, 2023); *see also eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (these are generally applicable "well-established principles of equity"). For a FOIA injunction, success on the merits means that the agency has a "policy or practice" of violating FOIA, which is reasonably likely to persist in the future absent an injunction. *Payne Enterprises, Inc. v. U.S.*, 837 F.2d 486, 495 (D.C. Cir. 1988). The undisputed facts prove that all four factors weigh in favor of the specific injunction that LUPE seeks. Parts II to IV, *infra*.

## I. This Court has jurisdiction to order FEMA's compliance with § 552(a)(2).

FOIA's jurisdictional provision states:

> the district court . . . has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.

5 U.S.C. § 552(a)(4)(B). To discern the meaning of this provision, courts are to look no further than statutory text, structure, history, and purpose. *Milner v. Dept. of Navy*, 562 U.S. 562, 580 (2011) (an interpretation that "has no basis in the text, context, or purpose of FOIA [will cause the Supreme Court to] reject it"). The Second and Ninth Circuits parse the text, structure, history, and purpose of § 552(a)(4)(B), and conclude that FOIA's jurisdictional provision empowers courts to enter injunctions that secure website publication of § 552(a)(2) materials. *NYLAG*, 987 F.3d at 215-24; *ALDF*, 935 F.3d at 869-73; *see also U.S. Ass'n of Importers of Textiles & Apparel v. U.S.*,

29 C.I.T. 323, 325 n.2 (2005) (reading § 552(a)(4)(B) to withhold jurisdiction needed for § 552(a)(2) compliance is "utterly specious"). LUPE here incorporates its prior briefing that details how statutory text, structure, history, and purpose all confirm that this Court has plenary jurisdiction to enjoin agency website publication of records as required by § 552(a)(2). *See* LUPE Response in Opposition to FEMA's Motion for Summary Judgment at Parts I.A. and I.B., Dkt. 45; LUPE Response in Opposition to FEMA's Objections to the Magistrate Judge's Report and Recommendation at Part III, Dkt. 55; *see also* Order at 2, Dkt. 94 (excess summary judgment briefing pages are unnecessary due to Court's awareness of prior briefing).

The D.C. Circuit, by contrast, held that FOIA does not provide courts with plenary equitable jurisdiction. The D.C. Circuit did not explain how its interpretation of § 552(a)(4)(B) could be consistent with the statutory text, structure, history, or purpose. Instead, the D.C. Circuit only held that the meaning of the text at issue—"jurisdiction to enjoin the agency from withholding agency records"—was established as a matter of ***precedent*** because this text was discussed in a ***brief*** that was implicitly accepted ***sub silentio*** in *Kennecott Utah Copper Corp. v. Dept. of Interior*, 88 F.3d 1191 (D.C. Cir. 1996). *See CREW*, 846 F.3d at 1244 (citing "Joint Reply Br. Kennecott Utah Copper Corp. and Industry and Sanitation District Petitioners at 13").

Ironically, while the *CREW* court considered itself bound by its prior ***implicit*** holding in *Kennecott*, the *CREW* court did not consider itself bound by its ***explicit*** holding issued eight years before *Kennecott* was decided in 1996. In *Payne*, decided in 1988, the D.C. Circuit held that "[t]he FOIA imposes no limits on courts' equitable powers in enforcing its terms." *Payne*, 837 F.2d at 494 (citing *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 19-20 (1974)); *see also Lewis v. Reagan*, 660 F.2d 124, 128 (5th Cir. 1981) (FOIA affords broad jurisdiction as described in *Bannercraft*.). FEMA erroneously invites the Court to diverge from *Payne* and

*Lewis,* and accept severe limits on its equitable powers. FEMA Motion at 6, Dkt. 40.

## II. FEMA has a policy or practice of using unpublished IHP rules in violation of FOIA.

LUPE alleges that FEMA has repeatedly used, and continues to use, unpublished rules to decide IHP applications in violation of § 552(a)(2), and injunctive relief is needed to stop this. Complaint ¶¶ 1, 32-37, 59, 68, 73, 74, 81, and 86(c). This states a "policy or practice" claim under FOIA. Order at 2, Doc 57 (adopting Report and Recommendation at 7, Dkt. 51).

