**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION**

| | | |
|---|---|---|
| LA UNION DEL PUEBLO ENTERO, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CASE NO. 5:21-CV-071 |
| | § | |
| FEDERAL EMERGENCY | § | |
| MANAGEMENT | § | |
| AGENCY, et al., | § | |
| | § | |
| *Defendants.* | § | |

## DEFENDANTS' RESPONSE IN OPPOSITION TO LUPE'S MOTION FOR SUMMARY JUDGMENT

Respectfully Submitted,

ALAMDAR S. HAMDANI
UNITED STATES ATTORNEY

Jimmy A. Rodriguez
Assistant United States Attorney
Southern District of Texas
Attorney in Charge
Texas Bar No. 24037378
Federal ID No. 572175
1000 Louisiana, Suite 2300
Houston, Texas 77002
Tel: (713) 567-9532
Fax: (713) 718-3303
jimmy.rodriguez2@usdoj.gov

ATTORNEYS FOR THE UNITED STATES

## **TABLE OF CONTENTS**

PAGE

TABLE OF CONTENTS ......................................................................... i

TABLE OF AUTHORITIES ................................................................... ii

INTRODUCTION AND SUMMARY OF THE ARGUMENT ......................... 1

I. FEMA's compliance with FOIA in this case and its commitment to comply with
   FOIA moving forward. .................................................................... 2

II. LUPE has not established a violation of FOIA warranting
    the relief requested. ...................................................................... 5

III. LUPE has not established a policy and practice violation. ................... 9

IV. LUPE is not entitled to injunctive relief under the correct legal standard. ....... 11

   A.  Irreparable Harm ...................................................................... 13

   B.  Adequate Remedy. ..................................................................... 16

   B.  Balance of the Hardships and Public Interest. ................................. 17

CONCLUSION.................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atchafalaya Basinkeeper, Inc. v. United States Army Corps of Engineers,*
No 21-317, 2022 WL 219050 (E.D. La. Jan. 25, 2022)........................................ 9, 10

*Batton v. Evers,*
598 F.3d 169 (5th Cir. 2010) .................................................................................. 12

*Bauer v. Texas,*
341 F.3d 352 (5th Cir. 2003) .................................................................................. 16

*Center for Pub. Integrity v. U.S. Dept. of,*
Def., 411 F. Supp. 3d 5 (D.D.C. 2019) ................................................................... 17

*Center for the Study of Services v. U.S. Dept. of Health and Human Services,*
874 F.3d 287 (D.C. Cir. 2017) .......................................................................... 11, 12

*Clapper v. Am. Realty Inv'rs, Inc.,*
No. 3:14-CV-2970-D, 2015 WL 264711 (N.D. Tex. Jan. 21, 2015) ........................ 17

*Envtl. Def. Fund v. Marsh,*
651 F.2d 983 (5th Cir. 1981) .................................................................................. 17

*Hotze v. Hollins,*
No. 4:20-CV-03709, 2020 WL 6437668 (S.D. Tex. Nov. 2, 2020) .......................... 13

*Hotze v. Hudspeth,*
16 F.4th 1121 (5th Cir. 2021) ................................................................................. 13

*James v. Tex. Collin Cnty.,*
535 F.3d 365 (5th Cir. 2008).................................................................................. 14

*Kennon v. Slipstreamer, Inc.,*
794 F.2d 1067 (5th Cir. 1986) ................................................................................ 15

*Kilmer v. U.S. Cust. and Border Protec.,*
2023 WL 7695754 (D.D.C. Nov. 15, 2023)............................................................. 14

*MercExchange, LLC,*
547 U.S. 388 (2006).............................................................................................. 13

*Monumental Task Comm., Inc. v. Chao,*
678 Fed. Appx. 250 (5th Cir. 2017) ....................................................................... 13

*Monumental Task Comm., Inc. v. Foxx,*
    157 F. Supp. 3d 573 (E.D. La. 2016) ....................................................... 13