To succeed on a policy or practice claim, a plaintiff must prove: (a) the plaintiff has suffered multiple FOIA violations; (b) the violations are related rather than isolated mistakes; and (c) the violations are likely to recur in the future absent an injunction. *ALDF*, 935 F.3d at 873 (discussing *Long v. IRS*, 693 F.2d 907 (9th Cir. 1982)); *Jud. Watch, Inc. v. Dep't of Homeland Sec*., 895 F.3d 770, 780 (D.C. Cir. 2018); *Consumers' Research v. Consumer Prod. Saf. Comm'n*. 592 F. Supp. 3d 568, 579 (E.D. Tex. 2022); *Citizen Action v. Dep't of Energy Nat'l Nuclear Sec. Admin*., No. 06-cv-0726, 2008 WL 11401749, at *6 (D.N.M. Mar. 31, 2008).

### A. LUPE has suffered repeated FOIA violations.

Following at least sixteen disasters between 2020 and 2021, LUPE invoked § 552(a)(3) to request all standards that FEMA used to decide IHP applications. Dyal Decl. at 4-51. FEMA provided no substantive response to these requests. Dyal Decl. ¶¶ 1-6.

When LUPE then invoked § 552(a)(2) to seek web publication of these standards on an ongoing basis, *see* Dkt. 1-1, FEMA again repeatedly violated FOIA. First, FEMA failed to timely produce records or any substantive response, or even provide a date when it would do so. Email, Dkt. 1-2, 1-3, 1- 4. Second, prior to publication, FEMA used all of the IHP rules that it belatedly published as AR at 1 to 10,602. Third, FEMA failed to conduct an adequate search for its IHP standards, as shown by the fact that after the Court so held, FEMA produced an additional 6,229

pages of documents. Notice at 1, Dkt. 83. Fourth, FEMA attempted to redact most of the first 4,372 pages of records that it produced, and only after the Court held that FEMA failed to justify its redactions did FEMA remove them. Notice at 1, Dkt. 92. Fifth, only today January 18, 2024, did FEMA for the first time point LUPE to what it claims is the index that is required by § 552(a)(2). Sixth, FEMA still refuses to publish its IHP standards on an ongoing basis, so for 39 major disasters that were declared after January 19, 2022, FEMA's standards remain unpublished. Errata at 1, Dkt. 96; Dyal Decl. ¶ 8(b); FEMA IHP Advisories, Exh. J.

**B. Repeated violations are related.**

All FOIA violations described in the previous two paragraphs prevented or delayed LUPE's timely access to FEMA's IHP standards, so they are all related. *See Judicial Watch*, 895 F.3d at 782 ("same subject matter"); *Mo. Coal. for Env't v. U.S. Army Corps of Eng'rs*, 369 F. Supp. 3d 151, 159 (D.D.C. 2019) ("same types of documents"); *Citizen Action*, 2008 WL 11401749, at *8 ("Plaintiff has repeatedly requested the same type of documents"). That these violations indicate FEMA's policy or practice of resisting disclosure of IHP standards, and not isolated mistakes, is shown by their number, consistency among four presidential administrations, duration, and lack of alternative explanation. *See* Background Part II, *supra* (citing record). FEMA has never claimed that the violations resulted from mistakes, let alone isolated mistakes.

**C. Future violations are likely.**

Individually and more so together, the following record facts prove that future FOIA violations are reasonably likely without this Court's injunction:

(1) Alone, the number of related violations described in Parts II.A and II.B, *supra*, proves threat of future harm. *See Judicial Watch*, 895 F.3d at 780-82 ("prolonged, unexplained delays in producing non-exempt records" in response to nineteen requests until four months after pattern or

practice suit was filed shows a policy or practice); *Payne*, 837 F.2d at 492 (two-year "history of stubborn refusals" indicates future threat); *Citizens for Resp. & Ethics in Washington v. HUD*, 415 F. Supp. 3d 215, 225 (D.D.C. 2019) ("Plaintiffs have pointed to five separate FOIA requests by two unrelated organizations that encountered similar responses consistent with the alleged policy."); *Mo. Coal. for Env't*, 369 F. Supp. 3d at 159-60 (D.D.C. 2019) ("undisputed evidence of five instances . . . over four years"); *Muttitt v. U.S. Cent. Command*, 813 F. Supp. 2d 221, 230 (D.D.C. 2011) ("ten requests for estimated completion dates that did not receive an adequate response"); *Citizen Action*, 2008 WL 11401749, at *7 (six requests over three years).