*Muckrock, LLC v. C. Intelligence Agency,*
    300 F. Supp. 3d 108 (D.D.C. 2018) ................................................. 11, 12

*N.L.R.B. v. Express Pub. Co.,*
    312 U.S. 426 (1941) ..................................................................................... 17

*Nken v. Holder,*
    556 U.S. 418 (2009) ..................................................................................... 17

*Papadopoulos v. Sidi,*
    547 F. Supp. 2d 1262 (S.D. Fla. 2008) .................................................. 17

*Roberts v. City of Shreveport,*
    397 F.3d 287 (5th Cir. 2005) ................................................................... 14

*Webb v. Arbuckle,*
    456 Fed. Appx. 374 (5th Cir. 2011) ...................................................... 16

*Weinberger v. Romero-Barcelo,*
    456 U.S. 305 (1982) ..................................................................................... 12

**Statutes**

5 U.S.C. § 552(a)(2) ........................................................................................ 9

5 U.S.C. § 552(a)(3) ........................................................................................ 8

**Rules**

Fed.R.Evid. 408 ................................................................................................ 14

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Defendants, the Federal Emergency Management Agency (FEMA), et al., file this response in opposition to Plaintiff La Union Del Pueblo Entero's (LUPE's) motion for summary judgment, ECF 98.

LUPE's motion for summary judgment should be denied because the facts of *this case* do not support LUPE's request for prospective injunctive relief. Indeed, LUPE's motion focuses on its requested remedy—an injunction requiring FEMA to comply with FOIA in the future—but it fails to establish the type of FOIA violation warranting the relief requested. There was certainly a delay in responding to LUPE's FOIA request, but other than the delay, there's been no FOIA violation established. Absent an established violation that would warrant prospective relief, there is no legal basis to issue the requested injunction. There are several additional reasons why LUPE's request for injunctive relief should be denied. First, the Court need not even reach the question of whether an injunction should issue because, as explained in FEMA's dispositive motion, this action is moot. Second, FEMA is committed to continuing to comply with the law and, in light of the proper presumptions, the Court should not order it to comply with FOIA in the future. Third, LUPE has not established a policy and practice claim under FOIA upon which to base an injunction. Fourth, assuming the Court considers issuing an injunction, LUPE is not entitled to prospective injunctive relief under the applicable standard. For these reasons and all the reasons set forth in prior briefing, the Court should deny LUPE's motion for summary judgment.

I. **FEMA's compliance with FOIA in this case and its commitment to comply with FOIA moving forward**

LUPE's motion for summary judgment is based on several faulty premises. First, the period of time within which FEMA searched for responsive records—from January 1, 2019, and January 19, 2022—was established by the Court. Order of August 14, 2023, ECF 61. It was not a date range that FEMA selected despite LUPE's assertions to the contrary. *See* LUPE MSJ at 19 (asserting that FEMA "chose cutoff dates of May 14, 2021 and January 19, 2022" and arguing that this purportedly supports its claim for injunctive relief). Further, in ordering the January 19, 2022 cut-off date, the Court rejected LUPE's argument that there should be no time limit on FEMA's search. *See* Objection, ECF 60 at 2. Now LUPE argues that the Court's cut-off date somehow entitles it to prospective injunctive relief. This is incorrect. FEMA did not err in searching for documents up until January 19, 2022. That is exactly what the Court ordered. A cut-off date had to be established in order for this case to be concluded. The Court found that it was reasonable to establish a cut-off date of January 19, 2022, and that ruling does not tilt the scales in favor of granting LUPE's requested injunction.