(2) Agencies are responsible not only for knowing their FOIA obligations, but for proving their FOIA compliance. *See* 5 U.S.C. § 552(j) ("Each agency shall designate a Chief FOIA Officer who shall . . . have agency-wide responsibility for efficient and appropriate compliance . . . ."); *id.* § 552(a)(4)(B) ("the burden is on the agency to sustain its action"). Yet over fifteen years, FEMA has never availed itself of many opportunities to justify its failure to comply with the clear obligations imposed by § 552(a)(2), except to argue that the court lacks jurisdiction to secure its compliance. *Cf. Payne*, 837 F.2d at 494 (absence of justification for FOIA non-compliance indicates a need for equitable relief); *Citizen Action*, 2008 WL 11401749, at *6 ("Defendant offers no rationale for this exceedingly complex process or the certain delay it assures.").

(3) FEMA repeatedly promised the D.C. Circuit that it would reveal all of its secret law if only requests were made pursuant to § 552(a)(3). *Barbosa*, 916 F.3d at 1074. But when LUPE followed the course recommended by the D.C. Circuit, FEMA ignored sixteen of these requests. Dyal Decl. ¶¶ 1-6.

(4) In this litigation, FEMA has never even pledged to comply with its ongoing publication obligations under § 552(a)(2). *Cf. Payne*, 837 F.2d at 492 ("weak assurance" by

official who lacks authority to ensure FOIA compliance does not remove future threat).

(5) Not until today, January 18, 2024, did FEMA attempt to point LUPE to what it claims is the index required by § 552(a)(2). FEMA necessarily has some form of index to make the thousands of pages of standards useable by FEMA's own employees and contractors during disasters. *Id.* Congress required § 552(a)(2) documents to be indexed so that the public too may find the needle in the haystack. *See Church of Scientology of California v. I.R.S.*, 792 F.2d 153, 159 (D.C. Cir. 1986) (index helps prevent agency use of secret law), *aff'd*, 484 U.S. 9 (1987). For many disaster survivors, there is little practical difference between failing to publish documents altogether, and failing to publish an index to thousands of pages of documents. "He who must search a haystack for a needle is likely to end up with the attitude that the needle is not worth the search." *Brown v. Allen*, 344 U.S. 443, 537 (1953) (Jackson, J., concurring in result).[2]

(6) FEMA chose cutoff dates of May 14, 2021, and January 19, 2022, for producing documents in this case. Errata, Dkt. 96; Bridges Decl. ¶ 22, Dkt. 58-1. Reasonable cutoff dates have been allowed under § 552(a)(3). *See Assassination Archives & Rsch. Ctr. v. Cent. Intel.*

---

[2] The Court expressed concern that "index" does not appear in LUPE's complaint. Report and Rec. at 14 n.8, Dkt. 51; Order at 2, Dkt. 94. But the complaint seeks FEMA's compliance with its "obligations under § 552(a)(2)." Dkt. 1 ¶¶ 75-76, Dkt. 1. An index appears among the obligations included within the text of § 552(a)(2). *See Smith v. Barrett Daffin Frappier Turner & Engel, LLP*, 735 Fed. App'x 848, 854 (5th Cir. 2018) ("It bears emphasizing that factual allegations alone may state a claim for relief—even without referencing the precise legal theory (or statute) upon which the plaintiff seeks relief."); *Jackson v. Entergy Oper., Inc.*, No. 96-cv-4111, 1998 WL 46822, at *2 n.1 (E.D. La. Feb. 4, 1998) ("Although the complaint does not use those words, a complaint need not outline all elements of a claim nor use any "magic words" to state a claim."). Moreover, the index goes to relief for the alleged FOIA violation, and is not a separate claim. *See* FED. R. CIV. P. 54(c) ("Every . . . judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings.). If the Court requires the complaint to state a separate index claim, and LUPE's prior request for leave to amend to add it should be allowed. *See* Dkt. 52 at 7 (seeking leave); *Ford v. Anderson Co., Tex.*, No. 22-40559, 2024 WL 77477, at *18 (5th Cir. Jan. 8, 2024) (leave should be granted in similar circumstances).