Second, another faulty premise of LUPE's motion for summary judgment is that all of the documents produced and published in response to LUPE's FOIA request are in fact documents subject to FOIA's electronic reading room provision. That is not the case. The FOIA electronic reading room statutory language at issue here is as follows:

2

(2) Each agency, in accordance with published rules, shall make available for public inspection in an electronic format—

\*\*\*

(B) those statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register;

(C) administrative staff manuals and instructions to staff that affect a member of the public;

\*\*\*

5 U.S.C. § 552(a)(2)(B)-(C) (hereinafter "(a)(2)"). In its FOIA request, LUPE asserted that all of the documents it sought were subject to the foregoing (a)(2) provisions. *See* ECF 1-1 at p. 2 (stating that LUPE's request involves documents that it believes are subject to the provisions of FOIA at § 552(a)(B)-(C)). However, in an abundance of caution, in the interest of disclosure and transparency, and in an effort to resolve the dispute presented in this case, FEMA was over-inclusive in its disclosures.

There is no dispute that FEMA has fully responded to LUPE's FOIA request through January 19, 2022—the date established by the Court. But LUPE appears to now be mistakenly arguing that all of the documents produced and published are of the type that should be published online per FOIA's (a)(2) provision. As FEMA previously explained,

With respect to the documents produced and made publicly available, FEMA processed the Plaintiff's request as if it were a request for information under § 522 (a)(3) even though Plaintiff did not make a request under § 522 (a)(3). That is, if documents were responsive to Plaintiff's request, they were produced to Plaintiff and placed on-line. This was done to provide the Plaintiff and public the fullest amount of information available and in furtherance of transparency.

[] In making the materials at issue in this case publicly available, FEMA is not

3

conceding that these materials qualify for proactive disclosure under § 522 (a)(2), nor is FEMA making a determination on the release of documents that will be created in the future. All such documents will be evaluated based on the applicable law. Plaintiff's request that FEMA predetermine which documents will be made available in the future is denied.

ECF, 40-1, Declaration of Gregory Bridges, at ¶¶ 9-10.

After this was made clear, FEMA negotiated additional search parameters with LUPE—again in an effort to resolve this case without Court involvement. ECF 69 (after a conferring and a "productive meeting" the parties agreed on the parameters of a supplemental search). As a result, many more additional documents were identified and published. ECF 77. After further conferring, the parties agreed that LUPE "would not further dispute the adequacy of FEMA's search for records . . . .". ECF 79. But not every document that was published online in response to LUPE's FOIA request fell within FOIA's (a)(2) requirement. Instead, FEMA interpreted LUPE's request broadly, implemented the agreed upon supplemental search, and produced documents accordingly. Thus, for example, the supplemental search agreed upon by the parties resulted in the publication of a series of emails organizing conferences calls with FEMA personnel. The emails typically included a conference call-in number and agenda items. *See* ECF 83-4, 10th Interim Response, FEMA008581 − 008637.  These documents are not FOIA (a)(2) documents. They are not "statements of policy and interpretations which have been adopted by the agency" nor are they "administrative staff manuals and instructions to staff that affect a member of the public." Thus, any assertion that all documents produced and published online in this

case are of the type that must always be published under FOIA (a)(2) requirements would not be accurate.

Relatedly, it is also not accurate to suggest that all documents produced and published online are always updated or replaced when a new disaster is declared. Thus, LUPE incorrectly infers that because there have been 39 disasters declared since the cut-off date, there must be 39 sets of documents like what was produced in this case that need to be published online. LUPE MSJ at 17. There are guidance documents that apply to all disasters that remain in effect and are not superseded simply because another disaster is declared. For example, the Public Assistance Policy Guide in effect was updated in June of 2020. Exhibit A ("Ex. A"), Bridges Declaration at ¶ 4. Similarly, the Flood Insurance Manual was updated in October of 2022 and remains in effect. *Id.*; *see also, e.g.,* Ex. A at ¶ 6 (referencing ECF 92-3 (FEMA001263(reprocessed)).

The foregoing demonstrates why blanket, and bright-line, prospective rules concerning which documents will or will not be published online pursuant to (a)(2) are not workable. Instead, FEMA has committed to review documents as they are created to determine whether they need to be made electronically available online. In doing so, FEMA is committed to complying with FOIA's requirements. Ex. A, Bridges Declaration at ¶ 7.