*Agency*, 657 F. Supp. 3d 95, 105 (D.D.C. 2023), *aff'd*, No. 23-5064, 2023 WL 8519997 (D.C. Cir. Dec. 7, 2023). But the text of § 552(a)(2) imposes ongoing publication obligations by which agencies must automatically publish all new documents they produce, which is inconsistent with any cutoff date. *See NYLAG*, 987 F.3d at 225 ("compliance going forward"); *ALDF*, 935 F.3d at 862-63 ("automatic"); *CREW*, 846 F.3d at 1240 ("affirmative disclosure obligations"). An agency cannot comply with § 552(a)(2) and also impose a cutoff date. No reported decision permits a cutoff date in a § 552(a)(2) case. Here, while the Court observed that it has not yet explicitly ordered FEMA to publish rules prospectively, neither did the Court explicitly allow FEMA to violate § 552(a)(2). *See* Order at 8 (adopting Recommendation 4), Dkt. 57; Order at 1-2 (no injunction at this time), Dkt. 61. By continuing to insist on a cutoff date, FEMA shows ongoing resistance to publishing its IHP standards as required by law.

(7) FEMA used unpublished rules, including disaster-specific line items and inspection guidelines, to decide IHP applications in some 39 disasters after January 19, 2022, in violation of § 552(a)(2). *See, e.g.,* FEMA IHP Advisories, Exh. J; Dyal Decl. ¶ 8(b); *see also Davidson*, 169 F.3d at 999 (use of unpublished standards to make disaster assistance decisions violates FOIA).

## III. LUPE faces irreparable harm absent an injunction.

It is "well-established that an injury is irreparable only if it cannot be undone through monetary remedies." *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 280 (5th Cir. 2012). The basic injury at issue here is that FEMA's ongoing violation of § 552(a)(2) deprives LUPE of access to information. Chavez Decl. ¶¶ 11-16, 18; Valdez Decl. ¶ 4; *see ALDF,* 935 F.3d at 867-68 (discussing *FEC v. Akins*, 524 U.S. 11, 21 (1998) (denial of "information which must be publicly disclosed pursuant to a statute" is injury)). "Nothing in the FOIA statute, however, authorizes damages awards to requesters for agency non-compliance or misconduct." *Riser v.*

*U.S. Dep't of State*, No. CIV.A. 09-3273, 2010 WL 4284925, at *2 (S.D. Tex. Oct. 22, 2010).

Nor are damages available for the other harms that FEMA causes LUPE, rendering these harms irreparable as well. *Id*. First, without the IHP information required by § 552(a)(2), LUPE cannot effectively help people appeal adverse IHP decisions. Chavez Decl. ¶¶ 9-12; Valdez Decl. ¶ 14; *see Barbosa*, 916 F.3d at 1072-73 ("We admit that we are more troubled by [the FEMA IHP] regulations' treatment of appeals . . . . It is certainly difficult to muster an effective appeal if one is ignorant of the grounds upon which a claim is denied."); *Ridgely*, 512 F.3d at 741 (same).

Next, without access to FEMA's IHP rules, LUPE cannot pursue its mission of engaging in public advocacy about pressing matters of public policy, namely the fair distribution of billions of dollars in disaster assistance. Chavez Decl. ¶¶ 2, 7-9, 14; Valdez Decl. ¶¶ 1, 12; *see News-Press*, 489 F.3d at 1178 ("In light of FEMA's awesome statutory responsibility to . . . respond to [disasters] there is a powerful public interest in learning [how well] it has met this responsibility").

When LUPE is prevented from serving communities with FEMA appeals and broader advocacy, this deprives LUPE of opportunities to attract the new members and to develop the new leaders that LUPE relies upon to pursue its mission. Chavez Decl. ¶¶ 2, 4, 7-9, 14; Valdez Decl. ¶ 2; *see Metro. Wash. Airports Auth. v. Citiz. for Abatement of Aircraft Noise*, 501 U.S. 252, 264-65 (1991) (organization is injured by agency action that makes its goals more difficult to achieve).