## II. **LUPE has not established a violation of FOIA warranting the relief requested.**

LUPE's motion for summary judgment focuses of the relief requested—a prospective injunction. As explained in FEMA's dispositive motion, although courts

have the authority to issue injunctive relief in a FOIA case, the issuance of an injunction is the exception and not rule; and it is typically reserved for circumstances not present here. FEMA MSJ at 12-14. The Court must first find a FOIA violation before it decides whether the unusual step of issuing a prospective injunction is warranted. Here, FEMA certainly delayed processing and fully responding to LUPE's FOIA request, but that delay alone does not constitute a FOIA violation of the type that would support the prospective relief that LUPE seeks. Remarkably, LUPE baldly asserts that "[i]n response to this suit, so far FEMA has chosen to neither comply with FOIA nor justify its failure to comply." LUPE MSJ at p. 2. This hyperbolic assertion is belied by the efforts made by FEMA to work cooperatively with LUPE in this litigation to provide responses to its FOIA request. This includes negotiating and agreeing upon the parameters for a supplement search of documents and also agreeing to discretionarily release documents that had been previously withheld. All of this done in an effort to resolve this dispute, efforts that eliminated the need for the parties to file motions on the adequacy of the search and the Vaughn index.

LUPE argues that it has established that FEMA violated FOIA here by asserting the following:

- "FEMA failed to timely produce records or any substantive response . . . "

- "prior to publication, FEMA used all of the IHP rules that it belatedly published"

- "FEMA failed to conduct an adequate search for its IHP standards . . ."

6

- "FEMA attempted to redact most of the first 4,372 pages of records" before it removed those redactions;

- "only today January 18, 2024, did FEMA for the first time point LUPE to what it claims is the index"

- "FEMA still refuses to publish its IHP standards on an ongoing basis, so for 39 major disasters that were declared after January 19, 2022"

LUPE MSJ at pp. 16-17.  The foregoing is the totality of the alleged violations in this case.

FEMA concedes that there was a delay in responding to LUPE's FOIA request. However, no further FOIA violation has been established in this case. As noted above, not all of the documents produced in response to LUPE's FOIA request are (a)(2) documents. Thus, LUPE's broad assertion that FEMA's reliance on the documents produced in this case is conclusive evidence that FEMA violated FOIA is not accurate. Moreover, even assuming for the sake of argument that FEMA relied upon (a)(2) material prior to its publication online, this is a claim related to FEMA's delay in publication—something FEMA admits. But courts have consistently held that a delay in producing FOIA documents is not a sufficient basis to grant prospective relief. Moreover, FEMA's decision to engage in additional searches after conferring in good faith with LUPE (and to consequently produce many more documents) and to discretionarily release documents that were previously withheld, was done in the spirit of transparency and in an effort to resolve the dispute presented in this case. Those efforts should not be used against FEMA to demonstrate a FOIA violation or bad faith justifying an injunction.

7

As for the index, there was some dispute over whether LUPE had properly pled a claim concerning the index. *See* Report and Recommendation, ECF 51 at n.8 ("LUPE's Complaint does not assert a claim for FEMA's failure to provide an index."). Nevertheless, in furtherance of attempting to resolve all disputes in this case, FEMA agreed to create and publish an index. LUPE was informed of this by the undersigned well-before the parties' filing deadline. But LUPE mischaracterizes the index as a surprise sprung on them at the last minute. LUPE MSJ at 17. At bottom, the issue over the index is moot; it does not establish a FOIA violation; and, even assuming that it does, it certainly is not the type of violation that would warrant an injunction.

Lastly, LUPE's assertion that FEMA has failed to publish standards for the disasters declared since January 19, 2022, is misguided and based on a faulty premise. First, as noted above, the deadline of January 19, 2022, was established by this Court and has therefore properly been the focus of FEMA's efforts. Whether additional documents have been created since January 19, 2022, and whether those documents are in fact (a)(2) documents is not before the Court. FEMA is committed to complying with FOIA's (a)(2) requirements moving forward.