LUPE also suffers irreparable harm in the form of having to expend its limited resources on seeking answers to IHP eligibility questions that should be answerable simply by visiting FEMA's website. Chavez Decl. ¶¶ 6, 11-17; Valdez Decl. ¶¶ 2, 11; *see ALDF*, 935 F.3d at 867 ("[m]anaging voluminous FOIA requests costs time and money"); *Judicial Watch*, 895 F.3d at 780 ("litigation costs" unfairly burden requestors, the public, and the courts); *see also Texas v. EPA*, 662 F. Supp. 3d 739, 756 (S.D. Tex. 2023) (unrecoverable compliance costs are irreparable harm).

None of these harms are redressed by belated disclosure of FEMA's IHP standards. FEMA imposes a 60-day deadline for administrative appeals. 44 C.F.R. § 206.115. FEMA's appeal decisions are final and have been held to be unreviewable. *Barbosa*, 916 F.3d at 1073. Consequently, for FEMA's standards to be of any use, survivors need prompt access to them. Even FEMA agreed that LUPE's FOIA request qualified for expedited consideration under 5 U.S.C. § 552(a)(4)(E)(iii). Dkt. 1-3. As news of each disaster naturally fades with time, so too do opportunities for organizing and advocacy concerning fair IHP administration. *See ALDF*, 935 F.3d at 867 ("[w]aiting for the agency to produce records after a request [in lieu of § 552(a)(2) affirmative publication can make] information stale"); *Brennan Center for Justice v. Dept. of Commerce*, 498 F. Supp. 3d 87, 101-02 (D.D.C. 2020) (irreparable harm shown when information diminishes in value on a discernable date); *Elec. Priv. Info. Center v. DOJ*, 416 F. Supp. 2d 30, 40-41 (D.D.C. 2006) (diminished value of stale information produces irreparable harm).

Finally, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The Fifth Circuit recently held that this "principle applies with equal force to the violation of [the Religious Freedom Restoration Act] because [RFRA] enforces First Amendment freedoms, and [RFRA] requires courts to construe it broadly to protect religious exercise." *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336, 348 (5th Cir. 2022) (citations omitted). Like RFRA, FOIA also enforces First Amendment freedoms, including LUPE's freedom to receive information:

> It is the purpose of the First Amendment to preserve an uninhibited marketplace of ideas in which truth will ultimately prevail, rather than to countenance monopolization of that market, whether it be by the Government itself or a private licensee. It is the right of the public to receive suitable access to social, political, esthetic, moral, and other ideas and experiences which is crucial here. That right may not constitutionally be abridged ....

*Red Lion Broad. Co. . FCC*, 395 U.S. 367, 390 (1969); *see also Stanley v. Georgia*, 394 U.S. 557,

564 (1969) ("It is now well established that the Constitution protects the right to receive information and ideas."). Like RFRA, FOIA also must be construed broadly to achieve its purpose of preventing government use of secret law. *See DOJ v. Rep. Comm. For Freedom of the Press*, 489 U.S. 749, 772 n.20 (1989) (FOIA's "primary objective is the elimination of 'secret law'") (citation and quotation omitted); *Dep't of Air Force v. Rose,* 425 U.S. 352, 366 (1976) (the Court has "repeatedly stated that the policy of the Act requires that the disclosure requirements be construed broadly") (quotation omitted). Consequently, the Fifth Circuit's rationale in *U.S. Navy Seals 1-26* confirms that LUPE faces irreparable harm without the injunction it seeks.

**IV. Balance of harm to FEMA merges with public interest to favor an injunction.**

"[T]he . . . remaining . . . injunction factors [—] balance of the equities and the public interest [—] 'merge when the Government is the opposing party.'" *Clarke v. Commodity Futures Trading Comm'n*, 74 F.4th 627, 643 (5th Cir. 2023) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009). The public interest weighs in favor of an injunction because "the public interest is served when administrative agencies comply with their obligations under the APA." *Id.*; *see also Lake Travis Transitional Med. Ctr. v. HUD*, No. 10-cv-950, 2011 WL 13152494, at *9 (W.D. Tex. June 8, 2011) ("FOIA is actually a part of the APA."). Courts emphasize the public interest in agency compliance with statutes generally, in agency compliance with FOIA specifically, and in disclosure of FEMA's IHP decisions particularly. *See, e.g., Rep. Comm. For Freedom of the Press*, 489 U.S. at 773; *U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("There is generally no public interest in the perpetuation of unlawful agency action."); *News-Press*, 489 F.3d at 1192.