Other than the delay in processing its request, LUPE cannot identify FOIA violations supporting their claim for injunctive relief. In support of their claim of "repeated violations" LUPE goes on to talk about other cases and matters where FEMA allegedly violated the law, including other FOIA request under 5 U.S.C. § 552(a)(3)—not the reading room provision. Those other alleged examples do not establish a FOIA violation *in this case* for the purposes of issuing the relief LUPE

requests. The Court should not rely on those other cases or alleged FOIA violations outside the record established in this case as a basis for issuing injunctive relief.

## III.   LUPE has not established a policy and practice violation.

LUPE has not established a policy and practice violation that would support the type of broad relief it seeks.  As an initial matter, it is not at all clear that LUPE has pled a policy and practice claim.  Its complaint alleges a single FOIA count against Defendants and that count concerns LUPE's FOIA request. ECF 1, Complaint at pp. 12-13 ("Defendants have a statutory obligation under 5 U.S.C. § 552(a)(2) to make *the records requested by LUPE*—including past records and future records— publicly available in its electronic reading room prior to their use, and to do so affirmatively without awaiting any further request for publication.") (emphasis added). It is true that the Magistrate Judge characterized LUPE's claim as a "policy and practice" claim in noting that "Defendants did not separately argue and attempt to prove that LUPE's policy or practice claim for injunctive relief is moot . . . ." ECF 51 at 7. In adopting the Magistrate Judge's recommendation in part, however, the Court did not use that terminology in describing LUPE's claim. *See* ECF 57. Regardless of the labels used and what was specifically pled in the complaint, LUPE cannot establish a valid policy and practice claim.

The Fifth Circuit has never acknowledged or addressed a FOIA policy and practice claim. *See Atchafalaya Basinkeeper, Inc. v. United States Army Corps of Engineers*, No 21-317, 2022 WL 219050, *10 (E.D. La. Jan. 25, 2022) (noting that "[t]o date, there exists no Fifth Circuit case law acknowledging or addressing pattern,

practice, or policy claims . . . in the FOIA context"). The *Atchafalaya Basinkeeper* decision is one of the few district court decisions from this circuit analyzing a policy and practice claim. In *Atchafalaya*, the plaintiffs alleged that the U.S. Army Corps of Engineers had a policy and practice of violating FOIA by failing to respond timely, or at all, to their FOIA requests and by violating several procedural FOIA requirements. *Id*. at 10 (citing [Amended Complaint](#) at ¶ 7, which states "Plaintiffs further request . . . injunctive relief because the Corps has a pattern, practice, or policy of violating FOIA."). The plaintiffs sought injunctive relief to remedy the alleged policy or practice. *Id*. The court held that not every violation of FOIA is of the type that would warrant injunctive relief under the policy and practice theory of liability. *Id*. The court then recognized that the Corps had delayed responding to the plaintiffs' FOIA request, specifically holding that "the Court finds evidence that USACE violated the FOIA's procedural requirements, but not enough to infer a 'practice or policy' of violating the FOIA." *Id*. at 11. The court reasoned that the record did not establish the type of recalcitrance or "bad faith conduct" that would entitle the plaintiff to injunctive relief due to an alleged policy or practice. *Id*. Similarly, here, LUPE cannot establish a FOIA violation of the type that demonstrates the necessary recalcitrance or bad faith conduct by FEMA. Therefore, this Court should, like the court in *Atchafalaya,* enter summary judgment in favor of the government on any policy and practice claim.

**IV.    LUPE is not entitled to injunctive relief under the correct legal standard.**

With respect to its alleged entitlement to injunctive relief, LUPE fails to address certain threshold issues that must be resolved in its favor prior to the Court considering factors such as the presence of irreparable harm. In its motion, LUPE notes the four-factors that courts typically consider in determining whether to grant injunctive relief. These factors include the consideration of irreparable harm and a weighing of the equities. However, in FOIA cases, there are threshold issues that courts consider in determining whether injunctive relief is appropriate. Indeed, because these threshold issues typically make it unnecessary to enter injunctive relief, there are very few court decisions addressing the traditional injunctive-relief factors in the context of a FOIA case.