The Court may take judicial notice that many press reports question whether FEMA disadvantages low-income communities. News Articles, Exh. I. One in particular merits the Court's attention. The Washington Post describes Kim Schmadeke's experience in seeking IHP

assistance during 2020 and 2021. *Id.* at 58. The Court need not consider the article as evidence of what facts transpired in Ms. Schmadeke's case. *But see J-M Mfg. Co. v. Affiliated Fm Ins. Co*., No. 19-cv-05550, 2023 WL 2186423, at *6 (C.D. Cal. Feb. 23, 2023) (disaster facts reported in press accounts may be so capable of accurate and ready determination that they may judicially noticed). At minimum, the article proves what facts are ***possible*** if FEMA continues using secret rules. LUPE aims to prevent the possibility of the harm described in this article by demanding FEMA's full compliance with § 552(a)(2).

Even so, the Court cautioned that it is not "mechanically obligated" to grant an injunction for every violation of law, especially when the record remains undeveloped as to the "technical feasibility" of doing so. Order at 8-9, Dkt. 57. LUPE offers three responses. First, secret law has for good reason drawn condemnation from the Supreme Court. *See supra* at 2 (citations).

Second, courts consistently seek to prevent ongoing FOIA violations where they are found. *See NYLAG*, 987 F.3d at 225 ("injunctive relief under § 552(a)(2) should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs"); *ALDF*, 935 F.3d at 873 (courts "have the responsibility of ensuring the fullest responsible disclosure"); *Payne*, 837 F.2d at 494 ("These unreasonable delays in disclosing non-exempt documents violate the intent and purpose of FOIA, and the courts have a duty to prevent these abuses.") (quoting *Long*, 693 F.2d at 910); *Center for Bio. Diversity v. Brennan*, 571 F. Supp. 2d 1105, 1134 (N.D. Cal. 2007) (discretion indicates how, not whether, to enjoin informational injury); *see also Mock v. Garland*, 75 F.4th 563, 587 (5th Cir. 2023) ("injunctions should be crafted to 'provide complete relief to the plaintiffs'") (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)).

And as for technical feasibility, LUPE submits that many other agencies respect the website publication and indexing requirements of § 552(a)(2) as they administer similarly

complex and enormous federal programs. *See, e.g.,* Social Security Administration, SSA Policy Information Site; Food and Drug Administration, FDA Electronic Reading Room; Housing and Urban Development, FOIA Reading Room; Treasury Department, DOT Electronic Reading Room (all visited January 15, 2024). Also, FEMA admits that it relies on independent contractors to gather the data that it uses to render its IHP eligibility decisions. Bridges Decl. ¶¶ 19-21, Dkt. 59-1. If FEMA can teach its standards to hundreds of employees and contractors under disaster conditions, FEMA can simultaneously make those same standards available on its website. Simply put, judicial aversion is so settled that technical feasibility should be addressed in a way that does not excuse or permit continued proliferation of secret law. LUPE is prepared to discuss technical feasibility with FEMA as the Court directs.

## CONCLUSION

The Court should enter the injunction proposed in Dkt. 98-11.

Respectfully submitted,

January 18, 2024

TEXAS RIOGRANDE LEGAL AID, INC.

*/s/ Jerome Wesevich*
Jerome Wesevich, jwesevich@trla.org
Ana Laurel, alaurel@trla.org
Israel Reyna, ireyna@trla.org
1702 Convent Avenue
Laredo, Texas 78040
Tel. (956) 718-4610
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on the date next to my signature above I electronically filed the foregoing document, including all referenced exhibits and attachments, with the Clerk of the Court using the CM/ECF system, which sends notification of this filing to the attorneys of record for all parties.

*/s/ Jerome Wesevich*