In determining whether prospective injunctive relief is proper, a court must find, "even in the face of conceded agency recalcitrance in complying with FOIA," a "likelihood of continued delinquent conduct by the agency." *Center for the Study of Services v. U.S. Dept. of Health and Human Services*, 874 F.3d 287, 293 (D.C. Cir. 2017). In making this assessment, a court must presume that the agency will comply with the law, particularly any rulings by the court. *Id*.   Thus, for example, in *Muckrock, LLC v. C. Intelligence Agency*, 300 F. Supp. 3d 108 (D.D.C. 2018) (J. Brown Jackson), a FOIA requester challenged, among other things, the CIA's policy used to process FOIA requests seeking email messages. Specifically, the CIA had employed a policy of categorically refusing to process the plaintiff's FOIA requests for email records because the requests did not "specify 'to' and 'from' recipients, time frame,

11

and subject. . . ." *Id.* at 136. The *Muckrock* court concluded that this policy violated FOIA. *Id.* With respect to the appropriate relief to remedy this FOIA violation, the court noted that the plaintiff had requested both declaratory and injunctive relief. *Id.* The court further acknowledged that the plaintiff was "eligible for prospective injunctive relief that bars the CIA from applying its email policy when responding to any future FOIA requests for email records that [the plaintiff] submits." *Id.* at 137. But in considering the "the likelihood of delinquent conduct" while considering the presumption that "[a] government defendant is presumed to adhere to the law declared by the court[,]" the court determined that it would not issue injunctive relief. *Id.* (citing *Center for the Study of Services*, 874 F.3d at 293).

Here, assuming the Court finds that FEMA has violated FOIA due to its delay in processing LUPE's request, it should not enter an injunction. FEMA is committed to complying with FOIA's public inspection provisions. Ex. A, Bridges Declaration at ¶ 7. FEMA's declaration is "entitled to a 'presumption of legitimacy' unless there is evidence of bad faith . . . ." *Batton v. Evers*, 598 F.3d 169, 176 (5th Cir. 2010). Relatedly, the Court should assume that government will comply with the law. *Muckrock*, 300 F. Supp. 3d at 137.

If the Court finds that FEMA is likely to engage in future delinquent conduct and that the representations from FEMA that it will comply with its FOIA obligations are not accepted, the Court would then proceed to weighing the traditional factors for determining whether an injunction, an extraordinary remedy, should issue. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). "According to well-

established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). Those factors include proof that the plaintiff will suffer an irreparable injury, that it lacks an adequate remedy at law, that the balance of hardships tip in favor of injunctive relief, and "that the public interest would not be disserved by a permanent injunction." *Id.* Assuming the Court reaches these factors, LUPE has not carried its burden on them to show an entitlement to injunctive relief.

### A.   Irreparable harm

Irreparable injury specifically requires more than the possibility of some future injury. To the contrary, the "injury must be both certain and great." *Monumental Task Comm., Inc. v. Foxx*, 157 F. Supp. 3d 573, 583 (E.D. La. 2016), aff'd *Monumental Task Comm., Inc. v. Chao*, 678 Fed. Appx. 250, 252 (5th Cir. 2017). The alleged injury also cannot be a generalized grievance: e.g., the public has an interest in ensuring that the government complies with FOIA. *See Hotze v. Hollins*, No. 4:20-CV-03709, 2020 WL 6437668, at *3 (S.D. Tex. Nov. 2, 2020) (holding that the irreparable harm alleged by the plaintiffs, *i.e.*, that "the Texas Election Code has been violated and that violation compromises the integrity of the voting process ... is a quintessential generalized grievance: the harm is to every citizen's interest in proper application of the law."), aff'd in part, vacated in part sub nom. *Hotze v. Hudspeth*, 16 F.4th 1121 (5th Cir. 2021). LUPE has failed to offer sufficient competent evidence that would support the issuance an injunction on the facts of this case.

13

LUPE relies on numerous sources of information that are not competent evidence. The Court should not consider this evidence in determining whether it should issue injunctive relief. Specifically, LUPE relies on newspaper articles, ECF 98-8, 98-9, decisions in other cases—cases not involving FOIA's public inspection provisions, evidence obtained in other cases, ECF 98-6, ECF 98-7, and even compromise settlements reached in other cases as supposed proof supporting its claim in this case. LUPE MSJ at 10 (citing settlement terms in another case as somehow supporting the arguments made in its motion).

With regard to the newspaper articles, courts have consistently held that they are hearsay and not competent summary judgment evidence. *See Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005) (finding that newspaper articles are "classic, inadmissible hearsay"); *James v. Tex. Collin Cnty.*, 535 F.3d 365, 374 (5th Cir. 2008) ("Newspaper articles, however, are not proper summary judgment evidence to prove the truth of the facts that they report because they are inadmissible hearsay."). Similarly, courts have rejected attempts to use materials from other cases as evidence of bad faith or prior bad acts. *See Kilmer v. U.S. Cust. and Border Protec.*, No. CV 17-1566 (CKK), 2023 WL 7695754, at *4 (D.D.C. Nov. 15, 2023) (rejecting alleged evidence in the form of other FOIA cases to demonstrate bad faith when plaintiff submitted only certain records from the other action). Lastly, it is well established that settlements should not be used as evidence of prior violations of law or an admission of fault. *See* Fed. R. Evid. 408, Committee Notes to 2006 Amendment (stating that an "offer or acceptance of a compromise of any civil claim is excluded

14

under the Rule if offered against the defendant as an admission of fault"); *Kennon v. Slipstreamer, Inc.*, 794 F.2d 1067, 1069 (5th Cir. 1986) (recognizing that "a principal purpose of Rule 408 is to encourage settlements by preventing evidence of a settlement (or its amount) from being used against a litigant who was involved in a settlement."). Thus, LUPE cannot rely on FEMA's decision to settle another action, or the terms of that settlement, in support of its request for injunctive relief.

LUPE does provide evidence in support of its motion that is properly before the Court. In particular, LUPE has provided sworn declarations from several organizational representatives and members. Unfortunately for LUPE, the substance of those declarations does not support its claim for prospective relief. For example, the declarations of Tania A. Chavez Camacho, LUPE Executive Director, and Juanita Valdez-Cox, the Former Executive Director, are focused on past harms experienced by LUPE and its members. ECF 98-1, 98-2. The declarations do not adequately discuss the risk of future harms, nor do they specifically describe a future injury that is certain and great. Similarly, the declarations from LUPE's members discuss past hardships. ECF 98-5. Again, these declarations do not satisfy LUPE's burden of demonstrating an imminent risk of future harms that are irreparable and cannot otherwise be adequately addressed.[1]

---

[1] In pointing out the inadequacies of the declarations for the purpose of prospective relief, Defendants are in no way intending to downplay the work that LUPE does to assist underrepresented communities, nor do Defendants intend to discount the very real hardships faced by LUPE's members in past disasters.

Because of the hypothetical and contingent nature of LUPE's future harm, it also lacks Article III standing to seek a permanent injunction—particularly concerning FEMA documents that have yet to be created. *See Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003) ("In order to demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future."); *Webb v. Arbuckle*, 456 Fed. Appx. 374, 379 (5th Cir. 2011) (same).

### B. Adequate Remedy

LUPE has an adequate remedy at law to address its concerns. FOIA provides a means of obtaining the documents it seeks (if and when they are created in the future and assuming for the sake of argument that FEMA doesn't publish them online). LUPE has and can request documents under FOIA. LUPE can also seek expedited consideration of those requests if the circumstances necessitate it. A requester is entitled to expedited processing if it shows a "compelling need." *See* 5 U.S.C. § 552(a)(3)(6)(E)(i)(I). A "compelling need" means: (1) there is "an imminent threat to the life or physical safety of an individual"; or (2) for "a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity." *See* 5 U.S.C. § 552(a)(3)(6)(E)(v)(I)–(II). If an agency denies a request for expedited processing under FOIA, the requester may file with the district court and seek immediate judicial review. 5 U.S.C. § 552(a)(6)(E)(iii). Of course, a requester can also seek emergency injunctive relief

16

based on the facts present at the time. *See, e.g., Center for Pub. Integrity v. U.S. Dept. of Def.,* 411 F. Supp. 3d 5 (D.D.C. 2019) (granting preliminary injunction for FOIA expedited processing). Continuing to utilize the FOIA process and availing itself of judicial relief as needed may not be LUPE's preferred course of action, but an adequate remedy need not be a party's preferred remedy. *See Clapper v. Am. Realty Inv'rs, Inc.,* No. 3:14-CV-2970-D, 2015 WL 264711, at *4 (N.D. Tex. Jan. 21, 2015) ("The critical question is whether there exists an adequate remedy at law, not whether the moving party prefers one remedy to another.") (quoting *Papadopoulos v. Sidi,* 547 F. Supp. 2d 1262, 1268–69 (S.D. Fla. 2008)). Here, FOIA and its expedited processing provisions provide an adequate remedy.

## C.  Balance of Hardships and Public Interest

LUPE has also not met is burden of showing that the equitable factors weigh in favor of issuing an injunction. When the government is the party opposing the injunction, the balance of the hardships and the public interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). These factors weigh in favor of denying injunctive relief. As noted in FEMA's dispositive motion, the public interest is typically not served by a "follow-the-law" injunction. FEMA's MSJ at 14.  That is particularly the case here, where FEMA has worked in good faith with LUPE to produce the documents at issue and resolve this litigation and where it has affirmatively committed to complying with FOIA's (a)(2) requirements. *See Envtl. Def. Fund v. Marsh*, 651 F.2d 983, 1005 (5th Cir. 1981) ( noting that injunctive relief against the government should be limited to avoid an overly broad injunction); *N.L.R.B. v.*

*Express Pub. Co.*, 312 U.S. 426, 435 (1941) ("But the mere fact that a court has found that a defendant has committed an act in violation of a statute does not justify an injunction broadly to obey the statute."). A prospective injunctive in these circumstances would not serve the public interest. As a result, LUPE has not carried its burden of satisfying all of the permanent injunction factors.

## CONCLUSION

This Court should deny LUPE's motion for summary judgment and grant FEMA's dispositive motion. Even if the Court finds that FEMA's delay in processing LUPE's request violated FOIA, it should refrain from issuing prospective injunctive relief.

DATED: February 20, 2024

Respectfully Submitted,

ALAMDAR S. HAMDANI
UNITED STATES ATTORNEY

*s/Jimmy A. Rodriguez*
Jimmy A. Rodriguez
Assistant United States Attorney
Southern District of Texas
Attorney in Charge
Texas Bar No. 24037378
Federal ID No. 572175
1000 Louisiana, Suite 2300
Houston, Texas 77002
Tel: (713) 567-9532
Fax: (713) 718-3303
jimmy.rodriguez2@usdoj.gov

ATTORNEYS FOR THE UNITED STATES

Of counsel:
Joseph Macri II, Trial Attorney

18

FEMA – Office of Chief Counsel
Information Law Branch

## **CERTIFICATE OF SERVICE**

I certify that on February 20, 2024, a true and correct copy of the foregoing

was filed with the United States District Clerk for the Southern District of Texas

and electronically served on all counsel of record via the District's ECF system.

*s/ Jimmy A. Rodriguez*
Jimmy A. Rodriguez
Assistant United States Attorney